150.    Prior to being in a position to launch its first building, in an effort to try to "persuade" the Members that Frischer and Stein were moving forward with the Company's strategic plan on a timely basis, Frischer and Stein planned to launch a "platform" which Frisher and Stein represented to the Members would provide a variety of informational services to the public, take the Company public, and provide a revenue stream to the Company, although it would not then yet be in a position to launch a first building.

151.    To gain "eyeballs" to visit the electronic platform site and to make a "big splash" in the media with respect to ETRE's re-conceived launch, Frisher and Stein retained a public relations and advertising firm to create "major media events on multiple fronts" to promote the Company and its platform in the financial and mainstream press.

152.    Frischer and Stein's "big splash" fizzled.  Due to their inept management skills the costly public relations and advertising campaign planned by Frischer and Stein failed to achieve the desired results and the "platform" was launched with no fanfare, no "eyeballs" and generated almost no revenue.

153.    By February 26, 2014 Frischer and Stein believed that they had solved their prior issues and were now ready to launch the "real" platform by sourcing a building in Washington DC which would be the first building launched on the ETRE platform.

154.    Notwithstanding their obligations to Frydman as a board member and Manager of ETRE, Frischer and Stein kept this information from Frydman because Frischer and Stein did not want to alert Frydman to the fact they had, yet again in violation of the 2012 Operating Agreement, entered into numerous contractual and other relationships in anticipation of the launch of this first building, and did so without the prior approval of Frydman.

155.    Moreover, Frischer and Stein sought to create a separate board of directors for the public vehicle, and knowing that Frydman was insistent on being involved in the selection of the board members for the public vehicle, and Frischer and Stein wishing to keep Frydman out of that process, Frischer and Stein purposefully hid any information with respect to the launch of the first building from Frydman.

156.    Frydman learned of the launch of the first building by reading an article published by Costar

Realty Information, Inc. on February 26, 2014.    A copy of the costar article is attached hereto as Exhibit

"AL".

157.    The Costar article stated:

"Very soon, if everything goes according to plan, individual investors will be able to buy and trade
ownership stock in a single commercial real estate property, just like they would shares of common
stock in a single company. The first property set as a test case for such trading is a noteworthy
downtown Washington DC office building. ETRE Financial LLC, New York-based real estate
financial services and technology company, is launching what it calls a first-of-its-kind, exchange-
traded real estate platform for investing in shares of individual commercial real estate assets and
portfolio REITs listed on national exchanges.

158.    Through the Costar article, Frydman learned that Fischer and Stein seeking to raise $53

million to be used to finance its first purchase of the Longfellow Building, a 173,000 sq. ft. office building

located at 1201 Connecticut Ave., Northwest, WA, DC, from Mack-Cali Realty Corp. as well as that the

Company and file with the US Securities and Exchange Commission for the initial public offering of ETRE

REIT, all in violation of section 6.12 of the 2012 Operating Agreement, and without Frydman's prior

consent.

159.    But everything did not go as planned. Unfortunately, Frischer and Stein failed to achieve the

goal of launching the first building.

160.    Either as a result of their ineptitude, negligence or mismanagement, or all of the foregoing,

Frischer and Stein simply blew the Company's major opportunity to execute on the Company's business plan

and affect this "pivotal move in the world of investing" (as the plan was referred to by *DC Tech*, a blog

reporting on Washington DC events. See copy of DC Tech blog of May 15, 2014, attached hereto as Exhibit

AM.)

161.    As a Result, the Company's and its Subsidiaries' and Affiliates' reputations were damaged

and their respective ability to attract future buildings and other business opportunities is now questionable.

162.     As a result of the numerous failures by Frischer and Stein the Company was quickly running out of money. However, on information and belief, Defendants used this as a way to seek to dilute Plaintiffs' interests in the Company.

**Frischer, Panzer, Stein and Verschleiser hatch a plan to deprive Plaintiffs' of more than $3 million by Recapitalizing ETRE and selling 34.95% of the Company to one of their Cronies at 20% of the valuation they made just six months earlier in an arms-length third party investment banking agreement**

163.     On June 11, 2014, Stein visited Frydman's office and informed him for the first time that ETRE had received an offer from Sol Mayer of LH Financial to invest $1.6 million into ETRE, and also that ETRE had incurred a series of debts in favor of Defendants Panzer and Frischer which it planned to convert into equity securities.

164.     Upon learning this surprising news, on June 12, 2014 Frydman wrote to Frischer and Stein, the two officers of the Company advising that he has "not seen any of the proposals referenced by [Stein], and hereby request copies of all offers, term sheets or other evidences of intention made by LH Financial, SMP Realty NM, LLC and Frischer Kranz Inc. to the Company so that I may understand these proposals and consider them."  A copy of Frydman's June 12, 2014 letter to the Company is attached hereto as Exhibit "L".

165.     In addition, Frydman requested information he was entitled to, and in fact that the officers of the Company, Frischer and Stein, were periodically obligated to provide to Plaintiffs, but which Frischer and Stein had failed to provide, including a general narrative regarding the state of ETRE, copies of a proposed budget for 2014, an audited balance sheet and statement of income for the 2013 fiscal year, consolidated unaudited balance sheets for all months, as well as relevant tax documents, all of which were required to be provided to Frydman pursuant to the terms of the 2012 Operating Agreement. Frydman concluded that letter by stating:

I will need all of the items requested in this letter in order to properly consider the proposed investments by LH Financial, SMP Realty NM, LLC and Frischer Kranz Inc. To the extent that any of the foregoing request for demands constitutes an obligation under the terms of our Operating Agreement which has not been met, and which therefore would constitute a breach thereunder, I request that [same be cured within ]the next 10 business days.

166.     One day after receiving Frydman's letter, and in total disregard of Frydman's rights as a Manager of ETRE, and in derogation of his duties, and in violation of the requirements of the 2012 Operating Agreement, without the prior approval of the board of ETRE, on June 13, 2014, without the right to do so, Frischer wrote a letter to Sol Mayer offering a proposed set of terms pursuant to which ETRE would agree to an investment by LH into ETRE. A copy of Frischer's June 13, 2014 letter to Mayer is attached hereto as Exhibit M.

167.     According to Frischer's June 13 letter, LH Financial would invest $1,725,000 in ETRE, in exchange for a membership interest of 69,000 Units, which Frischer described as "34.5% of all outstanding Units." Frischer also offered LH Financial one seat on the board of directors of ETRE, stipulating, "The ETRE board will consist of 5 members in total. Board decisions will be based on 4/5 voting approval." Plaintiff was given no notice of this letter until July 14, 2014, and did not consent it.

**The Verschleiser – Mayer Association**

168.     On information and belief Mayer is a known associate of Defendant Verschleiser.

169.     Prior to December 3, 2014 Verschleiser and Frydman were co-owners through their affiliates of seventeen entities involved in the various aspects of the real estate business, and were sponsors of a public non-traded Real Estate Investment Trust. As a result of various disputes, on December 4th 2013 Frydman through his affiliates acquired all of Verschleiser's interests in each of those entities (except only ETRE and entities related to 866 UN Plaza), Verschleiser resigned from the REIT and each of those entities and Frydman and Verschleiser separated ways. Shortly thereafter Verschleiser hacked into Frydman's email exchange server, obtaining sensitive proprietary information

which Verschleiser used to interfere with Frydman's various business dealings, resulting in the initiation of various lawsuits by Frydman and his affiliates against Verschleiser.

170.    Shortly thereafter Verschleiser moved into the same suite of offices used by Stein and Frischer.

171.    On information and belief Verschleiser was insistent on causing harm to Frydman.

172.    On information and belief, Verschleiser proposed to Stein and Frischer that they could get away with their desire to enter into all the agreements Frydman rejected and dilute Frydman's and the Frydman Entity's interests by recapitalizing ETRE through Verschleiser's associate Mayer, and do so at a valuation which would strip Plaintiffs of significant value, and that the approving Defendants could later "come-in on Mayer's side of the deal" to maintain their own original valuations.

173.    In contrast to the January 23, 2014 investment banking agreement executed by Frischer and Source Capital Group Inc., pursuant to which the Company was valued at $25 Million based on $2 million representing 8% of the equity in ETRE, Verschleiser, Panzer, Frischer and Stein were now seeking to dilute Plaintiffs by significantly reducing the valuation of the Company by $20 million to just over $5 Million (based on a $1.75 million investment by Mayer for a 34.94% equity interest in the Company). This "new" valuation would have the effect of reducing Plaintiff's value in the Company by $3,238,269.00[3], deprive the Frydman Entity of substantial economic rights and by virtue of the structure Frischer came up with for the LH investment, would also strip Frydman of his board veto power and other rights.

---

[3] Pursuant to the purported merger agreement and Unit Purchase Agreement, the Mayer Entity would acquire 94,810 shares in the purported newly formed company in exchange for $1.75 million, with a total of 263,809 shares outstanding upon completion of the $1.75 million investment. According to the purported merger agreement, the Frydman Entity would have 26,968 shares, or 10.22% of the equity interests, valued at $511,731, contrasted with 15% at a valuation of $25 million, or $3,750,000 of value, based on the Source Capital Agreement.

174.    Frischer attached a "summary of changes" to amend and restate the 2012 Operating Agreement to his June 13, 2014 letter to Mayer, a copy of the draft proposed amended and restated 2012 Operating Agreement is attached hereto as Exhibit "N".

175.    On June 14, 2014, Frischer wrote an email to Frydman, purporting to respond to Frydman's requests for more information. In the email Frischer disclosed the proposed terms of the $1,725,000 investment by LH Financial into ETRE. The email also included the proposed amendments to the 2012 Agreement which changed the following provisions, among others: the number of Units issued would be raised from 100,000 to 200,000; Jacob Frydman would be replaced by Paul Frischer as the Tax Matters Partner; ETR Investor Holdings would be made a Member, and Sol Mayer would be added to the Board of Managers; and multiple provisions requiring unanimity of the Board would be eliminated, including all of what was Section 6.12 in the 2012 Agreement. Frischer also apprized Plaintiffs of the January 10 action taken by the Board, as well as the series of loans that Panzer and Frischer had made to ETRE. With respect to Plaintiff's request for audited balance sheets, Frischer claimed that the Board waived this requirement. A copy of Frischer's June 14, 2014 email is attached hereto as Exhibit "O".

176.    Frischer provided Frydman with a proposed draft Amended and Restated Operating Agreement of ETRE marked to show changes against the 2012 Operating Agreement, a copy of which is attached hereto as Exhibit "P".

177.    Frischer's attachment of the draft amended and restated 2012 Operating Agreement is of significance in that it evidences the true intention of Defendants -- to achieve their goals by amendment of the 2012 Operating Agreement -- which would require the prior approval of Frydman pursuant to section 6.12 of the 2012 Operating Agreement.

178.    On the morning of June 17, 2014, Frydman sent an email to Defendants Stein, Frischer, and Panzer, voting against the proposal to recapitalize the company through an investment from Sol Mayer and LH Financial, including voting against the proposed amendments to the 2012 Operating Agreement. Frydman also expressed his dissent to the Board's actions taken without his knowledge or consent on January 6, 2014, January 10, 2014, May 21, 2014; the loan agreements ETRE entered into between February 17, 2014 and June 21, 2014; and the January 23, 2014 Advisory Services Agreement. A copy of Frydman's June 17, 2014 letter is attached hereto as Exhibit "Q".

179.    Later, on the same morning of June 17, 2014, Stein sent an email to Frydman seeking to cajole Frydman into approval, stating that, "I want to make clear that the alternative to bringing capital into the business would be shutting down the company on Monday and there would be no liquidation value." A copy of Stein's email of June 17, 2014 is attached hereto as Exhibit "R".

180.    Frydman reached out to Stein to discuss ways to reach an accord, but Stein rejected each of Frydman's proposals. After Stein and Frydman had a phone conversation on the morning of June 17, 2014, Stein sent another email in the afternoon of June 17, 2014. That email stated that LH Financial would not invest in ETRE unless the 2012 Agreement were amended to eliminate all unanimity requirements for Board of Manager votes. The email also admitted the illegitimacy of the loans made by Panzer to ETRE by stating that "Paul [Frischer] and I will agree to eat half of the loans made by Scott [Panzer] ($137,500) which will not be included in your dilution." Stein also agreed to limit officer compensation to $400,000 until the time that the Founding Principals receive 100% of their investment back in distributions, or until the Company went public. A copy of Stein's email of June 17, 2014 is attached hereto as Exhibit "S".

181.    Stein and Frischer continued to speak with Frydman over the next several days, ostensibly to "work out a mutually agreeable resolution". In fact on June 18, 2014 Frischer sent

Frydman an email stating: "Thanks for the call back this evening.  Will keep working on a resolution."

A copy of Frischer's email of June 18, 2014 is attached hereto as Exhibit "T".

182.    In truth Frischer and Stein had no intention of "working on a resolution".  Instead of

seeking to work through the issues, Defendants Panzer, Stein and Frischer planned to keep Frydman at

bay – by making him believe that the parties were working towards a resolution -- while in reality

Defendants Panzer, Frisher and Stein were conspiring with each of the other Defendants to deprive

Plaintiffs of their rights as Member and Manager of ETRE, by attempting to effect a way to accomplish

the exact result which Frydman had already voted against, through a newly devised "merger" which they

had no intention to share with Frydman.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

183.    During the period from June 17, 2014 through July 24, 2014 the Manager Defendants

conspired with the other Defendants, including the Member Defendants, Mayer, LH Financial, and ETR

Investors Holdings LLC to cause an unauthorized and ultra vires merger of the Company solely as a way

to circumvent the "No" vote by Frydman, one of the four Managers of the Company who's affirmative

vote was a prerequisite to a series of proposals to recapitalize the Company, sell Units of the Company

and amend the Operating Agreement of the Company all as more fully set forth herein.

184.    On July 24, 2014, Stein sent an email to Frydman alleging that, despite Plaintiffs' voting

against the proposed recapitalization and related transactions, the LH Investment had been completed

and ETRE's Operating Agreement had been amended as a *fait accompli* substantially on the basis that

Frydman voted against, but structured as a "merger".  A copy of Stein's email of July 24, 2014 is

attached hereto as Exhibit "U".

185.    The various documents attached to Stein's email purported to take these actions in the

form a merger agreement, which Defendants wrongfully believed to be a way to circumvent the need to

get the unanimous consent of the Board of Managers, pursuant to the 2012 Operating Agreement. At no point before July 24, 2012 had Plaintiff been apprised of any proposal to merge ETRE with another entity.

186.    Included with Stein's July 24, 2014 email were several documents signed on July 24, 2014, purporting to authorize a merger between ETRE and a separate entity called ETRE Financial Holdings, LLC ("Holdings"), whose sole member was Sol Mayer. Included with that email was a Certificate of Merger issued by the Delaware Secretary of State on July 24, 2014, stating that ETRE and ETRE Holdings had merged under the name "ETRE Financial, LLC" ("Ersatz ETRE"). A copy of the Certificate of Merger is attached hereto as Exhibit "U".

187.    The effect of the Certificate of Merger, were it not ultra vires and unauthorized, would have been to dissolve ETRE.

188.    In another document attached to Stein's July 24, 2014 email, Defendants Stein, Frischer, and Panzer resorted to their old tricks, by purporting to cause ETRE, pursuant to Section 6.5(e) of the 2012 Agreement, to approve the "merger" by written consent in lieu of a special meeting. One provision of the action explicitly referenced Plaintiff's dissent: "WHEREAS one member of the Board has rejected LH's offer because one of the conditions thereof is a modification to the Company's LLC Agreement to provide for supermajority approval for actions taken by the Board that currently require unanimous approval." Nonetheless, Defendants Stein, Frischer, and Panzer signed the consent stating that "in order to complete the investment contemplated by" LH Financial "it is deemed advisable" that ETRE merge with Holdings and that "concurrently with the Merger [LH Financial] is investing the sum of $1,725,000 in" Ersatz ETRE. Although there are four signature lines at the bottom of the document, Jacob Frydman's signature is conspicuously absent. See purported Action by Written Consent of the Board of Managers in Lieu of Special Meeting attached hereto as Exhibit "V".

189.    Also attached was a new Operating Agreement signed July 24, 2014 and purporting to govern Ersatz ETRE (the "Purported 2014 Operating Agreement"). The 2014 Operating Agreement effected all of the proposed amendments that Frydman had rejected previously, and which pursuant to the 2012 Operating Agreement expressly require the prior unanimous approval of the managers of ETRE: it increased the number of Units issued from 100,000 to 200,000, it replaced Jacob Frydman with Paul Frischer as the Tax Matters Partner, it made ETR Investor Holdings a Member, it added Sol Mayer to the Board of Managers, and it eliminated multiple provisions that required unanimity of the Board under the 2012 Agreement, including all of what was Section 6.12 in the 2012 Agreement. See copy of the Purported 2014 Operating Agreement attached hereto as Exhibit "W".

190.    Also attached was a document titled, "Agreement of Merger," signed by Mayer and Frischer on July 24, 2014, which stipulated that at the moment of the merger, persons holding units of ERTE would have their units converted into units of Ersatz ETRE. The document stipulated that until Plaintiffs sign the 2014 Agreement, however, they will have no rights in Ersatz ETRE.  See "Agreement of Merger" attached hereto as Exhibit "X".

191.    The email also included a "Written Consent of the Sole Member of ETRE Financial Holdings, LLC" signed by Mayer, a copy of which is attached hereto as Exhibit "Y".

192.    The email also included a "Unit Purchase Agreement" detailing the transaction whereby ETR Investors Holdings LLC would invest $1,725,000 in Ersatz ETRE  in exchange for 94,810 Units of ETRE II, a copy of which is attached hereto as Exhibit "Z".

193.    The email also included a "Founder Debt for Equity Exchange Agreement", pursuant to which the board of Ersatz ETRE purported to allow Scott Panzer to convert the $275,000 owed to him by ETRE into 11,000 Units of Ersatz ETRE.  A copy of the "Founder Debt for Equity Exchange Agreement" is attached hereto as Exhibit "AA".

194.    The purported merger, the filing of a certificate of merger, the amendment of the
Operating Agreement, the transfer of all the Company's assets ostensibly through the purported merger,
including, without limitation, the transfer of the Frischer Patent Income and the Frischer Patent Right of
First Refusal, the transfer of the assigned ETRE Patent Application to the newly formed entity, the
transfer of the intellectual property, source code, software, and other property rights of ETRE to this
end, the transfer of the various agreements entered into by the Company and Sungaurd, Standard &
Poors, Rapid Ratings, and others, and the transfer of the other assets of the Company by implication
through the purported merger, the Agreement Of Merger, the Unit Purchase Agreement and the
Founders Debt for Equity Exchange Agreement, and all related agreements and undertakings are each an
express violation of Sections 6.12, 3.8 and/or 7.4 of the 2012 Operating Agreement, each of which
required, in each instance, the prior unanimous approval of Frydman, and because Frydman did not
approve any of the foregoing, they are each unauthorized, and ultra vires, and without legal effect.

195.    Even the name of the new entity, by using "ETRE" in its name, is itself express violation
of the 2012 Operating Agreement. The attempt to circumvent the Company's governance requirements
in seeking to effect the series of transactions above referenced constituted an incurable breach of the
2012 Operating Agreement, breaches of their fiduciary duties, breaches of contract, gross
mismanagement, abuse of control, waste of Company assets, self-dealing, unjust enrichment, obligations
of good faith, trust, loyalty, and due care, which Defendants were required to use to control and manage
the Company in a fair, just, honest, and equitable manner so as to benefit all Members and Managers
equally and not in furtherance of their personal interests or benefit.

196.    Specifically, the transactions alleged to have been affected on July 24, 2014 including,
without limitation, merger, and all related documents and agreements thereto, violated each of the
following provisions of the 2012 Operating Agreement:

(i) the failure to obtain the prior unanimous approval of the Managers for the issuance of any Units or other equity securities of the Company or any Subsidiary or Affiliate;

(ii) the failure to obtain the prior unanimous approval of the Managers for the admission of an additional Members;

(iii) the failure to obtain the prior unanimous approval of the Managers for the Company's consent to any Transfer of Units other than a Permitted Transfer;

(iv) the failure to obtain the prior unanimous approval of the Managers for any action that results in a liquidation or dissolution of the Company or any Subsidiary which the merger purported to effect;

(v) the failure to obtain the prior unanimous approval of the Managers for a merger, consolidation, conversion or other similar transaction involving the Company or any of the Subsidiaries as a result of which the Principals and their Permitted Transferees (or in the case of a Subsidiary, the Company, directly or indirectly) hold in the aggregate less than a majority of the outstanding voting equity securities of the surviving entity immediately after such transaction[4];

(vi) the failure to obtain the prior unanimous approval of the Managers for the incurring of any debt obligations by the Company, and specifically the Gounders Debt Exchange Agreement;

(viii) the failure to obtain the prior unanimous approval of the Managers for any increase or decrease in the authorized size of the Board;

(ix) the failure to obtain the prior unanimous approval of the Managers for any modification or amendment of the Operating Agreement;

(x) the failure to obtain the prior unanimous approval of the Managers for the Company enter into the merger agreement with a Member or with an Affiliate of a Member;

(xi) the failure to obtain the prior unanimous approval of the Managers for the issuance of any equity securities by the merged entity, which is purported to be an Affiliate of the Company;

(xii) the failure to obtain the prior unanimous approval of the Managers for increase or decrease the number of managers, general partners, or the size of the board of the merged entity, as an Affiliate of the Company;

---

[4] The Purported Ersatz Operating Agreement required a 75% majority vote of the managers of that entity to effect any company action, and therefore, required four out of five managers for a majority vote on these matters. Since only three of the Principles or their Permitted Transferees voting authority under the terms of the Ersatz Operating Agreement (Frydman not having manager and affiliates not having a member, the other manager Sol Mayer) will immediately as a result of purported merger, the Principals and their Permitted Transferees), in the aggregate, held less than a majority of the outstanding voting equity securities of the surviving entity.

(xiii) the failure to obtain the prior unanimous approval of the Managers for the filing of the Certificate of Merger which modified the Company's Certificate of Formation;

(x) the failure to obtain the prior unanimous approval of the Managers for changing the designation of the Company's Tax Matters Partner from Frydman to Frischer,

(xi) the failure to obtain the prior unanimous approval of the Managers for any change in the name of the Company or any Subsidiary;

(xii) the failure to obtain the prior unanimous approval of the Managers for the recapitalization of the Company which was the primary purpose of the purported merger;

(xiv) the failure to obtain the prior unanimous approval of the Managers for the hiring of Mr. Fiddler's law firm;

(xvi)  the failure to obtain the prior unanimous approval of the Managers for the issuance of any Units in the new company; and

(xvii) the failure to obtain the prior unanimous approval of the Managers for merger agreement, the debt exchange agreement, the Unit Purchase Agreement and the other related agreements which  purported to amend, modify or terminate the 2012  Operating Agreement with a Member or with an Affiliate of a Member;

197.    In addition, the transactions alleged to have been affected on July 24, 2014 including, without limitation, merger, and all related documents and agreements thereto, violated article 10 of the 2012 Operating Agreement which requires that any amendment Section 3.3, 6.12 or 7.1 shall not be binding on a Member without such Members written consent.

198.    In addition, the transactions alleged to have been affected on July 24, 2014 including, without limitation, merger, and all related documents and agreements thereto, violated article 10 of the 2012 Operating Agreement which expressly provides that the 2012 Operating may only be amended, restated, or waived, only if approved by all of the outstanding Units entitled to vote, and that if any amendment, she really and adversely change the specifically rights granted by the 2012 Operating Agreement one or more members ("affected Members close friend in a way that is materially different from the change such amendment,, or waiver would have on such specifically rights or other Members,

such amendment, amendment and restatement shall not be affected as to any Effective Member unless consented to by all of the Affected Members.

199.    In addition, the transactions alleged to have been affected on July 24, 2014 including, without limitation, merger, and all related documents and agreements thereto, violated section 7.4 (f) of the 2012 Operating Agreement as the purported merger resulted in the Transfer of the Units of withdrawing Members, and pursuant to section 7.4 (f) a withdrawing Member may only sell its units to another member and that sales to a third party non-member on, and that only "bored in its sole discretion and with the end of this sale of the members units to a third party non-member. "

200.    In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with, one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Defendants further aided and abetted and/or assisted each other in breach of their respective duties and the 2012 Operating Agreement, as well as interfered with the contractual rights of Plaintiffs.

201.    The purpose and effect of Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things to disguise the Manager and Member Defendants' breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, breach of contract and unjust enrichment.

202.    Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs alleged herein. In taking such actions to substantially assist the commission of the wrongdoing alleged herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or its overall contribution to, and furtherance of, the wrongdoing.

203.    On August 2, 2014, Frydman sent an email to Defendants Stein, Frischer, Panzer, Verschleiser and Mayer, expressing his dissent and asserting his claim on behalf of the Company and Plaintiffs that all of the July 24, 2014 merger documents were ultra vires and without legal effect and violate the 2012 Operating Agreement. Plaintiffs reserved the right to pursue all rights and remedies available to them in law and equity, should the transactions contemplated by the attached documents be closed. A copy of Frydman's August 2, 2014 letter is attached hereto as Exhibit "AB".

204.    Plaintiff also called a meeting of the Board of ETRE, pursuant to Section 6.5(b) of the 2012 Agreement, to discuss the various actions detailed in Stein's July 24, 2014 email, including the proposed merger and proposed investment by LH Financial in ETRE. See copy of Notice of Meeting of Managers dated August 2, 2014 attached hereto as Exhibit "AC".

205.    On August 4, 2014, Defendant Frischer responded to Frydman's email stating that "ETRE Financial, LLC was merged with and into ETRE Financial Holdings, LLC on July 24, 2014, with ETRE Financial Holdings, LLC being the surviving entity in the merger and changing its name to ETRE Financial, LLC as part of the merger. . . . Please also note that under the terms of the Agreement of Merger . . . , your rights as a manager or member of the surviving entity (including noticing a board meeting) are subject to your executing and returning a counterpart to the limited liability company agreement of the surviving entity dated as of July 24, 2014 . . . . Accordingly, no one will be attending the meeting on Thursday." A copy of the August 4, 2014 email from Frischer is attached hereto as Exhibit "AD"

## Notwithstanding the Ultra Vires Actions of Defendants ETRE continued to exist

206.    Notwithstanding Defendants' outlandish attempts to circumvent the provisions of the 2012 Operating Agreement and trample over the rights of Plaintiffs, their actions were ultra vires, and therefore of no force or effect, except that by their actions, the Member Defendants have withdrawn

from ETRE and have attempted to "Transfer" their Units in violation of sections 6.12 and 7.14 of the 2012 Operating Agreement, the Manager Defendants have terminated their employment with ETRE, and Defendants Stein, Panzer, Frischer, Verschleiser, the Stein Entity the Panzer Entity in the Frischer Entity and the Verschleiser Entity each waived any right they may have had to enforce any of the provisions of the 2012 Operating Agreement against the Company or any other Member or Manager by virtue of their breaches of said 2012 Operating Agreement.

### Frydman Removes Panzer, Stein and Frischer for Cause

207.   Based on the illegal actions of Panzer, Stein and Frischer as hereinabove set forth, on August 6, 2014, Plaintiffs removed Panzer, Stein and Frischer as Managers of ETRE for Cause pursuant to Section 6.3 (e) of 2012 Operating Agreement.  A copy of Plaintiffs' notice of removal is attached hereto as Exhibit "AE".

### Plaintiffs notice an Event of Default under the Stein Note and Stein Pledge Agreement

208.   Defendants' actions as above set forth resulted in the Transfer or purported Transfer of Defendants' Units as defined by and pursuant to the 2012 Operating Agreement on July 24, 2014.

209.   As a result of Defendants' Transfer of their Units, the Stein Note automatically became due and payable on July 24, 2014, but was not timely paid.

210.   Pursuant to Section 2(b) of Stein Pledge Agreement, upon the occurrence of an Event of Default, all of the Borrower's voting and consensual powers or rights pertaining to the Pledged Securities "shall terminate and the Pledgee or its nominee or nominees shall have the sole and exclusive right to exercise all powers of voting and consent pursuant to the Pledged Securities, or any part thereof, and shall exercise such powers in such manner as the Pledgee may elect in its sole discretion."

211.   In accordance therewith Plaintiffs terminated the Stein Entity's rights to exercise all powers of voting and consent pursuant to the Pledged Securities and the Frydman Entity elected to

exercise its rights and powers pertaining to the Pledged Securities. See August 7, 2014 Notice of Default

to Stein attached hereto as Exhibit "AF", and Lender's election to Exercise Rights attached hereto as

Exhibit "AG".

212.    On August 11, 2014 Thomas Fiddler, an attorney with White and Williams LLP, a

Philadelphia law firm, wrote a letter to Frydman as counsel to Ersatz ETRE with respect to the notice of

removal sent by Plaintiffs to Defendants on August 6, 2014, and therein wrongly asserted: "[a]s part of

the merger, ETRE Financial Holdings, LLC changed its name to ETRE Financial, LLC ("ETRE"),

adopted a new Operating Agreement, and old ETRE ceased to exist. A copy of Mr. Fiddler's letter is

attached hereto as Exhibit "AN".

213.    On August 11, 2014 Frydman replied to Fiddler by letter stating: "I respectfully disagree

with your analysis. The purported merger which you refer to is wholly ultra vires, unauthorized and of

no legal effect." Moreover, with respect to Plaintiffs' exercise of their rights pursuant to the Stein pledge

Agreement, Frydman advised Fiddler that "to the extent that, and for so long as, the purported "merger"

remains unchallenged (which I suggest will be a very short period of time), I wish to advise you and

your clients, that by virtue of my exercise of rights pursuant to that certain Pledge Agreement between

Winter Investors, LLC and JS3 Alternative Investments, LLC, I now control all voting rights (to the

extent such rights exist) with respect to units held by Winter investors, LLC and JS3 Alternative

Investments, LLC. As the purported Operating Agreement of the purported merged entity requires a

75% vote of the managers in order for any actions to be effective, and as there are five managers, and all

actions require a vote of 4 managers, and as I now control 2 votes, no actions can be taken without the

express approval of myself and Daniel Edelman, who I substituted as the manager in place and stead of

Jesse Stein, with respect to the Rights Accruing to JS3 Alternative Investments, LLC. A copy of

Frydman's August 11, 2014 letter to Fiddler is attached hereto as Exhibit "AO".

214.     The purported Transfer by the Member Defendants of their Units as part of the purported merger was an express violation of Section 7.4 of the 2012 Operating Agreement. Pursuant to Section 7.4 of the 2012 Operating Agreement the Company had the right to elect to repurchase Units of Members seeking to wrongfully Transfer or purporting to transfer their Units as specifically set forth in said section 7.4.

215.     Moreover, by their actions, Member defendants withdrew from Company, and the Manager Defendants terminated their employment with the Company on July 24, 2014.  Pursuant to Section 7.4 of the 2012 Operating Agreement the Company had the right to elect to repurchase Units of withdrawing Members ("Former Members") as specifically set forth in said section 7.4.

216.     On August 15, 2014, Frydman, as the sole remaining Manager of ETRE caused ETRE to exercise its rights pursuant to Section 7.4 of the 2012 Operating Agreement to repurchase the Units of each of the Former Members, to wit, the Stein Entity, the Panzer Entity, the Frischer Entity and the Verschleiser Entity.  A copy of the Action by Written Consent effecting the foregoing is attached hereto as Exhibit "AH".

217.     To effect the repurchase of Units of the four Former Members, on August 18, 2014 the Company issued to each such Former Member the repurchase price for their Units by delivering the Company's promissory note in accordance with Section 7.4 of the 2012 Operating Agreement.  A copy of the respective promissory notes (together with the cover letter and release sent therewith) are attached hereto as Exhibit "AI".

### IRREPARABLE HARM

218.     Without a declaratory judgment that the purported merger and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the

Managers under, or are otherwise violative of, the 2012 Operating Agreement, the rights of the Members and Managers of the Company will be materially frustrated and impaired.

219.     The purported merger and other unauthorized acts set forth above irreparably harms all of the Company's Members and Managers by effectively stripping them of rights expressly granted in the 2012 Operating Agreement.

220.     This dispute carries the risk of specific, irreparable harm for Plaintiffs as a Member and Manager of the board of ETRE with respect to their rights to vote on Company actions which require the unanimous prior approval of all the Managers, or which requires the affirmative vote of all the Members, or where the effect of the ultra vires acts has deprived the Members of their preemptive rights.

221.     Plaintiffs, as a Member and Manager of the board of ETRE cannot be adequately compensated by monetary damages for loss of their rights under the 2012 Operating Agreement.

222.     Therefore Plaintiffs and the Company are entitled to a declaratory judgment declaring void the purported merger, the Merger Agreement, the Certificate of Merger, the Unit Purchase Agreement, the ETRE License Agreement, the Panzer and Frischer Loan Agreements, and the Founder Debt for Equity Exchange Agreement.

223.     Similarly, Plaintiffs and the Company are entitled to a declaratory judgment that the actions of the Defendants Panzer, Frischer and Stein as herein set forth amounts to a "Cause" event in that  the Member Defendants and the Manager Defendants have committed acts of dishonesty, misappropriation, embezzlement or fraud involving personal profit or a breach of fiduciary duty in connection with the performance of such Member's or Manager's company duties, or which affects the Company, or any member of the Group, or property of any member of the Group, and/or that the Member Defendants and Manager Defendants have breached in  material respect the 2012 Operating Agreement and/or other agreement with the Company or any member of the Group which breach is not

cured (to the extent reasonably susceptible to cure) after written notice, and/or that Member Defendants and Manager Defendants have breached the representations, warranties or covenants contained in the 2012 Operating Agreement and/or in the Agreements entered with or on behalf of the Company, its Subsidiaries and/or Affiliates, and that Defendants Panzer, Frischer and Stein were properly removed as Managers of the Company.

224.    Similarly, the Plaintiffs and the Company are entitled to a declaratory judgment that the actions of the Defendants the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity as above set forth constitutes an unlawful "Transfer" of their Units in the Company in violation of Section 6.12 of the 2012 Operating Agreement, and that the actions of Defendants the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity as above set forth constitutes A Withdrawal from the Company on July 24, 2014, and that pursuant to section 7.4 of the 2012 Operating Agreement, the Company re-purchased such Former Members' Units in the Company by tendering the Company's promissory note for the capital account balance of such Former Members' Units, and that said Units have been repurchased by the Company.

225.    Similarly, the Plaintiffs and the Company are entitled to a declaratory judgment that Jacob Frydman is the tax matters partner of the Company.

226.    Similarly, the Plaintiffs and the Company are entitled to a declaratory judgment that Frisher has assigned 50% of the Frischer Patents Income to the Company, and that the company has a right of first refusal with respect to the Frischer Patents at 80% of the bona fide offer from a third party, in accordance with the provisions of the 2012 Operating Agreement.

227.    Similarly, the Plaintiffs and the Company are entitled to a declaratory judgment that the name "ETRE Financial" and all goodwill associated therewith are the property of the Company and no Member or Affiliate of the Company shall have the right to use the name "ETRE Financial" or "ETRE"

as a component of the name of any business venture or otherwise.

228.    Similarly, the Plaintiffs and the Company are entitled to a declaratory judgment that Ersatz ETRE is a "Competitor" of ETRE.

229.    Similarly, Plaintiffs and the Company are entitled to a preliminary and permanent injunction enjoining Defendants Frischer, Stein, Panzer and Verschleiser, from directly or indirectly claiming to have any right, title or interest of any kind or nature whatsoever in order to any products, methods, practices, processes, discoveries, ideas, designs, improvements, devices, creations or inventions in each case directly or indirectly relating to or useful in any aspect of the business of the Company or the Group, whether created, developed or invented by any of them during the term of their employment and or association with the Company, and, without limitation, the Exchange Traded Real Estate Platform, and any inventions or patent applications assigned to the Company.

230.    Similarly, the Plaintiffs and the Company are entitled to a preliminary and permanent injunction enjoining Defendants Frischer, Stein, Panzer and Verschleiser, the Frischer Entity, the Stein Entity, the Panzer Entity and the Verschleiser Entity through July 3, 2015 pursuant to section 12.2 of the 2012 Operating Agreement from (i) rendering services or giving advice to, or being affiliate with (as employee, partner, consultant or otherwise), or (ii) directly or indirectly through one or more of any of their respective Affiliates, owning, managing, operating, controlling or participating in the ownership, management, operation or control of, any Competitor or any division or business segment of any Competitor; or (iii) hiring, soliciting or encouraging Person to hire, or solicit any individual who is been an employee, consultant or adviser of the Company or any Subsidiary or Affiliate of the Company; or (iv) soliciting or enticing, or attempting to solicit or entice, any investors, contractors, suppliers of the Company or any Subsidiary or Affiliate of the Company for purposes of diverting their business or services from the Company or such Subsidiary or Affiliate or for any other purpose; or (v) making a

statement or publication that is intended to or could reasonably be understood to disparage or impugn the reputation of the Company or any such Subsidiary or Affiliate of the Company or any of their respective products, services, executives, partners, directors, officers or employees, regardless of any perceived truth of such statement or publication.

231.     Similarly, the Plaintiffs and the Company are entitled to a preliminary and permanent injunction enjoining Defendant Frischer from Transferring any of the Frischer Patents to any Person without first offering them to the Company, at 80% of the bona fide offer price in accordance with the terms of the 2012 Operating Agreement.

## DERIVATIVE ACTION AND DEMAND FUTILITY ALLEGATIONS

232.     Plaintiffs bring this action as a derivative action for the benefit of the Company to redress the injuries suffered, and to be suffered, by the company as a direct result of the wrongful acts committed by the Defendants as alleged herein.

233.     Plaintiffs will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights.

234.     Plaintiff the Frydman Entity is, and has continuously been an owner of the Company's Units during the wrongful conduct alleged herein.

235.     Plaintiff Frydman is, and has continuously been a member of the board of Managers of the Company during the wrongful conduct alleged herein.

236.     Plaintiffs did not make demand on the Managers of the Company to bring this action on behalf of the Company because such a demand would have been a futile, wasteful and useless act for the following reasons:

   a.   all of the Manager Defendants authorized, approved, ratified or have failed to rectify each of the matters complained of herein and are named as Defendants herein;

   b.   all of the Defendants participated in, or permitted the wrongs alleged herein to have occurred

66

and participated in efforts to conceal or disguise those wrongs from the Company and Plaintiffs, and/or were acting intentionally, recklessly and or negligently or with gross negligence regarding the wrongs complained of herein, and therefore are not disinterested parties;

c.   each time Plaintiffs made a demand upon Defendants to rectify any of the wrongs complained of herein Defendants failed to acknowledge same, and retorted directly and/or through counsel that the actions taken by Defendants as herein set forth were appropriate, authorized and in accordance with law, and that the as part of the purported merger, Ersatz ETRE adopted a new operating agreement and the old ETRE ceased to exist, or that the matters complained of herein rely on 2012 Operating Agreement for a company that, according to defendants and their counsel "no longer exists".

## DERIVATIVE CLAIMS

### COUNT I
### Against Defendants Panzer, Frischer and Stein for Violations of Section 10 (b) of the Exchange Act

237.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

238.   Defendants Panzer, Frischer and Stein issued, caused to be issued, and participated in the issuance of materially false and misleading statements contained in the filings made by ETRE REIT with the US Securities and Exchange Commission which misrepresented, inter alia, that the actions taken by Defendants Panzer, Frischer, and Stein were properly authorized, that they were authorized to appoint themselves to the ETRE REIT board, and then increase the board to seven members, that they were authorized to appoint their associates to the board of ETRE REIT; and that ETRE REIT and each of the other Subsidiaries and Affiliates of the Company were authorized to use the ETRE name as a result of the license agreement grated by Defendants Panzer, Stein and Frischer.

239.   In fact, Defendants Panzer, Frischer and Stein failed to obtain the requisite approval for the actions taken by then and were not properly authorized to establish or increase the size of the board of directors of the ETRE REIT, nor to nominate or appoint any directors to said board as Section 6.12 of

the 2012 Operating Agreement required the prior unanimous consent of all the Managers of ETRE as to

increase or decrease the number of managers, general partners, or the size of the board of any

Subsidiary, or the Company or any Subsidiary entering into any agreement or transaction with a

Member or with an Affiliate of a Member, and no such unanimous approval was sought or obtained.

240.    In fact, the ETRE REIT and each of the other Subsidiaries and Affiliates of the Company

using the ETRE name and/or trademark were not properly authorized to use the ETRE name or

trademark as  Section 13.1 of the 2012 Operating Agreement specifically prohibited any Subsidiary or

Affiliate of the Company from using "ETRE Financial" or "ETRE" as a component of its name, and the

purported license granted by the Company to ETRE REIT to use the ETRE name or trademark was not

was properly authorized in that it required the amendment of the 2012 Operating Agreement which

required the prior unanimous approval of the Managers of the Company, which prior unanimous

approval was neither sought nor obtained.

241.    By reason of the conduct alleged herein, each of defendants Panzer, Frischer and Stein

violated section 10 (b) of the Exchange Act.

242.    Plaintiffs, on behalf of the Company, seek to void the appointment of Defendants Panzer,

Frischer and Stein and non-parties Jay Anderson, Mark Filanowski,  Joseph Capezza and John Gregorits

as directors of ETRE REIT or any other Affiliate or Subsidiary of ETRE, and seek to void the license

agreement purportedly granted by the Company through Panzer, Frischer and Stein to ETRE REIT and

the Company's other Subsidiaries and Affiliates, based on the misleading and fraudulent registration

statement and related documents filed with the US Securities and Exchange Commission in connection

with the filing of the ETRE REIT registration statement, and to recover damages caused by Defendants

Panzer, Frischer and Stein's failure to disclose the unauthorized and improper establishment of and

increase in the size of the board of ETRE REIT and any compensation paid to any of the seven

purported directors of the ETRE REIT, and in connection with the unauthorized and improper license agreement entered into with ETRE REIT.

## COUNT II
### Against Defendants Panzer, Frischer and Stein for Breach of Fiduciary Duty

243.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

244.   Defendants Panzer, Frischer and Stein owe the Company fiduciary obligations. By reason of their fiduciary relationships, Defendants Panzer, Frischer and Stein of the Company the highest obligation of good faith, fair dealing, loyalty and due care.

245.   Defendants Panzer, Frischer and Stein, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

246.   Defendants Panzer, Frischer and Stein, and each of them authorized, or by abdication of duty, undertook the numerous wrongs herein set forth, and permitted the registration statements and related documents filed on behalf of and in connection with formation of ETRE REIT to contain material misrepresentations in violation of section 10 (b) of the Exchange act. These actions were not a good faith exercise of his judgment to protect and promote the Company's it's Subsidiaries' and Affiliates' interests.

247.   As a direct and proximate result of Defendants Panzer, Frischer and Stein, and each of their breaches of their fiduciary duties, Defendants Panzer, Frischer and Stein have caused, and will continue to cause, the Company to suffer substantial monetary damages, as well as further and even greater damage in the future, including damage to the Company's, its Subsidiaries' and Affiliates' business and goodwill.

248.   The Company has been directly and substantially injured by reason of Defendants Panzer, Frischer and Stein, and each of their, fraud, intentional breaches and or reckless disregard of

their fiduciary duties to the Company it's subsidiaries and Affiliates. Plaintiffs the Frydman Entity, as a Member and Frydman as a representative of the Company, seek damages and other relief for the Company in an amount to be proven at trial.

## COUNT III
### Against Defendants Panzer, Frischer and Stein for Gross Mismanagement

249.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

250.    By their actions as herein alleged, Defendants Panzer, Frischer and Stein abandoned and abdicated their responsibilities and duties with regard to prudently managing the assets and business of the Company, its subsidiaries and Affiliates in a manner consistent with the requirements of the 2012 Operating Agreement and is otherwise set forth herein with respect to the Company, and with respect operations of a publicly held company as it relates ETRE REIT and the Company's other Subsidiaries and Affiliates.

251.    As a direct result of Defendants Panzer, Frischer and Stein Gross mismanagement and breaches of duty alleged herein, the Company and the Group have sustained and will continue to sustain significant damages.

252.    As a result of the misconduct and breaches of duty alleged herein, Defendants Panzer, Frischer and Stein are liable to the Company in an amount to be proven at trial.

## COUNT IV
### Against Defendants Panzer, Frischer and Stein for Waste of Company Assets

253.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

254.    Between February 17, 2014 and June 21, 2014, in direct violation of sections 3.8 and 6.12 (x) and 6.12 (xiii) of the 2012 Operating Agreement Defendants Frischer, Stein and Panzer entered into

a series of six loan agreements with Panzer, through which ETRE purportedly incurred a $315,000 debt to Panzer and a $50,000 debt to Frischer.

255.    As neither the Panzer loan agreements nor the Frischer loan agreement received prior unanimous approval of the Managers of the Company the debts purported to have been created are a nullity, and pursuant to Section 7.2 of the 2012 Operating Agreement, which provides that any Member who takes any action or purports or attempts to bind the Company in violation of the 2012 Operating Agreement shall be solely responsible for any loss and/or expense incurred by the Company, the Panzer Loan and the Frischer loan are the obligations of Defendants Panzer, Frischer and Stein, and not the obligation of the Company.  Moreover, pursuant to Section 7.2 of the 2012 Operating Agreement, Defendants Panzer, Frischer and Stein have indemnified the Company and Frydman and Winter with respect to such loans.

256.    As stated above, Defendants Panzer, Frischer and Stein, also, without requisite authority, and in express violation of sections 13.1 and 6.12 of the 2012 Operating Agreement licensed the ETRE name and the ERTE trademarks to Subsidiaries and Affiliates of the Company.

257.    As stated above, Defendants Panzer, Frischer and Stein also Transferred company assets to Ersatz ETRE in violation of the 2012 Operating Agreement. Section 2.6 of the 2012 Operating Agreement provides "All property acquired by the Company, real or personal, tangible or intangible, shall be owned by the Company as an entity, and no Member, individually, shall have any ownership interest therein solely due to its capacity as a Member.

258.    By virtue of the purported merger Defendants Panzer, Frischer and Stein effectively caused all of the assets and property of Company be transferred, without proper authority or compensation to Ersatz ETRE.

259.    The acts of Defendants Panzer, Frischer and Stein, as above set forth constitute waste.

260.    As a result of Defendants Panzer, Frischer and Stein's waste, Defendants Panzer, Frischer and Stein are liable to the Company in an amount to be proven at trial.

## COUNT V
### Against Defendants Panzer, Frischer and Stein for Contribution and Indemnification

261.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

262.    On account of the wrongful acts, practices, and related misconduct alleged against Panzer, Frischer and Stein, which arise, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of said Defendants, the Company is entitled to contribution and indemnification from Defendant Panzer, Frischer and Stein in connection with all such claims that have been, are, or may in the future be asserted against the Company by virtue of the said Defendants' misconduct.

## COUNT VI
### Against Defendants Panzer, Frischer and Stein for Abuse of Control

263.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

264.    The conduct of Defendants Panzer, Frischer and Stein, as alleged herein, constituted an abuse of their control over the Company, its Subsidiaries and Affiliates.

265.    As a direct and proximate result of the Defendants Panzer's, Frischer's and Stein's abuse of control, the Company has suffered, and will continue to suffer, damages for which Defendants Panzer, Frischer and Stein are liable in an amount to be proven at trial. Plaintiffs, moreover, has no adequate remedy at law.

266.    As a result of Defendants Panzer, Frischer and Stein's abuse of control, Defendants Panzer, Frischer and Stein are liable to the Company in an amount to be proven at trial.

## COUNT VII
### Against Defendants Panzer, Frischer and Stein for Breach of Contract

267.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

268.    Defendants Panzer, Frischer and Stein actions as hereinabove set forth constitute flagrant breaches of the 20012 Operating Agreement.

269.    The Company and Plaintiffs have been damaged by Defendants Panzer, Frischer and Stein's numerous breaches of contract as hereinabove set forth. Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company as a result thereof, in an amount to be proven at trial.

## COUNT VIII
### Against Defendant Frischer for Breach of his Employment Agreement

270.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

271.    Defendant Frischer's actions as hereinabove set forth constitute breaches of Frischer's Employment Agreement with the Company.

272.    The Company and Plaintiffs have been damaged as a result of Defendant Frischer's breaches of his employment agreement as hereinabove set forth. Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company as a result thereof, in an amount to be proven at trial.

## COUNT IX
### Declaratory Judgment

273.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

73

274. This Court has the power to declare the rights, status or other legal relations of the parties before it.

275. There is an actual, narrow, ripe and purely legal controversy regarding the applicability of the 2012 Operating Agreement to the facts set forth herein.

276. Plaintiff requests that this Court declare that:

a. that the purported merger and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the Managers under, or is otherwise violative of the 2012 Operating Agreement;

b. that the purported Unit Purchase Agreement and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the Managers under, or is otherwise violative of the 2012 Operating Agreement;

c. that the Panzer and Frischer Loan Agreements and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the Managers under, or is otherwise violative of the 2012 Operating Agreement;

d. that the Founder Debt for Equity Exchange Agreement and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the Managers under, or is otherwise violative of the 2012 Operating Agreement;

e. that the ETRE License Agreement and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the Managers under, or is otherwise violative of the 2012 Operating Agreement;

f. that the actions of Defendants Panzer, Frischer and Stein as herein set forth amounts to a "Cause" event in that the Member Defendants and the Manager Defendants have committed an act of dishonesty, misappropriation, embezzlement or fraud involving personal profit or a breach of fiduciary duty in connection with the performance of such Member's or Manager's company duties, or which affects the Company, or any member of the Group, or property of any member of the Group, and/or that the Member Defendants and Manager Defendants have breached in material respect the 2012 Operating Agreement and/or other agreement with the Company or any member of the Group which breach is not cured (to the extent reasonably susceptible to cure) after written notice, and/or that Member Defendants and Manager Defendants have breached of the representations, warranties or covenants contained in the 2012 Operating Agreement and/or in the Agreements entered with or on behalf of the Company, its Subsidiaries and/or Affiliates, and that Defendants Panzer, Frischer and Stein were properly removed as Managers of the Company.

g. that the actions of Defendants the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity as above set forth constitutes an unlawful "Transfer" of their Units in the

74

Company in violation of Section 6.12 of the 2012 Operating Agreement, and that the actions of Defendants the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity as above set forth constitutes A Withdrawal from the Company on July 24, 2014, and that pursuant to section 7.4 of the 2012 Operating Agreement, the Company re-purchased such Former Members' Units in the Company by tendering the Company's promissory note for the capital account balance of such Former Members' Units, and that said Units have been repurchased by the Company;

h. that Frisher has assigned 50% of the Frischer Patents Income to the Company, and that the Company has a right of first refusal with respect to the Frischer Patents at 80% of the bona fide offer from a third party, in accordance with the provisions of the 2012 Operating Agreement; and

i. That the seven members of the board of ETRE REIT, including, without limitation, Panzer, Stein, Frischer, Jay Anderson, Mark Filanowski,  Joseph Capezza and John Gregorits were not properly nominated not appointed as board members and are removed as directors; and

j. that the name "ETRE Financial" and all goodwill associated therewith are the property of the Company and no Member or Affiliate of the Company shall have the right to use the name "ETRE Financial" or "ETRE" as a component of the name of any business venture or otherwise.

## COUNT X
### Injunctive Relief

277.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

278.    The Company has protectable rights under the Frischer Employment Agreement and the 2012 Operating Agreement.

279.    Plaintiffs, on behalf of the Company, request that this Court issue a preliminary and permanent injunction:

g. enjoining Defendants Frischer, Stein, Panzer and Verschleiser, from directly or indirectly claiming to have any right, title or interest of any kind or nature whatsoever in order to any products, methods, practices, processes, discoveries, ideas, designs, improvements, devices, creations or inventions in each case directly or indirectly relating to or useful in any aspect of the business of the Company or the Group, whether created, developed or invented by any of them during the term of their employment and or association with the Company, and, without limitation, the Exchange Traded Real Estate Platform, and any inventions or patent applications assigned to the Company;

**h.** enjoining Defendants Frischer, Stein, Panzer and Verschleiser, the Frischer Entity, the Stein Entity, the Panzer Entity and the Verschleiser Entity through July 3, 2015 pursuant to section 12.2 of the 2012 Operating Agreement from (i) rendering services or giving advice to, or being affiliate with (as employee, partner, consultant or otherwise), or (ii) directly or indirectly through one or more of any of their respective Affiliates, owning, managing, operating, controlling or participating in the ownership, management, operation or control of, any Competitor or any division or business segment of any Competitor; or (iii) hiring, soliciting or encouraging Person to hire, or solicit any individual who is been an employee, consultant or adviser of the Company or any Subsidiary or Affiliate of the Company; or (iv) soliciting or enticing, or attempting to solicit or entice, any investors, contractors, suppliers of the Company or any Subsidiary or Affiliate of the Company for purposes of diverting their business or services from the Company or such Subsidiary or Affiliate or for any other purpose; or (v) making a statement or publication that is intended to or could reasonably be understood to disparage or impugn the reputation of the Company or any such Subsidiary or Affiliate of the Company or any of their respective products, services, executives, partners, directors, officers or employees, regardless of any perceived truth of such statement or publication;

**i.** enjoining Defendant Frischer from Transferring any of the Frischer Patents to any Person without first offering them to the Company, at 80% of the bona fide offer price in accordance with the terms of the 2012 Operating Agreement; and

**j.** enjoining Frisher, Panzer, Stein or Verschleiser or any of their affiliates from serving as Managers of the Company;

**k.** enjoining Frisher, Panzer, Stein, Verschleiser, Jay Anderson, Mark Filanowski, Joseph Capezza and John Gregorits from serving as directors of the ETRE REIT or any of the Company's Subsidiaries or Affiliates.

280.    Plaintiffs and the Company have no adequate remedy at law.

## COUNT XI
### Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Fraud

281.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

282.    The actions of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, as hereinabove set forth constitutes fraud.

283.    As a result of the fraud committed by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, the Company has been damaged as above set forth and seek damages and other relief as a result thereof, in an amount to be proven at trial.

284.    Defendants' Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC actions were willful and malicious and performed with an evil motive and with reckless indifference to the rights of the Company, its Members and Managers, entitling the Company to punitive damages.

### COUNT XII
### Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer,  ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Conversion

285.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

286.    The actions of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, as hereinabove set forth constitutes conversion with respect to, *inter alia*, : (i) the ETRE name and Trademark; (ii) the intellectual property, proprietary products, and trade secrets of ETRE; (iii) the Frischer Paternt Income; (iv) the Frisher Patents and the Company's right of first refusal with respect to the Frischer Patents; (v) the Company's Exchange Traded Real Estate Platform; and (v) the other property of the Company which Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, by their actions have stolen, and have exercised exclusive dominion over.

287.    The assumption by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC of right of ownership over the property of the Company as listed above was without authorization and Defendants have continued to

exercise ownership and dominion to the exclusion of the Company and Plaintiffs over said property even though Plaintiffs have made a demand for return of said property and Defendants' have been under an obligation to return said property.

288.    As a result of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC's conversion the Company has been damaged as above set forth and seek damages and other relief as a result thereof, in an amount to be proven at trial.

**COUNT XIII**
**Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer,  ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Intentional Interference with Contractual Rights**

289.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

290.    The actions of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, as hereinabove set forth constitutes intentional interference with the Company's contractual rights.

291:    As a result of the intentional interference with Plaintiffs' contractual rights committed by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, the Company has been damaged as above set forth and seek damages and other relief as a result thereof, in an amount to be proven at trial.

**COUNT XIV**
**Against Defendants Panzer, Frischer, Stein, Verschleiser, the Panzer Entity, Frischer Entity, Stein Entity, the Verschleiser Enity for Specific Performance**

292.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

293.   Pursuant to Section 14.3 of the 2012 Operating Agreement the Members and Managers of ETRE agreed that irreparable harm would occur in the event that any of the agreements or provisions of the 2012 Operating Agreement were not performed fully by the parties thereto in accordance with their specific terms or conditions or were otherwise breached, and that money damages would be an inadequate remedy for breach of the 2012 Operating Agreement because of the difficulty of ascertaining and quantifying the amount of damage that will be suffered by the Plaintiffs in the event that the 2012 Operating Agreement is not performed in accordance with its terms or conditions or is otherwise breached. It was therefore agreed that the Company and Plaintiffs may seek to enforce specifically the terms and provisions of the 2012 Operating Agreement, such remedies being in addition to and not in lieu of, any other rights and remedies to which the Plaintiffs may be entitled to at law or in equity.

294.   Plaintiffs and the Company have no adequate remedy at law, and hereby seek to require Defendants Panzer, Stein, Frischer, Verschleiser, the Panzer Entity, the Stein Entity, the Frischer Entity and the Verschleiser Entity to specifically perform the terms of the 2012 Operating Agreement.

## DIRECT CLAIMS

### COUNT XV
### Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer,  ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Civil Conspiracy

295.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

296.   Defendants Panzer, Frischer, Stein, Verschleiser, Mayer,  ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC conspired with one another to illegally cause the unauthorized and ultra vires merger of the Company solely as a way to circumvent the "No" vote by Frydman, one of the four Managers of the Company who's affirmative vote was a prerequisite to a series

of proposals to recapitalize the Company, sell Units of the Company and amend the Operating Agreement of the Company all as more fully set forth herein.

297.   Defendants committed numerous overt acts in furtherance of the conspiracy including, but not limited to the actions detailed above as well as other overt acts.

298.   As a direct result of the foregoing conduct, undertaken by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, these Defendants have caused and continue to cause damages to Plaintiffs, including but not limited to depriving plaintiffs of significant economic rights with respect to their Membership interest in ETRE and governance rights with respect to Frydman's interest as a Manager in ETRE.

299.   Defendants' conspiracy was willful and malicious and performed with an evil motive and with reckless indifference to the rights of others, entitling Plaintiffs to punitive damages.

## COUNT XVI
### Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Fraud

300.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

301.   The actions of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, as hereinabove set forth constitutes fraud.

**As a result of the fraud committed by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, Plaintiffs have been damaged as above set forth and seek damages and other relief as a result thereof, in an amount to be prove COUNT XVII**
### Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Intentional Interference with Contractual Rights

302.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

303.    The actions of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, as hereinabove set forth constitutes intentional interference with Plaintiffs' contractual rights.

304.    As a result of the intentional interference with Plaintiffs' contractual rights committed by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, Plaintiffs have been damaged as above set forth and seek damages and other relief as a result thereof, in an amount to be proven at trial.

<u>**COUNT XVIII**</u>
<u>**Against Defendants Panzer, Frischer, Stein, Verschleiser, Mayer,  ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC for Tortious Interference With Prospective Business Relations**</u>

305.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

306.    The actions of Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, as hereinabove set forth constitutes tortious interference with prospective business relations.

307.    As a result of the tortious interference with prospective business relations committed by Defendants Panzer, Frischer, Stein, Verschleiser, Mayer, ETRE Financial Holdings, LLC, LH Financial and ETR Investors Holdings LLC, Plaintiffs have been damaged as above set forth and seek damages and other relief as a result thereof, in an amount to be proven at trial.

<u>**COUNT XIX**</u>
<u>**Against Defendants Panzer, Frischer, Stein and Verschleiser for Breach of Duties of Care, Loyalty, Good Faith and Fair Dealing**</u>

308.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

309.   Defendants Panzer, Frischer, Stein and Verschleiser, By reason of their relationships, owe the Plaintiffs the highest obligation of good faith, fair dealing, loyalty and due care.

310.   Defendants Panzer, Frischer, Stein and Verschleiser, and each of them, violated and breached their duties of good faith, fair dealing, loyalty and due care.

311.   As a direct and proximate result of Defendants Panzer, Frischer, Stein and Verschleiser's, and each of their breaches of their duties of good faith, fair dealing, loyalty and due care, Defendants Panzer, Frischer and Stein have caused, and will continue to cause, Plaintiffs to suffer substantial monetary damages.

312.   As a result of Defendants Panzer, Frischer, Stein and Verschleiser's, and each of their breaches of their duties of good faith, fair dealing, loyalty and due care Plaintiffs have been directly and substantially injured, and Plaintiffs seek damages and other relief for the Company in an amount to be proven at trial.

## COUNT XX
### Against Defendants Panzer, Frischer, Stein, Verschleiser, the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity for Breach of Contract

313.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

314.   By their actions as herein alleged, Defendants Panzer, Frischer, Stein, Verschleiser, the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity, breached the 2012 Operating Agreement.

315.    As a direct result of Defendants Panzer, Frischer, Stein, Verschleiser, the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity's breaches of the 2012 Operating Agreement Plaintiffs have has sustained and will continue to sustain significant damages.

316.    As a result of the breaches of the 2012 Operating Agreement by Defendants Panzer, Frischer, Stein, Verschleiser, the Panzer Entity, the Frischer Entity, the Stein Entity and the Verschleiser Entity as above set forth Plaintiffs are entitled to recover damages in an amount to be proven at trial.

## COUNT XXI
### Against Defendant the Stein Entity on the Stein Note and Stein Pledge Agreement

317.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

318.    The Stein Entity's actions as above set forth resulted in the Transfer of the Stein ' Units as defined by and pursuant to the 2012 Operating Agreement on July 24, 2014.

319.    As a result of Defendants' Transfer of their Units, the Stein Note automatically became due and payable on July 24, 2014, but was not timely paid.

320.    Plaintiff the Frydman Entity has made demand for payment, and Defendant the Stein Entity has failed to pay.

321.    Therefore, Plaintiff the Frydman Entity is entitled to judgment against the Stein Entity on the Stein Note in an amount to be proved at trial.

322.    In addition, pursuant to Section 2(b) of Stein Pledge Agreement, upon the occurrence of an Event of Default, all of the Borrower's voting and consensual powers or rights pertaining to the Pledged Securities "shall terminate and the Pledgee or its nominee or nominees shall have the sole and exclusive right to exercise all powers of voting and consent pursuant to the Pledged Securities, or any part thereof, and shall exercise such powers in such manner as the Pledgee may elect in its sole discretion."

323.    In accordance therewith Plaintiffs terminated the Stein Entity's rights to exercise all powers of voting and consent pursuant to the Pledged Securities and the Frydman Entity elected to exercise its rights and powers pertaining to the Pledged Securities.

324.    Pursuant to Section 2(b) of the Stein Pledge Agreement, upon the occurrence of an Event of Default, all of the Borrower's voting and consensual powers or rights pertaining to the Pledged Securities "shall terminate and the Pledgee or its nominee or nominees shall have the sole and exclusive right to exercise all powers of voting and consent pursuant to the Pledged Securities, or any part thereof, and shall exercise such powers in such manner as the Pledgee may elect in its sole discretion."

325.    On August 7, 2014 Borrower's rights to exercise all powers of voting and consent pursuant to the Pledged Securities were terminated by Plaintiff JF Entity, who elected to exercise its rights and powers pertaining to the Pledged Securities.

326.    Pursuant to Section 2 (d) (1) of the Stein Pledge Agreement "any Unit dividend, Unit split, reclassification, readjustment, or other change is declared or made in the capital structure of any entity whose securities are included in the Pledged Securities, all new, substituted, and additional shares, or other securities, issued by reason of any such change and received by the Pledgor or to which the Pledgor shall be entitled shall be held by the Pledgor in trust for the benefit of, and immediately delivered by the Pledgor to, the Pledgee, duly endorsed in blank or with a stock power duly endorsed in blank, and shall thereupon constitute Pledged Securities to be held by the Pledgee under the terms of this Agreement."

327.    As a result of the foregoing, Plaintiff the Frydman Entity removed Jesse Stein as a Manager / member of the board of Second ETRE and substituted Daniel Edelman in his place and stead.

328.    As a result of the foregoing, any action requiring the vote, consent and/or approval of Jesse Stein in Second ETRE is deemed from and After August 7, 2014, to require the vote, consent and/or approval of Daniel Edelman.

**COUNT XXII**
**Declaratory Judgment**

329.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

330.    This Court has the power to declare the rights, status or other legal relations of the parties before it.

331.    There is an actual, narrow, ripe and purely legal controversy regarding the applicability of the 2012 Operating Agreement and the Stein Pledge Agreement to the facts set forth herein.

332.    Plaintiff requests that this Court declare that:

a.   that the purported merger and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to the Managers under, or is otherwise violative of the 2012 Operating Agreement;

b.   that the purported Unit Purchase Agreement and related unauthorized acts as hereinabove set forth are ultra vires and therefore invalid for violating the rights granted to Plaintiffs under, or is otherwise violative of the 2012 Operating Agreement;

c.   that Plaintiffs' removal of Panzer, Stein and Frischer as Managers of the Company is effective, and that Daniel Edelman is successor Manager to Jesse Stein, and that Alex Libin is successor Manager to Scott Panzer, and that Ryan Morfin is successor Manager to Paul Frisher; and

333.    that pursuant to the Stein Pledge Agreement Jesse Stein was properly removed as a Manager / member of the board of Ersatz ETRE and Daniel Edelman was substituted in his place and stead. As a result of the foregoing, any action requiring the vote, consent and/or approval of Jesse Stein in Ersatz ETRE is deemed from and After August 7, 2014, to require the vote, consent and/or approval of Daniel Edelman.

**COUNT XXIII**
**Injunctive Relief**

85

334.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

335.    Plaintiffs have protectable rights under the 2012 Operating Agreement.

336.    Plaintiffs, request that this Court issue a preliminary and permanent injunction enjoining Defendants Frischer, Stein, Panzer, Verschleiser, the Panzer Entity, the Frischer Entity, the Stein Enity and the Verschleiser Entity from directly or indirectly taking any action in violation of the 2012 Operating Agreement.

337.    Plaintiffs and the Company have no adequate remedy at law.

## COUNT XXIII
### Against Defendants Panzer, Frischer, Stein, Verschleiser, the Panzer Entity, Frischer Entity, Stein Entity, the Verschleiser Entity  for Specific Performance

338.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully rewritten herein.

339.    Pursuant to Section 14.3 of the 2012 Operating Agreement the Members and Managers of ETRE  agreed that irreparable harm would occur in the event that any of the agreements or provisions of the 2012 Operating Agreement were not performed fully by the parties thereto in accordance with their specific terms or conditions or were otherwise breached, and that money damages would be an inadequate remedy for breach of the 2012 Operating Agreement because of the difficulty of ascertaining and quantifying the amount of damage that will be suffered by the Plaintiffs in the event that the 2012 Operating Agreement is not performed in accordance with its terms or conditions or is otherwise breached. It was therefore agreed that the Company and Plaintiffs may seek to enforce specifically the terms and provisions of the 2012 Operating Agreement, such remedies being in addition to and not in lieu of, any other rights and remedies to which the Plaintiffs may be entitled to at law or in equity.

340.    Plaintiffs have no adequate remedy at law, and hereby seek to require Defendants Panzer, Stein, Frischer, Verschleiser, the Panzer Entity, the Stein Entity, the Frischer Entity and the Verschleiser Entity to specifically perform the terms of the 2012 Operating Agreement.

## PRAYER FOR RELIEF

Plaintiff, on behalf of themselves and on behalf of ETRE, pray for judgment as follows:

341.    Awarding compensatory damages against each respective Defendant in amounts to be proven at trial;

342.    Awarding appropriate equitable relief, including injunctive relief, specific performance and declaratory relief requested herein;

343.    Awarding punitive damages at the maximum amount permitted by law;

344.    Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs.

345.    Awarding such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 22, 2014

Jacob Frydman, pro se
60 Broad Street
34th Floor
New York, NY 10004
(212) 388-6880
Jacob.f@urpa.com

WROBEL, SCHATZ & FOX LLP

87

By: _____
David C. Wrobel (DW-5242)
M. Katherine Sherman (KW-7490)
*Attorneys for Plaintiff Winter Investors, LLC*
1040 Avenue of the Americas,
11th Floor
New York, NY 10018
(212) 421-8100
wroble@wsfny.com
Sherman@wsfny.com

## VERIFICATION

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK   )

JACOB FRYDMAN, being duly sworn, deposes and says:

I am a Plaintiff in this action and am the Manager of Plaintiff Winter Investors, LLC. I have read the

forgoing Verified Complaint and know the contents thereof. The same is true to my own knowledge,

except those matters therein which are stated to be alleged on information and belief, and as to those

matters I believe them to be true.

> Dated: August 22, 2014
> New York, New York

Jacob Frydman

SWORN BEFORE ME THIS 22ND
DAY OF AUGUST, 2014

NOTARY

DANIEL CHARLES EDELMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02ED6298639
Qualified in New York County
My Commission Expires March 17, 2018

89