# EXHIBIT AD

| | |
|---|---|
| **From:** | Paul Frischer <pf@etrefinancial.com> |
| **Sent:** | Monday, August 04, 2014 7:14 PM |
| **To:** | Jacob Frydman; Jesse Stein; 'Panzer, Scott (US)'; 'Eli Verscheiser'; solomonmayer@gmail.com |
| **Cc:** | Paul Frischer |
| **Subject:** | Re: ETRE Equity Financing Transaction Executed Documents |
| **Attachments:** | Agreement of Merger - EXECUTED.PDF; ETRE FINANCIAL, LLC DE - CERTIFICATE OF MERGER.PDF; LLC Agreement - EXECUTED.PDF |

Jacob,

The company is in receipt of your email and attached notice of meeting of the Board of Managers of ETRE Financial, LLC dated August 2, 2014. Please note that ETRE Financial, LLC was merged with and into ETRE Financial Holdings, LLC on July 24, 2014, with ETRE Financial Holdings, LLC being the surviving entity in the merger and changing its name to ETRE Financial, LLC as part of the merger. For your information, I am attaching a certified copy of the filed Certificate of Merger.

Please also note that under the terms of the Agreement of Merger (which has been previously supplied but is attached again for your reference), your rights as a manager or member of the surviving entity (including noticing a board meeting) are subject to your executing and returning a counterpart to the limited liability company agreement of the surviving entity dated as of July 24, 2014 that was previously supplied to you (but is attached again for your convenience). Accordingly, no one will be attending the meeting on Thursday.

Jacob, if you would like to meet at a mutually convenient time and place to discuss the future of ETRE Financial, LLC, let us know. Next week is better for us.

Thanks, Paul

**From:** Jacob Frydman <jacob.f@urpa.com>
**Date:** Saturday, August 2, 2014 at 1:41 PM
**To:** Jesse Stein <js@etrefinancial.com>, paul frischer <pf@etrefinancial.com>, Scott Panzer <Scott.Panzer@am.jll.com>, 'Eli Verscheiser' <Eli.V@multigroups.com>, "solomonmayer@gmail.com" <solomonmayer@gmail.com>
**Subject:** RE: ETRE Equity Financing Transaction Executed Documents

Gentlemen

Please see attached notice of meeting.

Thank you,

*Jacob Frydman*
*Chairman, CEO*

**UNITED REALTY GROUP OF COMPANIES**
60 Broad Street, 34th Floor | New York, NY 10005
Direct: 212-388-6880 | Main: 212-388-6800
Mobile: 917-578-3800 | Fax: 212-388-6811
Jacob.F@URPA.com

**From:** Jacob Frydman
**Sent:** Saturday, August 02, 2014 12:46 PM
**To:** 'Jesse Stein'; 'Paul Frischer'; 'Panzer, Scott (US)'; 'Eli Verscheiser'; solomonmayer@gmail.com
**Subject:** RE: ETRE Equity Financing Transaction Executed Documents

Gentlemen

Please be advised that these agreements have not been properly approved by the board of Etre Financial, LLC. The transactions contemplated herein are ultravires, and will not have any effect.

The proposed transactions are violative of the operating agreement of ETRE Financial, LLC and I reserve all rights with respect thereto.

Should you close these transactions in violation of the Operating Agreement of ETRE Financial LLC I will pursue all rights and remedies available to me at law or in equity.

Thank you,

*Jacob Frydman*
*Chairman, CEO*

**UNITED REALTY GROUP OF COMPANIES**
60 Broad Street, 34th Floor | New York, NY 10005
Direct: 212-388-6880 | Main: 212-388-6800
Mobile: 917-578-3800 | Fax: 212-388-6811
Jacob.F@URPA.com

**From:** Jesse Stein [mailto:js@etrefinancial.com]
**Sent:** Thursday, July 24, 2014 4:01 PM
**To:** 'Paul Frischer'; 'Panzer, Scott (US)'; Jacob Frydman; 'Eli Verscheiser'; solomonmayer@gmail.com
**Cc:** js@etrefinancial.com
**Subject:** ETRE Equity Financing Transaction Executed Documents

To All,

Please see the attached executed documents.

    a. Consent for Merger (ETRE Financial, LLC)
    b. Consent for Merger (ETRE Financial Holdings, LLC)
    c. Agreement of Merger
    d. LLC Agreement
    e. Consent for Investments
    f. Unit Purchase Agreement
    g. Debt for Equity Exchange Agreement

Thank you.

*Jesse Stein*
**ETREFinancial**
212.596.7225 xt. 2
js@etrefinancial.com

DISCLAIMER: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy it and notify us immediately via reply e-mail or by telephone. Thank you.

EXHIBIT AE

**Winter Investors, LLC**
**Jacob Frydman**
**60 Broad Street**
**34th Floor**
**New York, NY 10004**

August 6, 2014

Jese Stein
c/o JS3 Alternative Investments LLC
100 Jay Street, Apt 14H
Brooklyn, NY 11201
Via Email js@etrefinancial.com

Scott Panzer
c/o SMP Realty NM LLC
200 Candlewood Lake Road North
New Milford, CT 06776
Via email scottpanzer@optonline.net

Paul Frischer
c/o Frischer Kranz Inc.
80 Birch Lane
Greenwich, CT 06830
Via email pf@etrefinancial.com

## NOTICE OF REMOVAL FOR CAUSE

Please take notice that pursuant to Section 6.3 (e) of that certain Operating Agreement (the "Agreement") of ETRE Financial, LLC (the "Company") made as of August 15, 2012, by and among ETRE Financial, LLC, a Delaware limited liability company (the "Company"); Jacob Frydman ("Frydman"), Eli Verschleiser ("Verschleiser") Jesse Stein ("Stein"), Scott Panzer ("Panzer") and Paul Frischer ("Frischer); and Winter Investors, LLC ("JF Entity"), JS3 Alternative Investments LLC ("JS Entity"), SMP Realty NM LLC ("SP Entity"), Frischer Kranz Inc ("PF Entity"), and EVE, LLC ("EV Entity") Frydman hereby removes Stein, Panzer and Frischer as Managers for Cause, effective immediately. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement.

The reasons for said removal includes, *inter alia*, the fraud, intentional misconduct and bad faith violation of the implied contractual covenant of good faith and fair dealing and the intentional willful breaches by each of Stein, Panzer and Frischer of sections 3.2, 3.8, 6.1, 6.3, 6.11, 6.12, 7.3, 7.6, 12.2, 13.1, 14.5, of the Agreement in connection with the ultravires attempt to circumvent the Agreement by executing certain agreements purporting to effect a merger of the Company, the recapitalization of the Company, the exchange of debt for equity, the sale of additional units in the

Company, and related agreements and consents claimed to have been effected on or about July 24, 2014, none of which became effective by virtue of their lacking the requisite unanimous approval of the board as required under the terms of the Agreement, and/or otherwise violating specific provisions of the Agreement.

Please take further notice that upon Stein's, Panzer's and Frischer's removal for Cause, then, in addition to any other rights which the Company, the other manager or the Members may have against the removed managers, the removed managers shall not be entitled to any indemnification by the Company by reason of such Covered Person's fraud, intentional misconduct or bad faith violation of the implied contractual covenant of good faith and fair dealing or such Covered Person's breach of a the Agreement pursuant to Section 6.8 of the Agreement.

Please take further notice that pursuant to Section 6.3 (b) of the Agreement, Frydman, as the sole remaining Manager of the Company has the right to designated replacement managers to fill the vacancies created by removal of Stein, Panzer and Frischer for cause.

Please take further notice that Frydman hereby designates Daniel Edelman to succeed Stein as a manager of the Company, Alex Libin to succeed Panzer as a manager of the Company, and Ryan Morfin to succeed Frisher as a manager of the Company.

Finally, please be advised that Frydman, Winter and their respective affiliates reserve all rights at law and in equity with respect to the fraud, breaches of fiduciary duty, intentional misconduct and bad faith violation of the implied contractual covenant of good faith and fair dealing and the intentional willful breaches of the Agreement by Stein, Frisher and Panzer.

Very truly yours,

Jacob Frydman, Manager

cc:     Daniel Edelman
        Alex Libin
        Ryan Morfin

# EXHIBIT AF

Winter Investors, LLC
60 Broad Street
34<sup>h</sup> Floor
New York, NY 10004

August 7, 2014

JS3 Alternative Investments LLC
100 Jay Street
Brooklyn, NY
11201

> *In re: that certain secured promissory note ("Note") executed by JS3 Alternative
> Investments LLC ("JS Entity" or "Borrower" or "Pledgor") on August 20, 2012, made
> payable to Winter Investors ("JF Entity'? and EVE, LLC ("EV Entity'? (JF Entity and
> EV Entity are collectively referred to as "Holder" or "Pledgee"). The indebtedness
> evidenced under the Note (the "Loan" is secured by a pledge of 30,000 Units
> ("Pledged Securities") of the issued and outstanding membership interests of ETRE
> Financial, LLC, a Delaware limited liability company (the "Company'?, pursuant to a
> Pledge Agreement ("Pledge Agreement") between Borrower and Holder also executed
> on August 20, 2012.*

Gentlemen:

The Note, Pledge Agreement, and all other documents executed in connection with the Loan, are
referred to herein as the "Loan Documents." Capitalized terms not defined herein shall have their
respective meanings as defined under the Loan Documents.

## NOTICE OF EVENT OF DEFAULT

Section 1 of the Note provides that "JS Entity ... for value received, hereby promises to pay one-
half to the order of [JF Entity] ... and to pay one-half to the order of [EV Entity] ... the principal
sum equal to (i) the JS Entity Initial Capital Contribution; and (ii) increased by 33% of all Capital
Calls contributed by the *JF* Entity and the EV entity (in the aggregate, the "Principal") on or
before the earlier of (i) the date which is ten (10) years after the date hereof, and (ii) the
date Borrower sells or otherwise Transfers its Units in the Company (hereinafter referred to as
the "Due Date") and to pay interest from the date thereof on the unpaid principal amount hereof
at the rate and on the dates set forth below, all on the terms and conditions set forth herein."

Section 3 of the Note provides: "If any of the events specified in this Section 3 shall occur
(herein individually referred to as an 'Event of Default'): (i) Default in payment of Principal or

interest when due under this Note; then, the Holder of this note may, by notice to the Borrower, declare the principal of this Note, all interest thereon and all other amounts payable hereunder to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by the Borrower, whereupon the principal amount of this Note, all such interest and all such amounts shall become and be immediately due and payable, and exercise any and all of its other rights under applicable law hereunder."

Please be advised that the following hereby constitutes an **EVENT OF DEFAULT:**

### FAILURE TO PAY PRINCIPAL AND INTEREST UPON DUE DATE:

The Note specifies that, on the Due Date, the Borrower shall pay to the Holder the Principal, all interest thereon, and all other amounts payable under the Loan Documents. Section 1 of the Note provides that the Due Date will occur immediately if the Borrower "sells or otherwise Transfers its Units in the Company."

The Note specifies that all capitalized terms not defined in the Note, including "Transfer," shall have the meanings ascribed to them in the Limited Liability Company Agreement of August 15, 2012, made by and among ETRE Financial, LLC, a Delaware limited liability company, Jacob Frydman, Eli Verschleiser, Jesse Stein, Scott Panzer and Paul Frischer (the "Principals"), and Winter Investors, LLC, JS3 Alternative Investments LLC, SMP Realty NM LLC, Frischer Kranz Inc, and EVE, LLC (the "Agreement").

The Agreement defines Transfer as follows: "'Transfer' means, with respect to any Unit, property, asset or other right or interest, when used as a verb, to sell, assign, transfer, exchange, distribute, devise, gift, grant a lien on, encumber or otherwise dispose of such Unit, property, asset or other right or interest, in whole or in part, or, when used as a noun, the sale, assignment, transfer, exchange, distribution, devise, gift, granting of a lien, encumbrance or other disposition of such Unit, property, asset or other right or interest, in whole or in part, in either case, whether pursuant to a sale, merger, combination, consolidation, reclassification or otherwise, and whether voluntarily or by operation of law."

On July 24, 2014, JS3 Alternative Investments LLC Transferred its Units in the Company. As a result all Principal, all interest thereon, and all other amounts payable under the Loan Documents became due and payable to the Holder as of July 24, 2014.

Section 3 of the Note defines "Event of Default" to occur if there is a "Default in payment of Principal or interest when due under this Note." As of August 7, 2014, the Borrower has not yet paid to the Holder the Principal, all interest thereon, and all other amounts payable under the Loan Documents. Such nonpayment constitutes an Event of Default.

### NOTICE THAT ALL INDEBTEDNESS, INTEREST, AND OTHER AMOUNTS PAYABLE UNDER THE LOAN DOCUMENTS ARE IMMEDIATELY DUE

**Pursuant to Section 3 of the Note, JF Entity hereby elects to declare the principal of the**

**Note, all interest thereon and all other amounts payable to be immediately due and payable, and hereby makes immediate demand for same.**

Section 2(b) of the Pledge Agreement provides that, upon the occurrence of an Event of Default, all of the Borrower's voting and consensual powers or rights pertaining to the Pledged Securities "shall terminate and the Pledgee or its nominee or nominees shall have the sole and exclusive right to exercise all powers of voting and consent pursuant to the Pledged Securities, or any pati thereof, and shall exercise such powers in such manner as the Pledgee may elect in its sole discretion." **Borrower's rights to exercise all powers of voting and consent pursuant to the Pledged Securities are hereby terminated and JF Entity hereby elects to exercise its rights and powers pertaining to the Pledged Securities.**

Section 9 of the Pledge Agreement provides that the Borrower shall pay all of the Lender's expenses (including reasonable legal fees, and all such other costs and expenses described in Section 9) incurred by the Lender in connection with enforcing any obligation of Pledgor or collecting any payments due from the Pledgor under the Loan Documents. All such costs and expenses shall accrue interest at the post-default interest rate, as specified in Section 2 of the Note.

Section 2 of the Note provides: "In the event that the Principal amount of this Note is not paid in full on the Due Date, interest at the maximum legally permitted interest rate shall accrue on the balance of any unpaid Principal until such balance is paid. Solely to the extent necessary to prevent interest under this Note from exceeding the maximum legal rate, any amounts that would be treated as excessive under a final judicial interpretation of applicable law shall be deemed to have been a mistake and automatically cancelled, and if received by Holder, shall be refunded to Borrower." **Interest on the amounts due shall be calculated and accrue at 24% per annum until paid in full.**

Section 3(a) of the Pledge Agreement provides that, upon an Event of Default, the Lender "shall have the rights and remedies provided by the Universal Commercial Code (the "Code") as in force in the State of New York, and any other applicable law." This includes the right, under U.C.C. $\S$ 9-609 to take possession of the Pledged Securities pursuant to judicial process.

Section 2 (d) (1) of the Pledge Agreement provides that "any Unit dividend, Unit split, reclassification, readjustment, or other change is declared or made in the capital structure of any entity whose securities are included in the Pledged Securities, all new, substituted, and additional shares, or other securities, issued by reason of any such change and received by the Pledgor or to which the Pledgor shall be entitled shall be held by the Pledgor in trust for the benefit of, and immediately delivered by the Pledgor to, the Pledgee, duly endorsed in blank or with a stock power duly endorsed in blank, and shall thereupon constitute Pledged Securities to be held by the Pledgee under the terms of this Agreement."

**Demand is hereby made for immediate delivery by the Pledgor to JF Entity at 60 Broad Street, 34th Floor, New York, NY of 43,149 Units of ETRE Financial, LLC f/k/a ETRE Financial Holdings, LLC, duly endorsed in blank or with a stock power duly endorsed in blank.**

Section 3(a) of the Pledge Agreement also provides that, upon an Event of Default the Lender "may, without any notice except as hereinafter provided ... sell, deliver, assign, and transfer the Pledged Securities or any part thereof."

Section 10 of the Pledge Agreement provide: "The Pledgor has agreed not to raise or interpose any set off or counterclaim of any kind of nature whatsoever which they may have against the Pledgee in any action brought upon this Agreement and the Pledgor acknowledges that it has no defense of any kind or nature to the enforcement of this Agreement or to the binding nature of the obligations represented hereby." Section 7 of the Note provides the same.

Upon the occurrence of an Event of Default, Lender has the ability to exercise various additional rights and remedies under the Loan Documents, and otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Additionally, no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any default or any Event of Default is intended to constitute a waiver of any right or remedy available to Lender. Please note that we have no obligation or duty to inform Borrower of Lender's intention to exercise its rights and remedies.

Nothing contained in this letter nor any statement by or on behalf of Lender as to the amount due and owing under the Loan Documents nor Lender's acceptance of payment of less than the full amount due and payable under the Loan documents shall: (a) be construed to constitute a waiver of the obligations of Borrower or of any rights, powers or remedies of Lender, under any of the Loan Documents, at law, in equity, by statute or otherwise, all of which obligations, rights, powers and remedies are expressly reserved and may be exercised at any time, (b) be construed to constitute a waiver, cure or extension of time with respect to the obligations of Borrower under any of the Loan Documents, whether or not a default under such obligations is known to Lender, (c) limit the rights of Lender to receive any and all sums which may be or become due or payable under the Loan Documents, including, without limitation, default interest, late fees, costs of collection, costs of enforcement and all interest thereon, (d) constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity, (e) constitute an offer to settle or waive any rights of Lender under any of the Loan Documents, (f) constitute a waiver by Lender of any other default by Borrower under the Loan Documents, whether or not referred to herein or in any prior notice of default, (g) constitute an election of remedies by Lender, Lender hereby reserving all rights and remedies under law and under the Loan documents, (h) constitute a waiver, modification, relinquishment or forbearance by Lender of any right or remedy under the Loan Documents or under law, all of which are expressly reserved by Lender or (i) constitute a reinstatement of the Loan or a modification of any of the Loan Documents.

Please be advised that no oral communication from or on behalf of Lender or any of its agents, employees or representatives shall constitute an agreement, commitment or evidence of any assurance or intention of Lender with respect to any aspect of the indebtedness evidenced by the Loan Documents. Any such agreement, commitment, assurance or intention shall be effective only if in writing and duly executed and delivered by Lender.

**LENDER IS ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE LOAN DOCUMENTS AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

You are hereby notified that Lender shall strictly enforce the Note, the Pledge Agreement and the other Loan Documents in accordance with their respective terms.

In the event Borrower makes any subsequent payment of any amount less than all of the indebtedness due under the Loan (a "Partial Payment"), Lender will apply such Partial Payment to the indebtedness owing under the Loan Documents as a partial payment. No such Partial Payment or the acceptance thereof by Lender shall constitute or be deemed or construed as a waiver of any default under the Loan Documents. In addition, any Partial Payment or the acceptance of any Partial Payment by Lender shall not constitute or be deemed or construed as a cure of any existing default under the Loan Documents, a modification of the Loan Documents or the terms of this letter, a reinstatement or satisfaction of the Loan, an election of remedies by Lender, or a waiver, modification, relinquishment or forbearance by Lender of any of Lender's rights or remedies under the Loan Documents or at law or in equity, all of which rights and remedies Lender hereby expressly reserves.

All of Lender's claims, demands and accruals regarding the above-described Loan obligations, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

Very Truly Yours,
Winter Investors, LLC

By: _____
    Jacob Freedman, Manager

EXHIBIT AG

Winter Investors, LLC
60 Broad Street
34th Floor
New York, NY 10004

August 7, 2014

ETRE Financial, LLC
ETRE Financial Holdings, LLC
JS3 Alternative Investments, LLC
Frischer Kranz Inc.
SMP Realty NM, LLC
EVE, LLC
ETR Investors Holdings LLC
Paul Frischer
Jesse Stein
Scott Panzer
Sol Mayer; and
Eli Verschleiser
*c/o Paul Frischer*
*44 Wall Street*
*Second Floor*
*New York, NY 10005*

<u>*Via email, Certified US Mail, Return Receipt Requested*</u>
<u>*And Via Overnight Delivery Service*</u>

## <u>NOTICE OF LENDER'S ELECTION TO EXERCISE ALL RIGHTS AND POWERS PERTAINING TO THE 43,149 UNITS OF ETRE FINANCIAL, LLC F/K/A ETRE FINANCIAL HOLDINGS, LLC OWNED BY JS3 ALTERNATIVE INVESTMENTS, LLC (THE "PLEDGED SECURITIES") PLEDGED TO JF ENTITY AS A RESULT OF BORROWER'S DEFAULT</u>

> *In re: that certain secured promissory note ("Note") executed by JS3 Alternative Investments LLC ("JS Entity" or "Borrower" or "Pledgor") on August 20, 2012, made payable to Winter Investors ("JF Entity'") and EVE, LLC ("EV Entity") (JF Entity and EV Entity are collectively referred to as "Holder" or "Pledgee"). The indebtedness evidenced under the Note (the "Loan" is secured by a pledge of 30,000 Units ("Pledged Securities") of the issued and outstanding membership interests of ETRE Financial, LLC, a Delaware limited liability company (the "Company"), pursuant to a Pledge Agreement ("Pledge Agreement") between Borrower and Holder also executed on August 20, 2012.*

Gentlemen:

Please be advised that as a result of Borrower's default with respect to that certain Note, Pledge Agreement, and all other documents executed in connection with the Loan (the "Loan Documents") referenced above, JF Entity, as Lender hereby notices you that it has, pursuant to a default notice of even date herewith to Borrower (copy attached), **terminated Borrower's rights to exercise any powers of voting and consent pursuant to the Pledged Securities and has elected to hereafter exercise all rights and powers pertaining to the Pledged Securities in**

**accordance with Lender's rights under the Loan Documents.**

Please take further Notice that JS3 Alternative Investments LLC has no further rights to vote or consent to any matter requiring the consent of JS3 Alternative Investments LLC.

Please take further notice that Lender hereby removes Jesse Stein as a Manager / member of the board of ETRE Financial, LLC and substitutes Daniel Edelman in his place and stead.

Please take further notice that any action requiring the vote, consent and/or approval of Jesse Stein shall hereafter be deemed to require the vote, consent and/or approval of Daniel Edelman. Mr. Edelman can be reached at 60 Broad Street, 34th Floor, New York, NY 10004, Daniel.e@urpa.com, 212-388-6866.

Please take further notice that any action requiring the vote, consent and/or approval of JS3 Alternative Investments LLC shall hereafter be deemed to require the vote, consent and/or approval of Winter Investors, LLC.

Nothing contained in this letter nor any statement by or on behalf of Lender or Jacob Frydman shall: (a) be construed to constitute a waiver of the obligations of Borrower or of any rights, powers or remedies of Lender, under any of the Loan Documents, at law, in equity, by statute or otherwise, all of which obligations, rights, powers and remedies are expressly reserved and may be exercised at any time, (b) be construed to constitute a waiver, cure or extension of time with respect to the obligations of Borrower under any of the Loan Documents, whether or not a default under such obligations is !mown to Lender, (c) limit the rights of Lender under the Loan Documents, (d) constitute a waiver of any rights of Lender which Lender may be lawfully be entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity, (e) constitute an offer to settle or waive any rights of Lender under any of the Loan Documents, (f) constitute a waiver by Lender (as Lender or in any other capacity) or Jacob Frydman of any other default by Borrower under the Loan Documents, and any default, act, failure to act or other matter by ETRE Financial, LLC, ETRE Financial Holdings, LLC, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC, EVE, LLC, ETR Investors Holdings LLC, Paul Frischer, Jesse Stein, Scott Panzer, Sol Mayer and/or Eli Verschleiser with respect to the Operating Agreement of ETRE Financial LLC dated August 15, 2012 (the "Operating Agreement"), or any other matter with respect to the ultravires acts undertaken by any of the foregoing with respect to the transactions claimed to have been undertaken on or about July 24, 2014, whether or not referred to herein or in any prior notice, letter or other communication, (g) constitute an election of remedies by Lender, Lender hereby reserving all rights and remedies under law and under the Loan documents and the Operating Agreement, (h) constitute a waiver, modification, relinquishment or forbearance by Lender of any right or remedy under the Loan Documents or under law, equity or the Operating Agreement, all of which are expressly reserved by Lender or (i) constitute a reinstatement of the Loan or a modification of any of the Loan Documents.

Very Truly Yours,
Winter Investors. LLC

By:
Jacob Frydman, Manager

EXHIBIT AH

The undersigned, Jacob Frydman, being the sole Board member and Manager of ETRE FINANCIAL, LLC, a Delaware limited liability company (the "Company"), entitled to vote on the matters set forth herein, and acting pursuant to the provisions of the Delaware Limited Liability Company Act, does hereby declare the following as the action of the Company pursuant to Section 7.4 (b) of the Company's Operating Agreement dated August 15, 2012, does hereby consent to the taking of such action without a meeting, does hereby vote in favor of such action, and does hereby waive all notice in connection with such action, as of the 15th day of August, 2014 (the "Effective Date"):

WHEREAS, pursuant to section 7.4 (b) of the Company's Operating Agreement in the event a Member's employment with the Company is terminated without Cause or a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member, and/or his or her Personal Representative or Successor, and if the Company so elects, such Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement upon a Member's termination of employment (a "Former Member"), and in the event the Board (not including a withdrawing terminated Member serving as a Manager) by unanimous vote or written consent elects to repurchase such Former Member's Units, the Company shall notify the Former Member or other applicable holder in writing of such election and, within thirty (30) days after determination of the repurchase price therefor, pay the repurchase price to the Former Member;

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement the purchase price paid to a Former Member who withdrew from the Company or who's employment was terminated for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the

Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of this Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company;

WHEREAS, on July 24, 2014, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members;

WHEREAS, pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC; and

WHEREAS the Company desires to repurchase the Withdrawing Members' Units, with the purchase price to be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York);

BE IT RESOLVED, that the Company hereby elects to repurchase all the Withdrawing Members' Units at the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants as set forth in the balance sheet set forth in the Company's 2013 US income tax return, a copy of which is attached hereto as Exhibit "A";

BE IT FURTHER RESOLVED, that Jacob Frydman, as the sole Manager entitle to vote on this Action is hereby authorized to:

(i)    Issue four (4) promissory notes conforming to the requirements of Section 7.4 of the Company's Operating Agreement, one each (a) in favor of JS3 Alternative Investments, LLC for its 30,000 Units in the Principal amount of $18,274.20; (b) in favor of Frischer Kranz Inc. for its 20,000 Units in the Principal amount of $12,182.80; (c) in favor of SMP Realty NM, LLC for its 20,000 Units in the Principal amount of $12,182.80; and (d) in favor of EVE, LLC for its 15,000 Units in the Principal amount of $9,137.10, and otherwise on such terms as are set forth in Section 7.4 of the Company's Operating Agreement in the forms attached hereto as Exhibits B-1, B-2, B-3 and B-4; and

(ii)     Issue to each Withdrawing Member a release in the forms attached hereto as Exhibits C-1; C-2; C-3 and C-4; and to withhold any payments under each of the promissory notes until the respective Withdrawing Member shall execute and return to the Company the release as required pursuant to section 7.4 of the Company's Operating Agreement;

BE IT FURTHER RESOLVED, that the Company through its authorized agent, Jacob Frydman, is hereby authorized to do and perform, or cause to be done and performed, all such acts, deeds and things, and to make, execute and deliver, or cause to be made, executed and delivered, all of the foregoing,

BE IT FURTHER RESOLVED , this Action by Written Consent may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and

BE IT FURTHER RESOLVED , that the execution and delivery of this Action by Written Consent by delivery of a facsimile copy bearing the facsimile signature of a party hereto shall constitute a valid and binding execution and delivery of this Written Consent by such party, and those facsimile copies shall constitute enforceable original documents.

IN WITNESS WHEREOF, the undersigned has duly executed this Action by Written Consent as of the Effective Date.

BOARD MEMBERS AND MANAGER
ENTITLED TO VOTE ON THIS ACTION :


Jacob Frydman
August 15, 2014
New York, NY

Exhibit A

# U.S. Return of Partnership Income

For calendar year 2013, or tax year beginning _____ , ending _____

EXTENSION GRANTED TO 09/15/14

OMB No. 1545-0099

**2013**

| | |
|---|---|
| A Principal business activity<br>REAL ESTATE TRADING | |
| B Principal product or service | |
| C Business code number<br>525990 | |

Type or Print

Name of partnership
ETRE FINANCIAL LLC

Number, street, and room or suite no. If a P.O. box, see the instructions.
44 WALL STREET- 2ND FLOOR

City or town, state or province, country, and ZIP or foreign postal code
NEW YORK                                    NY 10005

D Employer identification number
46-0640709

E Date business started
07/24/2012

F Total assets
$ 316,875.

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return
(6) ☐ Technical termination - also check (1) or (2)

H Check accounting method: (1) ☐ Cash (2) ☒ Accrual (3) ☐ Other (specify) ▶ _____

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 5

J Check if Schedules C and M-3 are attached .................................................................. ☐

**Caution.** Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | 1 a Gross receipts or sales ................................... | 1a | | |
| | b Returns and allowances ................................. | 1b | | |
| | c Balance. Subtract line 1b from line 1a ................................................. | 1c | | |
| | 2 Cost of goods sold (attach Form 1125-A) ................................................. | 2 | | |
| | 3 Gross profit. Subtract line 2 from line 1c ................................................. | 3 | | |
| | 4 Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) ........... | 4 | | |
| | 5 Net farm profit (loss) (attach Schedule F (Form 1040)) ................................................. | 5 | | |
| | 6 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ........................... | 6 | | |
| | 7 Other income (loss) (attach statement) ................................................. | 7 | | |
| | 8 **Total income (loss). Combine lines 3 through 7** ................................................. | 8 | | |
| **Deductions** (see the instructions for limitations) | 9 Salaries and wages (other than to partners) (less employment credits) ........................... | 9 | | |
| | 10 Guaranteed payments to partners ................................................. | 10 | | |
| | 11 Repairs and maintenance ................................................. | 11 | | |
| | 12 Bad debts ................................................. | 12 | | |
| | 13 Rent ................................................. | 13 | | |
| | 14 Taxes and licenses ................................................. | 14 | | |
| | 15 Interest ................................................. | 15 | | |
| | 16 a Depreciation (if required, attach Form 4562) ................... | 16a | | |
| | b Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 16c | |
| | 17 Depletion (Do not deduct oil and gas depletion.) ................................................. | 17 | | |
| | 18 Retirement plans, etc. ................................................. | 18 | | |
| | 19 Employee benefit programs ................................................. | 19 | | |
| | 20 Other deductions (attach statement)          SEE STATEMENT 1 | 20 | 851,559. | |
| | 21 **Total deductions. Add the amounts shown in the far right column for lines 9 through 20** ......... | 21 | 851,559. | |
| | 22 **Ordinary business income (loss). Subtract line 21 from line 8** ................................... | 22 | -851,559. | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

▶ _____
Signature of general partner or limited liability company member manager

Date _____

May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name<br>RONALD SCHNEIDER | Preparer's signature | Date<br>08/12/14 | Check ☐ if self-employed | PTIN<br>P00357601 |
|---|---|---|---|---|

Firm's name ▶ LIPSKY GOODKIN & CO P.C.

Firm's address ▶ 120 WEST 45TH STREET 7TH FL
NEW YORK, NY 10036

Firm's EIN ▶ 13-2672154

Phone no. (212) 840-6444

LHA For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2013)

Form **7004**

(Rev. December 2012)
Department of the Treasury
Internal Revenue Service

**Application for Automatic Extension of Time To File
Certain Business Income Tax, Information, and Other Returns**

▶ File a separate application for each return.
▶ Information about Form 7004 and its separate instructions is at *www.irs.gov/form7004*

OMB No. 1545-0233

| Print or Type | Name | Identifying number |
|---|---|---|
| | ETRE FINANCIAL LLC | 46-0640709 |

Number, street, and room or suite no. (If P.O. box, see instructions.)

44 WALL STREET- 2ND FLOOR

City, town, state, and ZIP code (if a foreign address, enter city, province or state, and country (follow the country's practice for entering postal code)).

NEW YORK, NY 10005

**Note.** *File request for extension by the due date of the return for which the extension is granted. See instructions before completing this form.*

**Part I    Automatic 5-Month Extension**

**1a** Enter the form code for the return that this application is for (see below) .................................. `09`

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 1065 | 09 | Form 1041 (estate other than a bankruptcy estate) | 04 |
| Form 8804 | 31 | Form 1041 (trust) | 05 |

**Part II    Automatic 6-Month Extension**

**b** Enter the form code for the return that this application is for (see below) .................................. 

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 706-GS(D) | 01 | Form 1120-ND (section 4951 taxes) | 20 |
| Form 706-GS(T) | 02 | Form 1120-PC | 21 |
| Form 1041 (bankruptcy estate only) | 03 | Form 1120-POL | 22 |
| Form 1041-N | 06 | Form 1120-REIT | 23 |
| Form 1041-QFT | 07 | Form 1120-RIC | 24 |
| Form 1042 | 08 | Form 1120S | 25 |
| Form 1065-B | 10 | Form 1120-SF | 26 |
| Form 1066 | 11 | Form 3520-A | 27 |
| Form 1120 | 12 | Form 8612 | 28 |
| Form 1120-C | 34 | Form 8613 | 29 |
| Form 1120-F | 15 | Form 8725 | 30 |
| Form 1120-FSC | 16 | Form 8831 | 32 |
| Form 1120-H | 17 | Form 8876 | 33 |
| Form 1120-L | 18 | Form 8924 | 35 |
| Form 1120-ND | 19 | Form 8928 | 36 |

**2** If the organization is a foreign corporation that does not have an office or place of business in the United States, check here .................................. ▶ ☐

**3** If the organization is a corporation and is the common parent of a group that intends to file a consolidated return, check here .................................. ▶ ☐
If checked, attach a statement, listing the name, address, and Employer Identification Number (EIN) for each member covered by this application.

**Part III    All Filers Must Complete This Part**

**4** If the organization is a corporation or partnership that qualifies under Regulations section 1.6081-5, check here .................................. ▶ ☐

**5a** The application is for calendar year `2013`, or tax year beginning _____, and ending _____

**b** Short tax year. If this tax year is less than 12 months, check the reason: ☐ Initial return  ☐ Final return
☐ Change in accounting period  ☐ Consolidated return to be filed  ☐ Other (see instructions-attach explanation)

| | | |
|---|---|---|
| **6** Tentative total tax .................................. | **6** | |
| **7** Total payments and credits (see instructions) .................................. | **7** | |
| **8** Balance due. Subtract line 7 from line 6 (see instructions) .................................. | **8** | |

LHA   **For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**

319741
03-06-14

Form **7004** (Rev. 12-2012)

## Schedule B   Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| a | ☐ Domestic general partnership   b ☐ Domestic limited partnership | | |
| c | ☒ Domestic limited liability company   d ☐ Domestic limited liability partnership | | |
| e | ☐ Foreign partnership   f ☐ Other ▶ | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | X | |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2013, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) (formerly TD F 90-22.1). If "Yes," enter the name of the foreign country. ▶ | | X |

Form **1065** (2013)

| Schedule B | Other Information *(continued)* | Yes | No |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions .................. | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? ......................... | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions .................. | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions .................. | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year) ............▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? .................. | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| 18a | Did you make any payments in 2013 that would require you to file Form(s) 1099? See instructions .................. | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? .................. | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| 20 | Enter the number of partners that are foreign governments under section 892. ▶ | | |

**Designation of Tax Matters Partner (see instructions)**

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ FRISCHER KRANZ INC | Identifying number of TMP ▶ 13-4040998 |
|---|---|
| If the TMP is an entity, name of TMP representative | Phone number of TMP ▶ |
| Address of designated TMP ▶ 80 BIRCH LANE    GREENWICH, CT   06830 | |

Form **1065** (2013)

## Schedule K   Partners' Distributive Share Items

| | | | Total amount |
|---|---|---|---|
| | **1** Ordinary business income (loss) (page 1, line 22) | **1** | −851,559. |
| | **2** Net rental real estate income (loss) (attach Form 8825) | **2** | |
| | **3 a** Other gross rental income (loss) ... **3a** | | |
| | **b** Expenses from other rental activities (attach statement) ... **3b** | | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a | **3c** | |
| | **4** Guaranteed payments | **4** | |
| | **5** Interest income | **5** | |
| | **6** Dividends: **a** Ordinary dividends | **6a** | |
| | **b** Qualified dividends ... **6b** | | |
| | **7** Royalties | **7** | |
| | **8** Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | **8** | |
| | **9 a** Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | **9a** | |
| | **b** Collectibles (28%) gain (loss) ... **9b** | | |
| | **c** Unrecaptured section 1250 gain (attach statement) ... **9c** | | |
| | **10** Net section 1231 gain (loss) (attach Form 4797) | **10** | |
| | **11** Other income (loss) (see instructions) Type ▶ | **11** | |

*Income (Loss)* labels the rows above (items 1–11).

| | | | |
|---|---|---|---|
| **Deductions** | **12** Section 179 deduction (attach Form 4562) | **12** | |
| | **13 a** Contributions | **13a** | |
| | **b** Investment interest expense | **13b** | |
| | **c** Section 59(e)(2) expenditures: (1) Type ▶ _____ (2) Amount ▶ | **13c(2)** | |
| | **d** Other deductions (see instructions) Type ▶ | **13d** | |

| | | | |
|---|---|---|---|
| **Self-Employment** | **14 a** Net earnings (loss) from self-employment | **14a** | −255,468. |
| | **b** Gross farming or fishing income | **14b** | |
| | **c** Gross nonfarm income | **14c** | |

| | | | |
|---|---|---|---|
| **Credits** | **15 a** Low-income housing credit (section 42(j)(5)) | **15a** | |
| | **b** Low-income housing credit (other) | **15b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | **15c** | |
| | **d** Other rental real estate credits (see instructions)       Type ▶ | **15d** | |
| | **e** Other rental credits (see instructions)       Type ▶ | **15e** | |
| | **f** Other credits (see instructions)       Type ▶ | **15f** | |

| | | | |
|---|---|---|---|
| **Foreign Transactions** | **16 a** Name of country or U.S. possession ▶ | | |
| | **b** Gross income from all sources | **16b** | |
| | **c** Gross income sourced at partner level | **16c** | |
| | Foreign gross income sourced at partnership level | | |
| | **d** Passive category ▶ _____ **e** General category ... ▶ _____ **f** Other ...... ▶ | **16f** | |
| | Deductions allocated and apportioned at partner level | | |
| | **g** Interest expense ▶ _____ **h** Other ▶ | **16h** | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | **i** Passive category ▶ _____ **j** General category ... ▶ _____ **k** Other ▶ | **16k** | |
| | **l** Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | **16l** | |
| | **m** Reduction in taxes available for credit (attach statement) | **16m** | |
| | **n** Other foreign tax information (attach statement) | | |

| | | | |
|---|---|---|---|
| **Alternative Minimum Tax (AMT) Items** | **17 a** Post-1986 depreciation adjustment | **17a** | |
| | **b** Adjusted gain or loss | **17b** | |
| | **c** Depletion (other than oil and gas) | **17c** | |
| | **d** Oil, gas, and geothermal properties – gross income | **17d** | |
| | **e** Oil, gas, and geothermal properties – deductions | **17e** | |
| | **f** Other AMT items (attach statement) | **17f** | |

| | | | |
|---|---|---|---|
| **Other Information** | **18 a** Tax-exempt interest income | **18a** | |
| | **b** Other tax-exempt income | **18b** | |
| | **c** Nondeductible expenses | **18c** | |
| | **19 a** Distributions of cash and marketable securities | **19a** | |
| | **b** Distributions of other property | **19b** | |
| | **20 a** Investment income | **20a** | |
| | **b** Investment expenses | **20b** | |
| | **c** Other items and amounts (attach statement) | | |

Form **1065** (2013)

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 Net Income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | | 1 | −851,559. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | −170,312. | | | −681,247. | | |

## Schedule L   Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 336,832. | | 127,382. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach statement) | | | | |
| 7a Loans to partners (or persons related to partners) | | | | |
| b Mortgage and real estate loans | | | | |
| 8 Other investments (attach statement) | | | | |
| 9a Buildings and other depreciable assets | 32,500. | | 160,217. | |
| b Less accumulated depreciation | | 32,500. | | 160,217. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | 17,271. | | 29,276. | |
| b Less accumulated amortization | | 17,271. | | 29,276. |
| 13 Other assets (attach statement) | | | | |
| 14 Total assets | | 386,603. | | 316,875. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach statement) | STATEMENT 2 | 174,630. | | 30,961. |
| 18 All nonrecourse loans | | | | |
| 19a Loans from partners (or persons related to partners) | | | | 225,000. |
| b Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach statement) | | | | |
| 21 Partners' capital accounts | | 211,973. | | 60,914. |
| 22 Total liabilities and capital | | 386,603. | | 316,875. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | −851,559. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a | Depreciation $ | |
| a | Depreciation $ | | 8 | Add lines 6 and 7 | |
| b | Travel and entertainment $ | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | −851,559. |
| 5 | Add lines 1 through 4 | −851,559. | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 211,973. | 6 | Distributions: a Cash | |
| 2 | Capital contributed: a Cash | | | b Property | |
| | b Property | 700,500. | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books | −851,559. | | | |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | |
| 5 | Add lines 1 through 4 | 60,914. | 9 | Balance at end of year. Subtract line 8 from line 5 | 60,914. |

# 2013 DEPRECIATION AND AMORTIZATION REPORT

OTHER                                                                                    1

| Asset No. | Description | Date Acquired | Method | Life | Line No. | Unadjusted Cost Or Basis | Bus % Excl | Reduction In Basis* | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SOFTWARE AND DATA | 123112 | NC | | | 32,500. | | | 32,500. | | | 0. |
| 2 | PATENTS AND TRADEMARKS | 123112 | NC | | | 17,271. | | | 17,271. | | | 0. |
| | * TOTAL OTHER DEPRECIATION | | | | | 49,771. | | | 49,771. | 0. | | 0. |

(D) - Asset disposed                                                              * ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction

5.1

## Worksheet for Figuring Net Earnings (Loss) From Self-Employment

| Name of partnership | | | Employer identification number |
|---|---|---|---|
| ETRE FINANCIAL LLC | | | 46-0640709 |

| | | | |
|---|---|---|---|
| 1 a Ordinary income (loss) (Schedule K, line 1) | 1a | -851,559. | |
| b Net income (loss) from CERTAIN rental real estate activities | 1b | | |
| c Net income (loss) from other rental activities (Schedule K, line 3c) | 1c | | |
| d Net loss from Form 4797, Part II, line 17, included on line 1a above. Enter as a positive amount | 1d | | |
| e Other additions | 1e | | |
| f Combine lines 1a through 1e | 1f | -851,559. | |
| 2 a Net gain from Form 4797, Part II, line 17, included on line 1a above | 2a | | |
| b Other subtractions | 2b | | |
| c Add lines 2a and 2b | 2c | | |
| 3 a Subtract line 2c from line 1f. If line 1f is a loss, increase the loss on line 1f by the amount on line 2c | 3a | -851,559. | |
| b Part of line 3a allocated to limited partners, estates, trusts, corporations, exempt organizations, and IRAs | 3b | -596,091. | |
| c Subtract line 3b from line 3a | | 3c | -255,468. |
| 4 a Guaranteed payments to partners (Schedule K, line 4) derived from a trade or business as defined in section 1402(c) | 4a | | |
| b Part of line 4a allocated to individual limited partners for other than services and to estates, trusts, corporations, exempt organizations, and IRAs | 4b | | |
| c Subtract line 4b from line 4a | | 4c | |
| 5 Net earnings (loss) from self-employment. Combine lines 3c and 4c. Enter here and on Schedule K, line 14a | | 5 | -255,468. |

| FORM 1065 | OTHER DEDUCTIONS | STATEMENT 1 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| BANK CHARGES | 152. |
| COMPUTER SERVICE | 98,369. |
| CONSULTING FEES | 345,000. |
| FILING FEES | 250. |
| LEGAL FEES | 294,681. |
| LICENSING FEES | 42,681. |
| MARKETING | 62,350. |
| OFFICE SUPPLIES | 2,647. |
| PROFESSIONAL FEES | 5,032. |
| TRAINING | 397. |
| TOTAL TO FORM 1065, LINE 20 | 851,559. |

| SCHEDULE L | OTHER CURRENT LIABILITIES | STATEMENT 2 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| ACCRUED EXPENSES | 174,630. | 30,961. |
| TOTAL TO SCHEDULE L, LINE 17 | 174,630. | 30,961. |

651113

| Schedule K-1 (Form 1065) | **2013** | For calendar year 2013, or tax year beginning _____ ending _____ | ☐ Final K-1 ☐ Amended K-1 | OMB No. 1545-0099 |

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,**
**Credits, etc.**     ▶ **See separate instructions.**

**2013**
For calendar year 2013, or tax
year beginning _____
ending _____

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0099

**Part III  Partner's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

| | | |
|---|---|---|
| **1** Ordinary business income (loss) | **15** Credits | |
| −127,734. | | |
| **2** Net rental real estate income (loss) | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income | | |
| **6a** Ordinary dividends | | |
| **6b** Qualified dividends | **17** Alternative min tax (AMT) items | |
| **7** Royalties | | |
| **8** Net short-term capital gain (loss) | **18** Tax-exempt income and nondeductible expenses | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions | |
| **9c** Unrecaptured sec 1250 gain | | |
| **10** Net section 1231 gain (loss) | **20** Other information | |
| **11** Other income (loss) | | |
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| **14** Self-employment earnings (loss) | | |
| A                 0. | | |

**Part I  Information About the Partnership**

**A** Partnership's employer identification number
46-0640709

**B** Partnership's name, address, city, state, and ZIP code

ETRE FINANCIAL LLC
44 WALL STREET- 2ND FLOOR
NEW YORK, NY  10005

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II  Information About the Partner**

**E** Partner's identifying number
36-4688613

**F** Partner's name, address, city, state, and ZIP code

WINTER INVESTMENTS LLC
46 LEDGEROCK LANE
HYDE PARK, NY  12538

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?  PARTNERSHIP
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here .......... ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 15.0000000% | 15.0000000% |
| Loss | 15.0000000% | 15.0000000% |
| Capital | 15.0000000% | 15.0000000% |

**K** Partner's share of liabilities at year end:

Nonrecourse .................. $ _____
Qualified nonrecourse financing .......... $ _____
Recourse .................. $     79,644.

**L** Partner's capital account analysis:

Beginning capital account .................. $      18,031.
Capital contributed during the year ........ $      88,000.
Current year increase (decrease) ........... $    −127,734.
Withdrawals & distributions ............... $(_____)
Ending capital account .................. $     −21,703.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

311261
12-03-13 LHA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.    IRS.gov/form1065    Schedule K-1 (Form 1065) 2013

7

1

14340812 758504 RS-ETRE        2013.04010 ETRE FINANCIAL LLC        RS-ETRE1

| SCHEDULE K-1 | CURRENT YEAR INCREASES (DECREASES) | |
| --- | --- | --- |

| DESCRIPTION | AMOUNT | TOTALS |
| --- | --- | --- |
| ORDINARY INCOME (LOSS) | -127,734. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -127,734. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -127,734. |
| TOTAL TO SCHEDULE K-1, ITEM L | | -127,734. |

2

| | |
|---|---|
| Schedule K-1<br>(Form 1065)<br>Department of the Treasury<br>Internal Revenue Service<br>**Partner's Share of Income, Deductions, Credits, etc.** | **2013**<br>For calendar year 2013, or tax<br>year beginning _____<br>ending _____<br>▶ See separate Instructions. |

| Final K-1 | Amended K-1 | OMB No. 1545-0099 |
|---|---|---|

**Part III** Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | |
|---|---|
| 1 Ordinary business income (loss)<br>−255,468. | 15 Credits |
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4 Guaranteed payments | |
| 5 Interest income | |
| 6a Ordinary dividends | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) items |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions |
| 9c Unrecaptured sec 1250 gain | |
| 10 Net section 1231 gain (loss) | 20 Other Information |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss)<br>A −255,468. | |

**Part I** Information About the Partnership

**A** Partnership's employer identification number
46-0640709

**B** Partnership's name, address, city, state, and ZIP code
ETRE FINANCIAL LLC
44 WALL STREET- 2ND FLOOR
NEW YORK, NY 10005

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II** Information About the Partner

**E** Partner's identifying number
27-1873144

**F** Partner's name, address, city, state, and ZIP code
JS3 ALTERNATIVE INVESTMENTS LLC
100 JAY STREET- APT 14H
BROOKLYN, NY 11201

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner? PARTNERSHIP
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ........... ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 30.0000000% | 30.0000000% |
| Loss | 30.0000000% | 30.0000000% |
| Capital | 30.0000000% | 30.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 9,288. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 36,062. |
| Capital contributed during the year | $ | 175,000. |
| Current year increase (decrease) | $ | −255,468. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | −44,406. |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

14340812 758504 RS-ETRE    2013.04010 ETRE FINANCIAL LLC    RS-ETRE1

SCHEDULE K-1          CURRENT YEAR INCREASES (DECREASES)

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -255,468. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -255,468. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -255,468. |
| TOTAL TO SCHEDULE K-1, ITEM L | | -255,468. |

| Schedule K-1 | □ Final K-1 □ Amended K-1 | OMB No. 1545-0099 |

**2013**

Schedule K-1
(Form 1065)

Department of the Treasury
Internal Revenue Service

For calendar year 2013, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,
Credits, etc.**  ▶ See separate Instructions.

| **Part III** Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|

| **Part I** Information About the Partnership |
|---|

**A** Partnership's employer identification number
46-0640709

**B** Partnership's name, address, city, state, and ZIP code

ETRE FINANCIAL LLC
44 WALL STREET- 2ND FLOOR
NEW YORK, NY 10005

**C** IRS Center where partnership filed return
E-FILE

**D** □ Check if this is a publicly traded partnership (PTP)

| **Part II** Information About the Partner |
|---|

**E** Partner's identifying number
45-3686641

**F** Partner's name, address, city, state, and ZIP code

SMP REALTY NM LLC
200 CANDLEWOOD LAKE ROAD NORTH
NEW MILFORD, CT 06776

**G** □ General partner or LLC
member-manager   ☒ Limited partner or other LLC
member

**H** ☒ Domestic partner   □ Foreign partner

**I1** What type of entity is this partner? PARTNERSHIP

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ............ □

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 20.0000000% | 20.0000000% |
| Loss | 20.0000000% | 20.0000000% |
| Capital | 20.0000000% | 20.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 81,193. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 69,874. |
| Capital contributed during the year | $ | 175,000. |
| Current year increase (decrease) | $ | -170,311. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 74,563. |

☒ Tax basis   □ GAAP   □ Section 704(b) book

□ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
□ Yes   ☒ No
If "Yes", attach statement (see instructions)

| Part III items | | |
|---|---|---|
| 1 Ordinary business income (loss) | -170,311. | 15 Credits |
| 2 Net rental real estate income (loss) | | |
| 3 Other net rental income (loss) | | 16 Foreign transactions |
| 4 Guaranteed payments | | |
| 5 Interest income | | |
| 6a Ordinary dividends | | |
| 6b Qualified dividends | | 17 Alternative min tax (AMT) items |
| 7 Royalties | | |
| 8 Net short-term capital gain (loss) | | 18 Tax-exempt income and nondeductible expenses |
| 9a Net long-term capital gain (loss) | | |
| 9b Collectibles (28%) gain (loss) | | 19 Distributions |
| 9c Unrecaptured sec 1250 gain | | |
| 10 Net section 1231 gain (loss) | | 20 Other Information |
| 11 Other income (loss) | | |
| 12 Section 179 deduction | | |
| 13 Other deductions | | |
| 14 Self-employment earnings (loss) A | 0. | |

*See attached statement for additional information.

For IRS Use Only

311261
12-03-13 LHA For Paperwork Reduction Act Notice, see Instructions for Form 1065.
IRS.gov/form1065
11
Schedule K-1 (Form 1065) 2013
3

## SCHEDULE K-1          CURRENT YEAR INCREASES (DECREASES)

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | −170,311. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | −170,311. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | −170,311. |
| TOTAL TO SCHEDULE K-1, ITEM L | | −170,311. |

4

651113

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,
Credits, etc.**

**2013**

For calendar year 2013, or tax
year beginning _____
ending _____

▶ See separate instructions.

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0099

**Part III**  **Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | |
|---|---|
| 1 Ordinary business income (loss) <br> −170,312. | 15 Credits |
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4 Guaranteed payments | |
| 5 Interest income | |
| 6a Ordinary dividends | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) items |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions |
| 9c Unrecaptured sec 1250 gain | |
| 10 Net section 1231 gain (loss) | 20 Other information |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss) | |

**Part I**  **Information About the Partnership**

**A** Partnership's employer identification number
46-0640709

**B** Partnership's name, address, city, state, and ZIP code

ETRE FINANCIAL LLC
44 WALL STREET- 2ND FLOOR
NEW YORK, NY  10005

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II**  **Information About the Partner**

**E** Partner's identifying number
13-4040998

**F** Partner's name, address, city, state, and ZIP code

FRISCHER KRANZ INC
80 BIRCH LANE
GREENWICH, CT  06830

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner?  CORPORATION

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 20.0000000% | 20.0000000% |
| Loss | 20.0000000% | 20.0000000% |
| Capital | 20.0000000% | 20.0000000% |

**K** Partner's share of liabilities at year end:

Nonrecourse ............................. $ _____
Qualified nonrecourse financing ......... $ _____
Recourse ................................ $        6,192.

**L** Partner's capital account analysis:

Beginning capital account ............... $       69,975.
Capital contributed during the year ..... $      175,000.
Current year increase (decrease) ........ $     −170,312.
Withdrawals & distributions ............. $(              )
Ending capital account .................. $       74,663.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

311261
12-03-13  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   IRS.gov/form1065   **Schedule K-1 (Form 1065) 2013**

13

4

SCHEDULE K-1          CURRENT YEAR INCREASES (DECREASES)

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -170,312. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -170,312. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -170,312. |
| TOTAL TO SCHEDULE K-1, ITEM L | | -170,312. |

| | | |
|---|---|---|
| Schedule K-1 **(Form 1065)** | **2013** | ☐ Final K-1  ☐ Amended K-1    OMB No. 1545-0099 |
| Department of the Treasury Internal Revenue Service | For calendar year 2013, or tax year beginning _____ ending _____ | **Part III**  **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |

**Partner's Share of Income, Deductions, Credits, etc.**    ▶ See separate Instructions.

| Part III | | |
|---|---|---|
| **1** Ordinary business income (loss) **-127,734.** | **15** Credits |
| **2** Net rental real estate income (loss) | **16** Foreign transactions |
| **3** Other net rental income (loss) | |
| **4** Guaranteed payments | |
| **5** Interest income | |
| **6a** Ordinary dividends | **17** Alternative min tax (AMT) items |
| **6b** Qualified dividends | |
| **7** Royalties | **18** Tax-exempt income and nondeductible expenses |
| **8** Net short-term capital gain (loss) | |
| **9a** Net long-term capital gain (loss) | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions |
| **9c** Unrecaptured sec 1250 gain | |
| **10** Net section 1231 gain (loss) | **20** Other information |
| **11** Other income (loss) | |
| **12** Section 179 deduction | |
| **13** Other deductions | |
| **14** Self-employment earnings (loss) **A** **0.** | |

**Part I**    **Information About the Partnership**

**A** Partnership's employer identification number
46-0640709

**B** Partnership's name, address, city, state, and ZIP code

ETRE FINANCIAL LLC
44 WALL STREET- 2ND FLOOR
NEW YORK, NY 10005

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II**    **Information About the Partner**

**E** Partner's identifying number
37-1546523

**F** Partner's name, address, city, state, and ZIP code

EVE LLC
44 WALL STREET- 2ND FLOOR
NEW YORK, NY 10005

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner? PARTNERSHIP
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 15.0000000% | 15.0000000% |
| Loss | 15.0000000% | 15.0000000% |
| Capital | 15.0000000% | 15.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 79,644. |

***See attached statement for additional information.**

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 18,031. |
| Capital contributed during the year | $ | 87,500. |
| Current year increase (decrease) | $ | -127,734. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | -22,203. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

For IRS Use Only

5

SCHEDULE K-1          CURRENT YEAR INCREASES (DECREASES)

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -127,734. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -127,734. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -127,734. |
| TOTAL TO SCHEDULE K-1, ITEM L | | -127,734. |

# UNSECURED PROMISSORY NOTE

New York, New York
August 18, 2014

$18,274.20

THIS PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS. IT MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THIS PROMISSORY NOTE UNDER THE SECURITIES ACT OF 1933 AND QUALIFICATION UNDER APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED.

This Note is being delivered in connection with that certain Limited Liability Company Agreement , of August 15, 2012 made by and among ETRE Financial, LLC, a Delaware limited liability company (the "Company"), Jacob Frydman, Eli Verschleiser, Jesse Stein, Scott Panzer and Paul Frischer (the "Principals"), and Winter Investors, LLC, JS3 Alternative Investments LLC, SMP Realty NM LLC, Frischer Kranz Inc, and EVE, LLC (the "2012 Operating Agreement"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 2012 Operating Agreement.

Pursuant to section 7.4 (b) of the 2012 Operating Agreement in the event a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member ("Former Member"), and/or his or her Personal Representative or Successor, and if the Company so elects, such Former Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

Pursuant to section 7.4 (d) of the 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price,

the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

On July 24, 2014 JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members.

Pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC.

On August 15, 2014, Jacob Frydman, as the remaining Manager entitled to vote with respect to the repurchase by the Company of the Units owned by the Former Members elected to cause the Company to repurchase all of the Units of each of the Former Members by Action by Written Consent of the Board of ETRE Financial LLC and to pay the purchase price for the repurchase of each Withdrawing Members' Units by the issuance of this promissory note.

ETRE Financial, LLC ("Maker" or "Company"), whose address is c/o Jacob Frydman, 60 Broad Street, 34th Floor, New York, NY 10004, for value received, hereby promises to pay to the order of JS3 Alternative Investments, LLC ("Holder") whose address is 100 Jay Street, Apt 14H, Brooklyn, NY 11201, the principal sum of EIGHTEEN THOUSAND TWO HUNDRED SEVENTY FOUR and 20/100 Dollars ($18,274.20 ) (the "Principal") together with interest from the date hereof on the unpaid Principal amount hereof at the rate and on the dates set forth below, all on the terms and conditions set forth herein. Payment for all amounts due hereunder shall be made in lawful money of the United States of America to the address of the Holder at 100 Jay Street, Apt 14H, Brooklyn, NY 11201 or such other address as Holder shall provide to Maker by written notice to the address set forth herein.

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1. Definitions. As used in this Note, each capitalized term shall have the meaning specified herein and the following terms shall have the indicated meanings:

(b) "Base Rate" shall mean at the prime rate in effect as of the date hereof as reported by Citibank, N.A. in New York, New York, which is three and one-quarter percent (3.25%) per annum during the term hereof.

(c) "New York Business Day" shall mean any day other than Saturday, Sunday or other day on which commercial banking institutions in New York, New York are authorized or required by law or other governmental action to remain closed for business.

2. <u>Interest.</u>   Interest shall accrue from the date hereof (without compounding) until all outstanding principal and interest on this Note shall have been paid in full at the Base Rate per annum on the unpaid Principal balance hereof. Interest shall accrue each day on the outstanding principal amount calculated on the basis of a 360-day year for the actual number of days.

3. <u>Payments.</u> Subject to Maker's rights as hereafter set forth to suspend payments (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference, commencing on August 18, 2015 Maker shall make ten (10) equal annual installments of principal, each in the amount of  ONE THOUSAND EIGHT HUNDRED TWENTY SEVEN and 42/100 Dollars ($1,827.42), plus accrued interest on the unpaid Principal balance, on each of the ten anniversaries of the date hereof.

4. <u>Events of Default</u>.  If any of the events specified in this Section 3 shall occur (herein individually referred to as an "Event of Default"):

(i) Default in payment of Principal or interest when due under this Note which is not cured within thirty (30) days after receipt by Maker of a notice of default from Holder,

then, the Holder of this Note may, by notice to the Maker, declare the principal of this Note, all interest thereon and all other amounts payable hereunder to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower, whereupon the principal amount of this Note, all such interest and all such amounts shall become and be immediately due and payable, and exercise any and all of its other rights under applicable law hereunder.

5. <u>Suspension of Payments</u>. Notwithstanding anything to the contrary contained herein, Maker shall be excused from making payments hereunder (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference.

6. <u>Subordination.</u> Notwithstanding anything to the contrary contained herein, this promissory note is unsecured and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

7. <u>Prepayment.</u> The Maker may at any time prepay in whole or in part the principal sum, plus accrued interest on the amount so prepaid to date of payment, of this Note, without penalty or premium.

8. <u>Representations.</u> The Maker represents and warrants to the Holder that: (i) this Note is a legal, valid and binding agreement of the Maker, enforceable against the Maker in accordance with its terms; and (ii) the execution and delivery by the Maker of this Note and the performance by the Maker of the transactions contemplated hereby do not and will not conflict with, or result in a breach of, or constitute a default under the certificate of organization of the Maker or under any agreement to which the Maker is a party or to which the Maker or its assets may be bound or affected.

9. <u>Waiver of Presentation, Demand, Etc.</u> All parties now or hereafter liable with respect to this Note, whether the Maker, endorser or any other person hereby expressly waive presentment, demand of payment, protest, notice for demand of payment, protest and notice of non-payment, or any other notice of any kind with respect thereto. No delay or failure on the part of the Holder in the exercise of any right or remedy hereunder or at law or in equity, shall operate as a waiver thereof, and no single or partial exercise by the Holder or of any right or remedy hereunder shall preclude or estop another or further exercise or any other right or remedy.

10. <u>Defenses, Set-Offs, Counterclaims.</u> Maker hereby agrees not to raise or interpose any defense, set-off or counterclaim of any kind or nature whatsoever which it may have against the Holder in any action brought upon this Note and Maker acknowledges that it has no defense of any kind or nature to the enforcement of this Note or to the binding nature of the obligations represented hereby.

11. <u>Security.</u> This promissory note is unsecured, and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

12. <u>Amendments.</u> No amendment, modification, alteration or change of any of the provisions of this Note shall be effective unless in writing signed by the Maker and the Holder and only to the extent therein set forth.

13. <u>Governing Law; Jurisdiction.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of New York excluding the body of law relating to conflict laws. Borrower hereby consents to the exclusive jurisdiction of the state and federal courts located in City and County of New York, New York in connection with any lawsuit, claim or other proceeding relating to this Note or the transactions contemplated hereby.

14. <u>Time of the Essence.</u> Time is of the essence of this Note and in case this Note is collected by law or through an attorney at law or under advice there from, the Maker agrees to pay all costs of collection including reasonable attorneys' fees. The Holder shall be under no duty to

exercise any or all of the rights and remedies given by this Note and no party to this instrument shall be discharged from the obligations or undertakings hereunder.

15. <u>Consent to Service and Waiver of Jury Trial.</u> The Maker hereby consents to service of any notice, process, motion or other document in connection with any lawsuit or other proceeding arising out of or relating to this Note by certified or registered mail, return receipt requested, to the address set forth above or such other address as the Maker shall provide Holder in writing and the Borrower hereby waives any right to trial by jury in any such lawsuit or proceeding.

16. <u>Notice.</u> All demands, notices, requests, consents and other communications required or permitted under this promissory note shall be in writing and shall be personally delivered, or sent by reputable commercial express delivery service (including, without limitation, Federal Express and U.S. Postal Service overnight delivery service), or deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, to the address set forth above or such other address as the Maker shall provide Holder in writing or the Holder shall provide the Maker in writing, in each case in accordance with the notice requirements hereof.

17. <u>Severability.</u> In the event that any term or provision of this Note shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by any authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality or enforceability of the remaining terms and provisions of this Note, which shall be enforced as if the unenforceable term or provision were deleted.

IN WITNESS WHEREOF, the undersigned has caused this Note to be issued this 18th day of August, 2014.

**ETRE Financial, LLC**

By: _____
      Jacob Frydman, Manager

## Exhibit B-2
## UNSECURED PROMISSORY NOTE

New York, New York
August 18, 2014

$12,182.80

THIS PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS. IT MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THIS PROMISSORY NOTE UNDER THE SECURITIES ACT OF 1933 AND QUALIFICATION UNDER APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED.

This Note is being delivered in connection with that certain Limited Liability Company Agreement , of August 15, 2012 made by and among ETRE Financial, LLC, a Delaware limited liability company (the "Company"), Jacob Frydman, Eli Verschleiser, Jesse Stein, Scott Panzer and Paul Frischer (the "Principals"), and Winter Investors, LLC, JS3 Alternative Investments LLC, SMP Realty NM LLC, Frischer Kranz Inc, and EVE, LLC (the "2012 Operating Agreement"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 2012 Operating Agreement.

Pursuant to section 7.4 (b) of the 2012 Operating Agreement in the event a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member ("Former Member"), and/or his or her Personal Representative or Successor, and if the Company so elects, such Former Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

Pursuant to section 7.4 (d) of the 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute

and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

On July 24, 2014 JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members.

Pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC.

On August 15, 2014, Jacob Frydman, as the remaining Manager entitled to vote with respect to the repurchase by the Company of the Units owned by the Former Members elected to cause the Company to repurchase all of the Units of each of the Former Members by Action by Written Consent of the Board of ETRE Financial LLC and to pay the purchase price for the repurchase of each Withdrawing Members' Units by the issuance of this promissory note.

ETRE Financial, LLC ("Maker" or "Company"), whose address is c/o Jacob Frydman, 60 Broad Street, 34th Floor, New York, NY 10004, for value received, hereby promises to pay to the order of SMP Realty NM, LLC ("Holder") whose address is 200 Candlewood Lake Road North, New Milford, CT 06776, the principal sum of TWELVE THOUSAND ONE HUNDRED EIGHTY TWO and 80/100 Dollars ($12,182.80) (the "Principal") together with interest from the date hereof on the unpaid Principal amount hereof at the rate and on the dates set forth below, all on the terms and conditions set forth herein. Payment for all amounts due hereunder shall be made in lawful money of the United States of America to the address of the Holder at 200 Candlewood Lake Road North, New Milford, CT 06776 or such other address as Holder shall provide to Maker by written notice to the address set forth herein.

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1. Definitions. As used in this Note, each capitalized term shall have the meaning specified herein and the following terms shall have the indicated meanings:

(b) "Base Rate" shall mean at the prime rate in effect as of the date hereof as reported by Citibank, N.A. in New York, New York, which is three and one-quarter percent (3.25%) per annum during the term hereof.

(c) "New York Business Day" shall mean any day other than Saturday, Sunday or other day on which commercial banking institutions in New York, New York are authorized or required by law or other governmental action to remain closed for business.

2. Interest. Interest shall accrue from the date hereof (without compounding) until all outstanding principal and interest on this Note shall have been paid in full at the Base Rate per annum on the unpaid Principal balance hereof. Interest shall accrue each day on the outstanding principal amount calculated on the basis of a 360-day year for the actual number of days.

3. Payments. Subject to Maker's rights as hereafter set forth to suspend payments (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference, commencing on August 18, 2015 Maker shall make ten (10) equal annual installments of principal, each in the amount of ONE THOUSAND TWO HUNDRED EIGHTEEN and 28/100 Dollars ($1,218.28), plus accrued interest on the unpaid Principal balance, on each of the ten anniversaries of the date hereof.

4. Events of Default. If any of the events specified in this Section 3 shall occur (herein individually referred to as an "Event of Default"):

(i) Default in payment of Principal or interest when due under this Note which is not cured within thirty (30) days after receipt by Maker of a notice of default from Holder,

then, the Holder of this Note may, by notice to the Maker, declare the principal of this Note, all interest thereon and all other amounts payable hereunder to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower, whereupon the principal amount of this Note, all such interest and all such amounts shall become and be immediately due and payable, and exercise any and all of its other rights under applicable law hereunder.

5. Suspension of Payments. Notwithstanding anything to the contrary contained herein, Maker shall be excused from making payments hereunder (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference.

6. Subordination. Notwithstanding anything to the contrary contained herein, this

promissory note is unsecured and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

7. Prepayment. The Maker may at any time prepay in whole or in part the principal sum, plus accrued interest on the amount so prepaid to date of payment, of this Note, without penalty or premium.

8. Representations. The Maker represents and warrants to the Holder that: (i) this Note is a legal, valid and binding agreement of the Maker, enforceable against the Maker in accordance with its terms; and (ii) the execution and delivery by the Maker of this Note and the performance by the Maker of the transactions contemplated hereby do not and will not conflict with, or result in a breach of, or constitute a default under the certificate of organization of the Maker or under any agreement to which the Maker is a party or to which the Maker or its assets may be bound or affected.

9. Waiver of Presentation, Demand, Etc. All parties now or hereafter liable with respect to this Note, whether the Maker, endorser or any other person hereby expressly waive presentment, demand of payment, protest, notice for demand of payment, protest and notice of non-payment, or any other notice of any kind with respect thereto. No delay or failure on the part of the Holder in the exercise of any right or remedy hereunder or at law or in equity, shall operate as a waiver thereof, and no single or partial exercise by the Holder or of any right or remedy hereunder shall preclude or estop another or further exercise or any other right or remedy.

10. Defenses, Set-Offs, Counterclaims. Maker hereby agrees not to raise or interpose any defense, set-off or counterclaim of any kind or nature whatsoever which it may have against the Holder in any action brought upon this Note and Maker acknowledges that it has no defense of any kind or nature to the enforcement of this Note or to the binding nature of the obligations represented hereby.

11. Security. This promissory note is unsecured, and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

12. Amendments. No amendment, modification, alteration or change of any of the provisions of this Note shall be effective unless in writing signed by the Maker and the Holder and only to the extent therein set forth.

13. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New York excluding the body of law relating to conflict laws. Borrower hereby consents to the exclusive jurisdiction of the state and federal courts located in City and County of New York, New York in connection with any lawsuit, claim or other proceeding relating to this Note or the transactions contemplated hereby.

14. Time of the Essence. Time is of the essence of this Note and in case this Note is collected by law or through an attorney at law or under advice there from, the Maker agrees to pay all costs of collection including reasonable attorneys' fees. The Holder shall be under no duty to exercise any or all of the rights and remedies given by this Note and no party to this instrument shall

be discharged from the obligations or undertakings hereunder.

15. <u>Consent to Service and Waiver of Jury Trial.</u> The Maker hereby consents to service of any notice, process, motion or other document in connection with any lawsuit or other proceeding arising out of or relating to this Note by certified or registered mail, return receipt requested, to the address set forth above or such other address as the Maker shall provide Holder in writing and the Borrower hereby waives any right to trial by jury in any such lawsuit or proceeding.

16. <u>Notice.</u> All demands, notices, requests, consents and other communications required or permitted under this promissory note shall be in writing and shall be personally delivered, or sent by reputable commercial express delivery service (including, without limitation, Federal Express and U.S. Postal Service overnight delivery service), or deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, to the address set forth above or such other address as the Maker shall provide Holder in writing or the Holder shall provide the Maker in writing, in each case in accordance with the notice requirements hereof.

17. <u>Severability.</u> In the event that any term or provision of this Note shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by any authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality or enforceability of the remaining terms and provisions of this Note, which shall be enforced as if the unenforceable term or provision were deleted.

IN WITNESS WHEREOF, the undersigned has caused this Note to be issued this 18th day of August, 2014.

**ETRE Financial, LLC**

By: _____
      Jacob Frydman, Manager

## Exhibit B-3
## UNSECURED PROMISSORY NOTE

New York, New York
August 18, 2014

$12,182.80

THIS PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS. IT MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THIS PROMISSORY NOTE UNDER THE SECURITIES ACT OF 1933 AND QUALIFICATION UNDER APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED.

This Note is being delivered in connection with that certain Limited Liability Company Agreement , of August 15, 2012 made by and among ETRE Financial, LLC, a Delaware limited liability company (the "Company"), Jacob Frydman, Eli Verschleiser, Jesse Stein, Scott Panzer and Paul Frischer (the "Principals"), and Winter Investors, LLC, JS3 Alternative Investments LLC, SMP Realty NM LLC, Frischer Kranz Inc, and EVE, LLC (the "2012 Operating Agreement"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 2012 Operating Agreement.

Pursuant to section 7.4 (b) of the 2012 Operating Agreement in the event a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member ("Former Member"), and/or his or her Personal Representative or Successor, and if the Company so elects, such Former Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

Pursuant to section 7.4 (d) of the 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute