or other governmental action to remain closed for business.

2. Interest. Interest shall accrue from the date hereof (without compounding) until all outstanding principal and interest on this Note shall have been paid in full at the Base Rate per annum on the unpaid Principal balance hereof. Interest shall accrue each day on the outstanding principal amount calculated on the basis of a 360-day year for the actual number of days.

3. Payments. Subject to Maker's rights as hereafter set forth to suspend payments (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference, commencing on August 18, 2015 Maker shall make ten (10) equal annual installments of principal, each in the amount of NINE HUNDRED THIRTEEN and 71/100 Dollars ($913.71), plus accrued interest on the unpaid Principal balance, on each of the ten anniversaries of the date hereof.

4. Events of Default. If any of the events specified in this Section 3 shall occur (herein individually referred to as an "Event of Default"):

(i) Default in payment of Principal or interest when due under this Note which is not cured within thirty (30) days after receipt by Maker of a notice of default from Holder,

then, the Holder of this Note may, by notice to the Maker, declare the principal of this Note, all interest thereon and all other amounts payable hereunder to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower, whereupon the principal amount of this Note, all such interest and all such amounts shall become and be immediately due and payable, and exercise any and all of its other rights under applicable law hereunder.

5. Suspension of Payments. Notwithstanding anything to the contrary contained herein, Maker shall be excused from making payments hereunder (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference.

6. Subordination. Notwithstanding anything to the contrary contained herein, this promissory note is unsecured and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

7. Prepayment. The Maker may at any time prepay in whole or in part the principal sum, plus accrued interest on the amount so prepaid to date of payment, of this Note, without penalty or premium.

8. Representations. The Maker represents and warrants to the Holder that: (i) this Note is a legal, valid and binding agreement of the Maker, enforceable against the Maker in accordance with its terms; and (ii) the execution and delivery by the Maker of this Note and the performance by the Maker of the transactions contemplated hereby do not and will not conflict with, or result in a breach of, or constitute a default under the certificate of organization of the Maker or under any agreement to which the Maker is a party or to which the Maker or its assets may be bound or affected.

9. Waiver of Presentation, Demand, Etc. All parties now or hereafter liable with respect to this Note, whether the Maker, endorser or any other person hereby expressly waive presentment, demand of payment, protest, notice for demand of payment, protest and notice of non-payment, or any other notice of any kind with respect thereto. No delay or failure on the part of the Holder in the exercise of any right or remedy hereunder or at law or in equity, shall operate as a waiver thereof, and no single or partial exercise by the Holder or of any right or remedy hereunder shall preclude or estop another or further exercise or any other right or remedy.

10. Defenses, Set-Offs, Counterclaims. Maker hereby agrees not to raise or interpose any defense, set-off or counterclaim of any kind or nature whatsoever which it may have against the Holder in any action brought upon this Note and Maker acknowledges that it has no defense of any kind or nature to the enforcement of this Note or to the binding nature of the obligations represented hereby.

11. Security. This promissory note is unsecured, and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

12. Amendments. No amendment, modification, alteration or change of any of the provisions of this Note shall be effective unless in writing signed by the Maker and the Holder and only to the extent therein set forth.

13. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New York excluding the body of law relating to conflict laws. Borrower hereby consents to the exclusive jurisdiction of the state and federal courts located in City and County of New York, New York in connection with any lawsuit, claim or other proceeding relating to this Note or the transactions contemplated hereby.

14. Time of the Essence. Time is of the essence of this Note and in case this Note is collected by law or through an attorney at law or under advice there from, the Maker agrees to pay all costs of collection including reasonable attorneys' fees. The Holder shall be under no duty to exercise any or all of the rights and remedies given by this Note and no party to this instrument shall be discharged from the obligations or undertakings hereunder.

15. Consent to Service and Waiver of Jury Trial. The Maker hereby consents to service of any notice, process, motion or other document in connection with any lawsuit or other proceeding arising out of or relating to this Note by certified or registered mail, return receipt requested, to the address set forth above or such other address as the Maker shall provide Holder in writing and the Borrower hereby waives any right to trial by jury in any such lawsuit or proceeding.

16. Notice. All demands, notices, requests, consents and other communications required or permitted under this promissory note shall be in writing and shall be personally delivered, or sent by reputable commercial express delivery service (including, without limitation, Federal Express and U.S. Postal Service overnight delivery service), or deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, to the address set forth above or such other address as the Maker shall provide Holder in writing or the Holder shall provide the Maker in writing, in each case in accordance with the notice requirements hereof.

17. Severability. In the event that any term or provision of this Note shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by any authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality or enforceability of the remaining terms and provisions of this Note, which shall be enforced as if the unenforceable term or provision were deleted.

IN WITNESS WHEREOF, the undersigned has caused this Note to be issued this 18th day of August, 2014.

ETRE Financial, LLC

By: _____
Jacob Frydman, Manager

# RELEASE

THIS RELEASE Agreement is made as of this 18th day of August, 2014, made in favor of ETRE FINANCIAL, LLC, a Delaware limited liability company who's Operating Agreement was executed on or about August 15, 2012 by and among Jacob Frydman, Scott Panzer, Paul Frischer, Jesse Stein, Eli Verschleiser, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC, and EVE, LLC (the "Company") by EVE LLC (the "Former Member") having an address at 3501 Avenue T, Brooklyn, NY 11234, on behalf of itself and its Affiliates (as hereinafter defined).

## WITNESSETH:

WHEREAS, Former Member was a Member of the Company through July 24, 2014, at which time Former Member withdrew from the company and terminated its and Jesse Steins' employment with Company;

WHEREAS, pursuant to section 7.4 (b) of the Company's Operating Agreement in the event a Member's employment with the Company is terminated without Cause or a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member, and/or his or her Personal Representative or Successor, and if the Company so elects, such Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement upon a Member's termination of employment (a "Former Member"), and in the event the Board (not including a withdrawing terminated Member serving as a Manager) by unanimous vote or written consent elects to repurchase such Former Member's Units, the Company shall notify the Former Member or other applicable holder in writing of such election and, within thirty (30) days after determination of the repurchase price therefor, pay the repurchase price to the Former Member;

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement the purchase price paid to a Former Member who withdrew from the Company or who's employment was terminated for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company;

1

WHEREAS, on July 24, 2014, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members;

WHEREAS, pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC; and

WHEREAS the Company has elected to repurchase the Withdrawing Members' Units, with the purchase price to be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York);

WHEREAS, in consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates.

NOW THEREFORE, in consideration for the premises and the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Former Member hereby agrees as follows:

1. Capitalized Terms; Recitals. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Company's Operating Agreement. All recitals contained in this Agreement are hereby incorporated into this Release and confirmed.

2. Release; Indemnity. Simultaneously with the execution of this Release Former Member on behalf of itself and on behalf of its affiliates, managers, members, officers, directors, attorneys, employees, agents, representatives, predecessors, successors, and assigns and each other entity or person, if any, controlling any of them (the "Former Member Parties") hereby releases and forever discharges the Company its affiliates, managers, members, officers, directors, attorneys, employees, agents, representatives, predecessors, successors, and assigns and each other entity or person, if any, controlling any of them (collectively the "Released Parties") from all liability whatsoever and any and all claims, suits, controversies, actions, causes of action, cross-claims, counter-claims, demands, debts, compensatory damages, liquidated damages, punitive or exemplary damages, other damages, claims for costs and attorneys' fees, or liabilities of any nature whatsoever in law and in equity, both past and present, whether known or unknown, suspected, or claimed against the Released Parties which Former Member Parties ever had, now have, or hereafter may have, by reason of any matter, cause, or thing whatsoever, from the beginning of any initial dealings with the Released Parties and through the time of execution of this Release but excluding only that certain promissory note of August 18, 2014 in favor of Former Member made by the Company; (ii) Former Member Parties hereby agree to indemnify and hold harmless the Released Parties from and against any losses, claims, damages, demands and liabilities (or actions or proceedings in respect thereof), joint or several, related to or directly or indirectly arising in any manner in connection with this Release, the operation or management of the Company, any agreements

executed in connection with the operation and business of the Company, but excluding only that certain promissory note of August 18, 2014 in favor of Former Member made by the Company. In connection with the foregoing, Former Member Parties represent and warrant, that except for the Units being repurchased by the Company from Former Member, Former Member Parties have no right, title or interest in or to any assets or property of the Company, and Former Member Parties hereby waive any right, title or interest in or to any assets or property of the Company.

3.    Inconsistency. In the event of any inconsistency between the provisions of this Release Agreement and any other document, instrument, or agreement entered into by and between Former Member Parties and the Released Parties, the provisions of this Release Agreement shall govern and control.

4.    Governing Law. This Agreement shall be governed by, and construed in all respects in accordance with, the internal laws of the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of any New York State or Federal court sitting in the Borough of Manhattan, City of New York over any suit, action or proceeding commenced by or on behalf of any party hereto arising out of, or relating to, this Agreement. To the extent permitted by applicable law, Former Member hereby waives trial by jury in any action or proceeding, and with respect to any claim asserted in any such action or proceeding, brought by either of the parties against the other on any matter whatsoever arising out of or in any way connected with this Release Agreement or the relationship of Former Member and the Company or and any other Member or any Manager of the Company.

5.    Severability. The provisions of this Agreement are severable, and if any provision or part hereof or the application thereof to any person or circumstance shall ever be held by any court of competent jurisdiction to be invalid, illegal, unenforceable or unconstitutional for any reason, the remainder of this Agreement and the application of such provision or part hereof to other persons or circumstances shall not be affected thereby, unless the invalidation of such provision or its application materially interferes with the intent of the parties hereto.

6.    Paragraph Headings. The Paragraph headings in this Agreement are inserted only as a matter of convenience or reference, and are not to be given any effect in construing this Agreement.

7.    Informed Execution. Each party warrants and represents to each other party that he or it has (i) read and understand all of the terms and conditions of this Agreement, (ii) intend to be bound by the terms and conditions of this Agreement, and this Agreement constitutes a valid, binding and enforceable contract against each of them in accordance with the terms hereof, and (iii) are executing this Agreement freely and voluntarily, without duress, after consultation with independent counsel of their own selection.

8.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall constitute an original but all of which, taken together, shall constitute but one and the same instrument and shall be binding upon each of the parties as fully and completely as if both had signed but one instrument. A signed counterpart of this Agreement transmitted by telecopier, facsimile or as a .pdf, Jpeg, .TIFF or other electronic format as an attachment to an electronic mail transmission also shall be deemed an original and effective for all purposes. All recitals contained in this Agreement are ratified and confirmed.

9.    <u>Entire Agreement.</u> This Release shall be binding upon the Former Member Parties. This Agreement and all documents, instruments, and agreements executed in connection herewith, including the promissory note, incorporate all of the discussions and negotiations between the Former Member and the Company and supersedes all prior understandings and agreements between the parties relating to the subject matters herein. No modification, amendment, or waiver of any provision of this Release Agreement, or any provision of any other document, instrument, or agreement between the Former Member Parties and the Released Parties shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver.

IN WITNESS WHEREOF, this Agreement has been executed as of the date and year first set forth above.

Former Member:
EVE, LLC.

By:_____

Company:
ETRE FINANCIAL, LLC

By:_____

STATE OF                    )
                           )
COUNTY OF                  )

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by _____, on behalf of _____.

My commission expires: _____.


_____
        Notary Public

4

STATE OF    New York        )
                           )
COUNTY OF    New York       )

The foregoing instrument was acknowledged before me this _18_ day of _August_, 2014, by _Jacob Frydman_, on behalf of _ETRE Financial, LLC_.

My commission expires: _5/14/2016_ .

_____
Notary Public

NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LI6261807
Qualified in Dutchess County
Commission Expires May 14, 2016

ALEXANDER MARTIN LIBIN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LI6261807
Qualified in Dutchess County
Commission Expires May 14, 2016

**ETRE Financial, LLC**
c/o Jacob Frydman
60 Broad Street
34th Floor
New York, NY 10004

August 18, 2014

SMP Realty NM LLC
200 Candlewood Lake Road
New Milford, CT 06776
Att. Scott Panzer

Via email scottpanzer@optonline.net, and FedEx

*In re:* *REPURCHASE OF FORMER MEMBER'S UNITS*

Gentlemen:

Pursuant to section 7.4 (b) of the Company's 2012 Operating Agreement in the event a Member's employment with the Company is terminated without Cause or a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member, and/or his or her Personal Representative or Successor, and if the Company so elects, such Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

Pursuant to section 7.4 (d) of the Company's 2012 Operating Agreement upon a Member's termination of employment (a "Former Member"), and in the event the Board (not including a withdrawing terminated Member serving as a Manager) by unanimous vote or written consent elects to repurchase such Former Member's Units, the Company shall notify the Former Member or other applicable holder in writing of such election and, within thirty (30) days after determination of the repurchase price therefor, pay the repurchase price to the Former Member.

Pursuant to section 7.4 (d) of the Company's 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company or who's employment was terminated for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set

forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of this Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

As you are aware you withdrew as a Member of the Company, and terminated your employment with the Company, each effective on July 24, 2014. As a result thereof, on August 15, 2014 the Company, through the sole Manager entitled to vote thereon, adopted the enclosed ACTION BY WRITTEN CONSENT OF THE BOARD MEMBERS AND MANAGERS OF ETRE FINANCIAL, LLC.

Pursuant to said Action the Company has elected to repurchase your Units. In accordance therewith, enclosed please find the following:

1.  The Company's executed promissory note in your favor for the full repurchase price of your Units; and

2.  A Release Agreement executed by the Company and which you are required to execute and deliver to the Company in consideration of, and as a condition to the Company's payment of the repurchase price.

Pursuant to the terms of the Company's Operating Agreement, upon payment of the repurchase price pursuant to the terms of this Section 7.4(d) which includes upon the execution of the enclosed promissory note, the Units subject to repurchase are deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

Therefore, your Units are deemed repurchased by the company as of today.

I also wish to remind you that pursuant to Section 12.2 of the Company's Operating Agreement, in light of each Member's access to Confidential Information and position of trust and confidence with the Company, each Member agreed that, during the period of his or her continued employment or other engagement with the Company, and for a period of twelve (12) months, running consecutively, beginning on the date of any termination of the Member's employment for any reason (the "Restricted Period"), such Member shall not (x) render services or give advice to, or affiliate with (as employee, partner, consultant or otherwise), or (y) directly or indirectly through one or more of any of their respective

Affiliates, own, manage, operate, control or participate in the ownership, management, operation or control of, any Competitor or any division or business segment of any Competitor.

"Competitor" is defined in the Company's 2012 Operating Agreement to mean any Person engaged, directly or indirectly, in whole or in part, in any business that operates in the same or similar fashion to an "Exchange Traded Real Estate Platform" or any competitive business. "Exchange Traded Real Estate Platform" is defined in the Company's Operating Agreement to mean an electronic investment platform where investors will be able to buy and sell shares in publicly traded securities in entities that own individual real estate assets, and the ancillary businesses related thereto.

Pursuant to Section 12.2 (b) of the Company's Operating Agreement each Member further agreed that, for a period of one (1) year beginning on the date of any termination of the Member's employment for any reason he or she shall not, directly or indirectly through one or more of any of such Member's Affiliates:

      (i)     hire or solicit, or encourage any other Person to hire or solicit, any individual who has been an employee, consultant or advisor of the Company or any Subsidiary or Affiliate of the Company within one (1) year prior to the date of such hiring or solicitation;

      (ii)    solicit or entice, or attempt to solicit or entice, any investors, contractors, suppliers of the Company or any Subsidiary or Affiliate of the Company for purposes of diverting their business or services from the Company or such Subsidiary or Affiliate or for any other purpose; or

      (iii)   make any statement or publication that is intended to or could reasonably be understood to disparage or impugn the reputation of the Company or any Subsidiary or Affiliate of the Company, or any of their respective products, services, executives, partners, directors, officers or employees, regardless of any perceived truth of such statement or publication.

We understand that as of July 24, 2012 you have become associated with ETRE Financial, LLC, formerly known as ETRE Financial Holdings, LLC, a "Competitor" of the Company in violation of Section 12.2 of the Company's Operating Agreement. Please accept this as the Company's immediate demand that you cease and desist from any association, employment and or ownership of said Competitor, and that the Company hereby advises that it will seek all damages from you as a result of your breach of Section 12.2 of the Company's Operating Agreement.

Additionally, we understand that you have changed the name of ETRE Financial Holdings, LLC to "ETRE Financial, LLC". Pursuant to Section 13.1 of the Company's Operating Agreement the name "ETRE Financial" and all goodwill associated therewith are

property of the Company, and no Member or Affiliate of the Company shall have the right to use the name "ETRE Financial" or "ETRE" as a component of the name of any business venture or otherwise. Your actions as above described constitute a breach of the quoted provision.

Please accept this letter as the Company's immediate demand that you immediately cease and desist from using the name ETRE Financial or any variation of the name ETRE in any business enterprise with which you are associated. The Company intends to take all appropriate action to protect its rights to the name ETRE and will seek damages against you for your breach as above set forth.

Finally, we understand that you and your new enterprise have converted the assets of the Company. Such action is illegal. Please accept this as the Company's demand for your immediate return to the Company and your and your affiliates' assurances that you will not hereafter use any property of the Company, including, without limitation, the Company's trading platform, marketing materials, intellectual property, agreements and all other assets and property owned by the Company.

Your failure to return said converted property to the Company will result in the Company seeking to enforce all rights and remedies which it has against you and your affiliates for your conversion of the company's assets and properties.

Very truly yours,

Jacob Frydman, Manager

# UNSECURED PROMISSORY NOTE

New York, New York
August 18, 2014

$12,182.80

THIS PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS. IT MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THIS PROMISSORY NOTE UNDER THE SECURITIES ACT OF 1933 AND QUALIFICATION UNDER APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED.

This Note is being delivered in connection with that certain Limited Liability Company Agreement , of August 15, 2012 made by and among ETRE Financial, LLC, a Delaware limited liability company (the "Company"), Jacob Frydman, Eli Verschleiser, Jesse Stein, Scott Panzer and Paul Frischer (the "Principals"), and Winter Investors, LLC, JS3 Alternative Investments LLC, SMP Realty NM LLC, Frischer Kranz Inc, and EVE, LLC (the "2012 Operating Agreement"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 2012 Operating Agreement.

Pursuant to section 7.4 (b) of the 2012 Operating Agreement in the event a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member ("Former Member"), and/or his or her Personal Representative or Successor, and if the Company so elects, such Former Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

Pursuant to section 7.4 (d) of the 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members,

officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

On July 24, 2014 JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members.

Pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC.

On August 15, 2014, Jacob Frydman, as the remaining Manager entitled to vote with respect to the repurchase by the Company of the Units owned by the Former Members elected to cause the Company to repurchase all of the Units of each of the Former Members by Action by Written Consent of the Board of ETRE Financial LLC and to pay the purchase price for the repurchase of each Withdrawing Members' Units by the issuance of this promissory note.

ETRE Financial, LLC ("Maker" or "Company"), whose address is c/o Jacob Frydman, 60 Broad Street, 34th Floor, New York, NY 10004, for value received, hereby promises to pay to the order of SMP Realty NM, LLC ("Holder") whose address is 200 Candlewood Lake Road North, New Milford, CT 06776, the principal sum of TWELVE THOUSAND ONE HUNDRED EIGHTY TWO and 80/100 Dollars ($12,182.80) (the "Principal") together with interest from the date hereof on the unpaid Principal amount hereof at the rate and on the dates set forth below, all on the terms and conditions set forth herein. Payment for all amounts due hereunder shall be made in lawful money of the United States of America to the address of the Holder at 200 Candlewood Lake Road North, New Milford, CT 06776 or such other address as Holder shall provide to Maker by written notice to the address set forth herein.

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1. Definitions. As used in this Note, each capitalized term shall have the meaning specified herein and the following terms shall have the indicated meanings:

(b) "Base Rate" shall mean at the prime rate in effect as of the date hereof as reported by Citibank, N.A. in New York, New York, which is three and one-quarter percent (3.25%) per annum during the term hereof.

(c) "New York Business Day" shall mean any day other than Saturday, Sunday or other day

2

on which commercial banking institutions in New York, New York are authorized or required by law or other governmental action to remain closed for business.

2. <u>Interest.</u> Interest shall accrue from the date hereof (without compounding) until all outstanding principal and interest on this Note shall have been paid in full at the Base Rate per annum on the unpaid Principal balance hereof. Interest shall accrue each day on the outstanding principal amount calculated on the basis of a 360-day year for the actual number of days.

3. <u>Payments.</u> Subject to Maker's rights as hereafter set forth to suspend payments (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference, commencing on August 18, 2015 Maker shall make ten (10) equal annual installments of principal, each in the amount of ONE THOUSAND TWO HUNDRED EIGHTEEN and 28/100 Dollars ($1,218.28), plus accrued interest on the unpaid Principal balance, on each of the ten anniversaries of the date hereof.

4. <u>Events of Default</u>. If any of the events specified in this Section 3 shall occur (herein individually referred to as an "Event of Default"):

(i) Default in payment of Principal or interest when due under this Note which is not cured within thirty (30) days after receipt by Maker of a notice of default from Holder,

then, the Holder of this Note may, by notice to the Maker, declare the principal of this Note, all interest thereon and all other amounts payable hereunder to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower, whereupon the principal amount of this Note, all such interest and all such amounts shall become and be immediately due and payable, and exercise any and all of its other rights under applicable law hereunder.

5. <u>Suspension of Payments</u>. Notwithstanding anything to the contrary contained herein, Maker shall be excused from making payments hereunder (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference.

6. <u>Subordination.</u> Notwithstanding anything to the contrary contained herein, this promissory note is unsecured and is subordinated to all indebtedness of the Company then

3

outstanding or thereafter issued on terms and conditions set forth by the Board.

7. <u>Prepayment</u>. The Maker may at any time prepay in whole or in part the principal sum, plus accrued interest on the amount so prepaid to date of payment, of this Note, without penalty or premium.

8. <u>Representations</u>. The Maker represents and warrants to the Holder that: (i) this Note is a legal, valid and binding agreement of the Maker, enforceable against the Maker in accordance with its terms; and (ii) the execution and delivery by the Maker of this Note and the performance by the Maker of the transactions contemplated hereby do not and will not conflict with, or result in a breach of, or constitute a default under the certificate of organization of the Maker or under any agreement to which the Maker is a party or to which the Maker or its assets may be bound or affected.

9. <u>Waiver of Presentation, Demand, Etc.</u> All parties now or hereafter liable with respect to this Note, whether the Maker, endorser or any other person hereby expressly waive presentment, demand of payment, protest, notice for demand of payment, protest and notice of non-payment, or any other notice of any kind with respect thereto. No delay or failure on the part of the Holder in the exercise of any right or remedy hereunder or at law or in equity, shall operate as a waiver thereof, and no single or partial exercise by the Holder or of any right or remedy hereunder shall preclude or estop another or further exercise or any other right or remedy.

10. <u>Defenses, Set-Offs, Counterclaims.</u> Maker hereby agrees not to raise or interpose any defense, set-off or counterclaim of any kind or nature whatsoever which it may have against the Holder in any action brought upon this Note and Maker acknowledges that it has no defense of any kind or nature to the enforcement of this Note or to the binding nature of the obligations represented hereby.

11. <u>Security</u>. This promissory note is unsecured, and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

12. <u>Amendments.</u> No amendment, modification, alteration or change of any of the provisions of this Note shall be effective unless in writing signed by the Maker and the Holder and only to the extent therein set forth.

13. <u>Governing Law; Jurisdiction.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of New York excluding the body of law relating to conflict laws. Borrower hereby consents to the exclusive jurisdiction of the state and federal courts located in City and County of New York, New York in connection with any lawsuit, claim or other proceeding relating to this Note or the transactions contemplated hereby.

14. <u>Time of the Essence.</u> Time is of the essence of this Note and in case this Note is collected by law or through an attorney at law or under advice there from, the Maker agrees to pay all costs of collection including reasonable attorneys' fees. The Holder shall be under no duty to exercise any or all of the rights and remedies given by this Note and no party to this instrument shall be discharged from the obligations or undertakings hereunder.

15. <u>Consent to Service and Waiver of Jury Trial.</u> The Maker hereby consents to service of any notice, process, motion or other document in connection with any lawsuit or other proceeding arising out of or relating to this Note by certified or registered mail, return receipt requested, to the address set forth above or such other address as the Maker shall provide Holder in writing and the Borrower hereby waives any right to trial by jury in any such lawsuit or proceeding.

16. <u>Notice.</u> All demands, notices, requests, consents and other communications required or permitted under this promissory note shall be in writing and shall be personally delivered, or sent by reputable commercial express delivery service (including, without limitation, Federal Express and U.S. Postal Service overnight delivery service), or deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, to the address set forth above or such other address as the Maker shall provide Holder in writing or the Holder shall provide the Maker in writing, in each case in accordance with the notice requirements hereof.

17. <u>Severability.</u> In the event that any term or provision of this Note shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by any authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality or enforceability of the remaining terms and provisions of this Note, which shall be enforced as if the unenforceable term or provision were deleted.

IN WITNESS WHEREOF, the undersigned has caused this Note to be issued this 18th day of August, 2014.

**ETRE Financial, LLC**

By: _____
Jacob Frydman, Manager

5

# RELEASE

THIS RELEASE Agreement is made as of this 18th day of August, 2014, made in favor of ETRE FINANCIAL, LLC, a Delaware limited liability company who's Operating Agreement was executed on or about August 15, 2012 by and among Jacob Frydman, Scott Panzer, Paul Frischer, Jesse Stein, Eli Verschleiser, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC, and EVE, LLC (the "Company") by SMP Realty NM, LLC (the "Former Member") having an address at 200 Candlewood Lake Road North, New Milford, CT 06776, on behalf of itself and its Affiliates (as hereinafter defined).

## WITNESSETH:

WHEREAS, Former Member was a Member of the Company through July 24, 2014, at which time Former Member withdrew from the company and terminated its and Jesse Steins' employment with Company;

WHEREAS, pursuant to section 7.4 (b) of the Company's Operating Agreement in the event a Member's employment with the Company is terminated without Cause or a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member, and/or his or her Personal Representative or Successor, and if the Company so elects, such Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement upon a Member's termination of employment (a "Former Member"), and in the event the Board (not including a withdrawing terminated Member serving as a Manager) by unanimous vote or written consent elects to repurchase such Former Member's Units, the Company shall notify the Former Member or other applicable holder in writing of such election and, within thirty (30) days after determination of the repurchase price therefor, pay the repurchase price to the Former Member;

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement the purchase price paid to a Former Member who withdrew from the Company or who's employment was terminated for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being

taken by the Former Member, his or her Personal Representative or Successor or the Company;

WHEREAS, on July 24, 2014, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members;

WHEREAS, pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC; and

WHEREAS the Company has elected to repurchase the Withdrawing Members' Units, with the purchase price to be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York);

WHEREAS, in consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates.

NOW THEREFORE, in consideration for the premises and the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Former Member hereby agrees as follows:

1.      Capitalized Terms; Recitals. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Company's Operating Agreement. All recitals contained in this Agreement are hereby incorporated into this Release and confirmed.

2.      Release; Indemnity. Simultaneously with the execution of this Release Former Member on behalf of itself and on behalf of its affiliates, managers, members, officers, directors, attorneys, employees, agents, representatives, predecessors, successors, and assigns and each other entity or person, if any, controlling any of them (the "Former Member Parties") hereby releases and forever discharges the Company its affiliates, managers, members, officers, directors, attorneys, employees, agents, representatives, predecessors, successors, and assigns and each other entity or person, if any, controlling any of them (collectively the "Released Parties") from all liability whatsoever and any and all claims, suits, controversies, actions, causes of action, cross-claims, counter-claims, demands, debts, compensatory damages, liquidated damages, punitive or exemplary damages, other damages, claims for costs and attorneys' fees, or liabilities of any nature whatsoever in law and in equity, both past and present, whether known or unknown, suspected, or claimed against the Released Parties which Former Member Parties ever had, now have, or hereafter may have, by reason of any matter, cause, or thing whatsoever, from the beginning of any initial dealings with the Released Parties and through the time of execution of this Release but excluding only that certain promissory note of August 18, 2014 in favor of Former Member made by the Company; (ii) Former Member Parties hereby agree to indemnify and hold harmless the Released Parties from and against any losses, claims, damages, demands and liabilities (or

2

actions or proceedings in respect thereof), joint or several, related to or directly or indirectly arising in any manner in connection with this Release, the operation or management of the Company, any agreements executed in connection with the operation and business of the Company, but excluding only that certain promissory note of August 18, 2014 in favor of Former Member made by the Company. In connection with the foregoing, Former Member Parties represent and warrant, that except for the Units being repurchased by the Company from Former Member, Former Member Parties have no right, title or interest in or to any assets or property of the Company, and Former Member Parties hereby waive any right, title or interest in or to any assets or property of the Company.

3.    Inconsistency. In the event of any inconsistency between the provisions of this Release Agreement and any other document, instrument, or agreement entered into by and between Former Member Parties and the Released Parties, the provisions of this Release Agreement shall govern and control.

4.    Governing Law. This Agreement shall be governed by, and construed in all respects in accordance with, the internal laws of the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of any New York State or Federal court sitting in the Borough of Manhattan, City of New York over any suit, action or proceeding commenced by or on behalf of any party hereto arising out of, or relating to, this Agreement. To the extent permitted by applicable law, Former Member hereby waives trial by jury in any action or proceeding, and with respect to any claim asserted in any such action or proceeding, brought by either of the parties against the other on any matter whatsoever arising out of or in any way connected with this Release Agreement or the relationship of Former Member and the Company or and any other Member or any Manager of the Company.

5.    Severability. The provisions of this Agreement are severable, and if any provision or part hereof or the application thereof to any person or circumstance shall ever be held by any court of competent jurisdiction to be invalid, illegal, unenforceable or unconstitutional for any reason, the remainder of this Agreement and the application of such provision or part hereof to other persons or circumstances shall not be affected thereby, unless the invalidation of such provision or its application materially interferes with the intent of the parties hereto.

6.    Paragraph Headings. The Paragraph headings in this Agreement are inserted only as a matter of convenience or reference, and are not to be given any effect in construing this Agreement.

7.    Informed Execution. Each party warrants and represents to each other party that he or it has (i) read and understand all of the terms and conditions of this Agreement, (ii) intend to be bound by the terms and conditions of this Agreement, and this Agreement constitutes a valid, binding and enforceable contract against each of them in accordance with the terms hereof, and (iii) are executing this Agreement freely and voluntarily, without duress, after consultation with independent counsel of their own selection.

8.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall constitute an original but all of which, taken together, shall constitute but one and the same instrument and shall be binding upon each of the parties as fully and completely as if both had signed but one instrument. A signed counterpart of this Agreement transmitted by telecopier, facsimile or as a .pdf, Jpeg, .TIFF or other electronic format as an attachment to an electronic mail transmission also shall be deemed an original and effective for all purposes. All recitals contained in this Agreement are ratified and confirmed.

9.     Entire Agreement. This Release shall be binding upon the Former Member Parties. This Agreement and all documents, instruments, and agreements executed in connection herewith, including the promissory note, incorporate all of the discussions and negotiations between the Former Member and the Company and supersedes all prior understandings and agreements between the parties relating to the subject matters herein. No modification, amendment, or waiver of any provision of this Release Agreement, or any provision of any other document, instrument, or agreement between the Former Member Parties and the Released Parties shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver.

         IN WITNESS WHEREOF, this Agreement has been executed as of the date and year first set forth above.

Former Member:
SMP REALTY NM, LLC.

By:_____

Company:
ETRE FINANCIAL, LLC

By:_____

STATE OF                         )
                                 )
COUNTY OF                        )

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by _____, on behalf of _____.

         My commission expires: _____.

         _____
                    Notary Public

4

STATE OF        New York  )
                           )
COUNTY OF       New York   )

The foregoing instrument was acknowledged before me this 18 day of August , 2014, by Jacob Frydman, on behalf of _____ ETRE Financial, LLC

My commission expires: 5/14/2016 .

_____
Notary Public

ALEXANDER MARTIN LIBIN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LI6261807
Qualified in Dutchess County
Commission Expires May 14, 2016

5

**ETRE Financial, LLC**
**c/o Jacob Frydman**
**60 Broad Street**
**34th Floor**
**New York, NY 10004**

August 18, 2014

JS3 Alternative Investments LLC
100 Jay Street, Apt 14 H
Brooklyn, NY 11201
Att. Jese Stein

Via Email js@etrefinancial.com, and FedEx

<u>*In re:  REPURCHASE OF FORMER MEMBER'S UNITS*</u>

Gentlemen:

      Pursuant to section 7.4 (b) of the Company's 2012 Operating Agreement in the event a Member's employment with the Company is terminated without Cause or a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member, and/or his or her Personal Representative or Successor, and if the Company so elects, such Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

      Pursuant to section 7.4 (d) of the Company's 2012 Operating Agreement upon a Member's termination of employment (a "Former Member"), and in the event the Board (not including a withdrawing terminated Member serving as a Manager) by unanimous vote or written consent elects to repurchase such Former Member's Units, the Company shall notify the Former Member or other applicable holder in writing of such election and, within thirty (30) days after determination of the repurchase price therefor, pay the repurchase price to the Former Member.

      Pursuant to section 7.4 (d) of the Company's 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company or who's employment was terminated for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all

indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of this Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

As you are aware you withdrew as a Member of the Company, and terminated your employment with the Company, each effective on July 24, 2014. As a result thereof, on August 15, 2014 the Company, through the sole Manager entitled to vote thereon, adopted the enclosed ACTION BY WRITTEN CONSENT OF THE BOARD MEMBERS AND MANAGERS OF ETRE FINANCIAL, LLC.

Pursuant to said Action the Company has elected to repurchase your Units. In accordance therewith, enclosed please find the following:

1. The Company's executed promissory note in your favor for the full repurchase price of your Units; and

2. A Release Agreement executed by the Company and which you are required to execute and deliver to the Company in consideration of, and as a condition to the Company's payment of the repurchase price.

Pursuant to the terms of the Company's Operating Agreement, upon payment of the repurchase price pursuant to the terms of this Section 7.4(d) which includes upon the execution of the enclosed promissory note, the Units subject to repurchase are deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

Therefore, your Units are deemed repurchased by the company as of today.

I also wish to remind you that pursuant to Section 12.2 of the Company's Operating Agreement, in light of each Member's access to Confidential Information and position of trust and confidence with the Company, each Member agreed that, during the period of his or her continued employment or other engagement with the Company, and for a period of twelve (12) months, running consecutively, beginning on the date of any termination of the Member's employment for any reason (the "Restricted Period"), such Member shall not (x) render services or give advice to, or affiliate with (as employee, partner, consultant or

otherwise), or (y) directly or indirectly through one or more of any of their respective Affiliates, own, manage, operate, control or participate in the ownership, management, operation or control of, any Competitor or any division or business segment of any Competitor.

"Competitor" is defined in the Company's 2012 Operating Agreement to mean any Person engaged, directly or indirectly, in whole or in part, in any business that operates in the same or similar fashion to an "Exchange Traded Real Estate Platform" or any competitive business. "Exchange Traded Real Estate Platform" is defined in the Company's Operating Agreement to mean an electronic investment platform where investors will be able to buy and sell shares in publicly traded securities in entities that own individual real estate assets, and the ancillary businesses related thereto.

Pursuant to Section 12.2 (b) of the Company's Operating Agreement each Member further agreed that, for a period of one (1) year beginning on the date of any termination of the Member's employment for any reason he or she shall not, directly or indirectly through one or more of any of such Member's Affiliates:

      (i)    hire or solicit, or encourage any other Person to hire or solicit, any individual who has been an employee, consultant or advisor of the Company or any Subsidiary or Affiliate of the Company within one (1) year prior to the date of such hiring or solicitation;

      (ii)    solicit or entice, or attempt to solicit or entice, any investors, contractors, suppliers of the Company or any Subsidiary or Affiliate of the Company for purposes of diverting their business or services from the Company or such Subsidiary or Affiliate or for any other purpose; or

      (iii)    make any statement or publication that is intended to or could reasonably be understood to disparage or impugn the reputation of the Company or any Subsidiary or Affiliate of the Company, or any of their respective products, services, executives, partners, directors, officers or employees, regardless of any perceived truth of such statement or publication.

We understand that as of July 24, 2012 you have become associated with ETRE Financial, LLC, formerly known as ETRE Financial Holdings, LLC, a "Competitor" of the Company in violation of Section 12.2 of the Company's Operating Agreement. Please accept this as the Company's immediate demand that you cease and desist from any association, employment and or ownership of said Competitor, and that the Company hereby advises that it will seek all damages from you as a result of your breach of Section 12.2 of the Company's Operating Agreement.

Additionally, we understand that you have changed the name of ETRE Financial Holdings, LLC to "ETRE Financial, LLC". Pursuant to Section 13.1 of the Company's

Operating Agreement the name "ETRE Financial" and all goodwill associated therewith are property of the Company, and no Member or Affiliate of the Company shall have the right to use the name "ETRE Financial" or "ETRE" as a component of the name of any business venture or otherwise. Your actions as above described constitute a breach of the quoted provision.

Please accept this letter as the Company's immediate demand that you immediately cease and desist from using the name ETRE Financial or any variation of the name ETRE in any business enterprise with which you are associated. The Company intends to take all appropriate action to protect its rights to the name ETRE and will seek damages against you for your breach as above set forth.

Finally, we understand that you and your new enterprise have converted the assets of the Company. Such action is illegal. Please accept this as the Company's demand for your immediate return to the Company and your and your affiliates' assurances that you will not hereafter use any property of the Company, including, without limitation, the Company's trading platform, marketing materials, intellectual property, agreements and all other assets and property owned by the Company.

Your failure to return said converted property to the Company will result in the Company seeking to enforce all rights and remedies which it has against you and your affiliates for your conversion of the company's assets and properties.

Very truly yours,

Jacob Frydman, Manager

# UNSECURED PROMISSORY NOTE

New York, New York<br>
August 18, 2014

$18,274.20

      THIS PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE SECURITIES LAWS. IT MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THIS PROMISSORY NOTE UNDER THE SECURITIES ACT OF 1933 AND QUALIFICATION UNDER APPLICABLE STATE SECURITIES LAWS OR AN OPINION OF COUNSEL SATISFACTORY TO THE BORROWER THAT SUCH REGISTRATION IS NOT REQUIRED.

      This Note is being delivered in connection with that certain Limited Liability Company Agreement , of August 15, 2012 made by and among ETRE Financial, LLC, a Delaware limited liability company (the "Company"), Jacob Frydman, Eli Verschleiser, Jesse Stein, Scott Panzer and Paul Frischer (the "Principals"), and Winter Investors, LLC, JS3 Alternative Investments LLC, SMP Realty NM LLC, Frischer Kranz Inc, and EVE, LLC (the "2012 Operating Agreement"). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 2012 Operating Agreement.

      Pursuant to section 7.4 (b) of the 2012 Operating Agreement in the event a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member ("Former Member"), and/or his or her Personal Representative or Successor, and if the Company so elects, such Former Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

      Pursuant to section 7.4 (d) of the 2012 Operating Agreement the purchase price paid to a Former Member who withdrew from the Company for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute

and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being taken by the Former Member, his or her Personal Representative or Successor or the Company.

On July 24, 2014 JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members.

Pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC.

On August 15, 2014, Jacob Frydman, as the remaining Manager entitled to vote with respect to the repurchase by the Company of the Units owned by the Former Members elected to cause the Company to repurchase all of the Units of each of the Former Members by Action by Written Consent of the Board of ETRE Financial LLC and to pay the purchase price for the repurchase of each Withdrawing Members' Units by the issuance of this promissory note.

ETRE Financial, LLC ("Maker" or "Company"), whose address is c/o Jacob Frydman, 60 Broad Street, 34th Floor, New York, NY 10004, for value received, hereby promises to pay to the order of JS3 Alternative Investments, LLC ("Holder") whose address is 100 Jay Street, Apt 14H, Brooklyn, NY 11201, the principal sum of EIGHTEEN THOUSAND TWO HUNDRED SEVENTY FOUR and 20/100 Dollars ($18,274.20 ) (the "Principal") together with interest from the date hereof on the unpaid Principal amount hereof at the rate and on the dates set forth below, all on the terms and conditions set forth herein. Payment for all amounts due hereunder shall be made in lawful money of the United States of America to the address of the Holder at 100 Jay Street, Apt 14H, Brooklyn, NY 11201 or such other address as Holder shall provide to Maker by written notice to the address set forth herein.

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1. Definitions. As used in this Note, each capitalized term shall have the meaning specified herein and the following terms shall have the indicated meanings:

(b) "Base Rate" shall mean at the prime rate in effect as of the date hereof as reported by Citibank, N.A. in New York, New York, which is three and one-quarter percent (3.25%) per annum during the term hereof.

2

(c) "New York Business Day" shall mean any day other than Saturday, Sunday or other day on which commercial banking institutions in New York, New York are authorized or required by law or other governmental action to remain closed for business.

2.  Interest.  Interest shall accrue from the date hereof (without compounding) until all outstanding principal and interest on this Note shall have been paid in full at the Base Rate per annum on the unpaid Principal balance hereof.  Interest shall accrue each day on the outstanding principal amount calculated on the basis of a 360-day year for the actual number of days.

3.  Payments.  Subject to Maker's rights as hereafter set forth to suspend payments (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference, commencing on August 18, 2015 Maker shall make ten (10) equal annual installments of principal, each in the amount of  ONE THOUSAND EIGHT HUNDRED TWENTY SEVEN and 42/100 Dollars ($1,827.42), plus accrued interest on the unpaid Principal balance, on each of the ten anniversaries of the date hereof.

4.  Events of Default.  If any of the events specified in this Section 3 shall occur (herein individually referred to as an "Event of Default"):

(i) Default in payment of Principal or interest when due under this Note which is not cured within thirty (30) days after receipt by Maker of a notice of default from Holder,

then, the Holder of this Note may, by notice to the Maker, declare the principal of this Note, all interest thereon and all other amounts payable hereunder to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrower, whereupon the principal amount of this Note, all such interest and all such amounts shall become and be immediately due and payable, and exercise any and all of its other rights under applicable law hereunder.

5.  Suspension of Payments.  Notwithstanding anything to the contrary contained herein, Maker shall be excused from making payments hereunder (i) if and for so long as the Maker's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries; and (ii) until the Holder, as a Former Member and/or his or her Personal Representative or Successor executes and delivers to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates in the form attached hereto as Exhibit "A" and incorporated herein by reference.

6.  Subordination.  Notwithstanding anything to the contrary contained herein, this

promissory note is unsecured and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

7. Prepayment. The Maker may at any time prepay in whole or in part the principal sum, plus accrued interest on the amount so prepaid to date of payment, of this Note, without penalty or premium.

8. Representations. The Maker represents and warrants to the Holder that: (i) this Note is a legal, valid and binding agreement of the Maker, enforceable against the Maker in accordance with its terms; and (ii) the execution and delivery by the Maker of this Note and the performance by the Maker of the transactions contemplated hereby do not and will not conflict with, or result in a breach of, or constitute a default under the certificate of organization of the Maker or under any agreement to which the Maker is a party or to which the Maker or its assets may be bound or affected.

9. Waiver of Presentation, Demand, Etc. All parties now or hereafter liable with respect to this Note, whether the Maker, endorser or any other person hereby expressly waive presentment, demand of payment, protest, notice for demand of payment, protest and notice of non-payment, or any other notice of any kind with respect thereto. No delay or failure on the part of the Holder in the exercise of any right or remedy hereunder or at law or in equity, shall operate as a waiver thereof, and no single or partial exercise by the Holder or of any right or remedy hereunder shall preclude or estop another or further exercise or any other right or remedy.

10. Defenses, Set-Offs, Counterclaims. Maker hereby agrees not to raise or interpose any defense, set-off or counterclaim of any kind or nature whatsoever which it may have against the Holder in any action brought upon this Note and Maker acknowledges that it has no defense of any kind or nature to the enforcement of this Note or to the binding nature of the obligations represented hereby.

11. Security. This promissory note is unsecured, and is subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board.

12. Amendments. No amendment, modification, alteration or change of any of the provisions of this Note shall be effective unless in writing signed by the Maker and the Holder and only to the extent therein set forth.

13. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New York excluding the body of law relating to conflict laws. Borrower hereby consents to the exclusive jurisdiction of the state and federal courts located in City and County of New York, New York in connection with any lawsuit, claim or other proceeding relating to this Note or the transactions contemplated hereby.

14. Time of the Essence. Time is of the essence of this Note and in case this Note is collected by law or through an attorney at law or under advice there from, the Maker agrees to pay all costs of collection including reasonable attorneys' fees. The Holder shall be under no duty to exercise any or all of the rights and remedies given by this Note and no party to this instrument shall

be discharged from the obligations or undertakings hereunder.

15. <u>Consent to Service and Waiver of Jury Trial.</u>  The Maker hereby consents to service of any notice, process, motion or other document in connection with any lawsuit or other proceeding arising out of or relating to this Note by certified or registered mail, return receipt requested, to the address set forth above or such other address as the Maker shall provide Holder in writing and the Borrower hereby waives any right to trial by jury in any such lawsuit or proceeding.

16. <u>Notice.</u>  All demands, notices, requests, consents and other communications required or permitted under this promissory note shall be in writing and shall be personally delivered, or sent by reputable commercial express delivery service (including, without limitation, Federal Express and U.S. Postal Service overnight delivery service), or deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, to the address set forth above or such other address as the Maker shall provide Holder in writing or the Holder shall provide the Maker in writing, in each case in accordance with the notice requirements hereof.

17. <u>Severability.</u>  In the event that any term or provision of this Note shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by any authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality or enforceability of the remaining terms and provisions of this Note, which shall be enforced as if the unenforceable term or provision were deleted.

IN WITNESS WHEREOF, the undersigned has caused this Note to be issued this 18th day of August, 2014.

**ETRE Financial, LLC**

By: _____
Jacob Frydman, Manager

# RELEASE

THIS RELEASE Agreement is made as of this 18th day of August, 2014, made in favor of ETRE FINANCIAL, LLC, a Delaware limited liability company who's Operating Agreement was executed on or about August 15, 2012 by and among Jacob Frydman, Scott Panzer, Paul Frischer, Jesse Stein, Eli Verschleiser, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC, and EVE, LLC (the "Company") by JS3 Alternative Investments, LLC (the "Former Member") having an address at 100 Jay Street, Apt 14H, Brooklyn, NY 11201 York, New York 10022, on behalf of itself and its Affiliates (as hereinafter defined).

## WITNESSETH:

WHEREAS, Former Member was a Member of the Company through July 24, 2014, at which time Former Member withdrew from the company and terminated its and Jesse Steins' employment with Company;

WHEREAS, pursuant to section 7.4 (b) of the Company's Operating Agreement in the event a Member's employment with the Company is terminated without Cause or a Member withdraws as a Member, then the Company may, within ninety (90) days of such event, with the prior vote or written consent of all of the Managers (not including a withdrawing Member serving as a Manager), but shall not be obligated to, elect to repurchase from such Member, and/or his or her Personal Representative or Successor, and if the Company so elects, such Member and/or such Personal Representative or Successor shall be obligated to sell to the Company, all or any portion of such Member's Units at a price equal to the lower of (A) the positive Capital Account balance of such Member's Units or (B) the book value of such Units as determined in accordance with GAAP by the Company's certified public accountants.

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement upon a Member's termination of employment (a "Former Member"), and in the event the Board (not including a withdrawing terminated Member serving as a Manager) by unanimous vote or written consent elects to repurchase such Former Member's Units, the Company shall notify the Former Member or other applicable holder in writing of such election and, within thirty (30) days after determination of the repurchase price therefor, pay the repurchase price to the Former Member;

WHEREAS, pursuant to section 7.4 (d) of the Company's Operating Agreement the purchase price paid to a Former Member who withdrew from the Company or who's employment was terminated for the repurchase of such Members' Units, at the Company's option, may be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York), provided that payments under such note shall be suspended if and for so long as the Company's capacity to make such payments is prohibited by any credit agreement of the Company or any of its Subsidiaries. In addition, as consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates. Upon payment of the repurchase price pursuant to the terms of Section 7.4(d) which includes upon the execution of a promissory note, the Units subject to repurchase shall be deemed repurchased by the Company without any further action being

1

taken by the Former Member, his or her Personal Representative or Successor or the Company;

WHEREAS, on July 24, 2014, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and EVE, LLC each withdrew as Members of the Company (each a "Withdrawing Member" and collectively the "Withdrawing Members"). As a result thereof, on July 24, 2014 Jesse Stein, Paul Frischer and Scott Panzer ceased to have any voting rights with respect to the repurchase by the Company of the Units of the Withdrawing Members;

WHEREAS, pursuant to the 2013 tax returns of ETRE Financial LLC the positive capital account balance of all Membership Interests in the Company was $60,914.00, with $18,274.20 being the positive capital account balance of JS3 Alternative Investments, LLC; $12,182.80 being the positive capital account balance of SMP Realty NM, LLC; $12,182.80 being the positive capital account balance of Frischer Kranz Inc., and $9,137.10 being the positive capital account balance of EVE, LLC; and

WHEREAS the Company has elected to repurchase the Withdrawing Members' Units, with the purchase price to be paid by the issuance of a promissory note. Such promissory note is to be unsecured, subordinated to all indebtedness of the Company then outstanding or thereafter issued on terms and conditions set forth by the Board, and payable in up to ten equal annual installments of principal, with interest accruing (without compounding) at the prime rate in effect as of the date of issuance of such note (as reported by Citibank, N.A. in New York, New York);

WHEREAS, in consideration for and as a condition to the Company's payment of the repurchase price, the Former Member and/or his or her Personal Representative or Successor is obligated to execute and deliver to the Company a release of any and all claims against the Company and its Members, officers and Managers and their respective Affiliates.

NOW THEREFORE, in consideration for the premises and the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Former Member hereby agrees as follows:

1. <u>Capitalized Terms; Recitals.</u> Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Company's Operating Agreement. All recitals contained in this Agreement are hereby incorporated into this Release and confirmed.

2. <u>Release; Indemnity.</u> Simultaneously with the execution of this Release Former Member on behalf of itself and on behalf of its affiliates, managers, members, officers, directors, attorneys, employees, agents, representatives, predecessors, successors, and assigns and each other entity or person, if any, controlling any of them (the "Former Member Parties") hereby releases and forever discharges the Company its affiliates, managers, members, officers, directors, attorneys, employees, agents, representatives, predecessors, successors, and assigns and each other entity or person, if any, controlling any of them (collectively the "Released Parties") from all liability whatsoever and any and all claims, suits, controversies, actions, causes of action, cross-claims, counter-claims, demands, debts, compensatory damages, liquidated damages, punitive or exemplary damages, other damages, claims for costs and attorneys' fees, or liabilities of any nature whatsoever in law and in equity, both past and present, whether known or unknown, suspected, or claimed against the Released Parties which Former Member Parties ever had, now have, or hereafter may have, by reason of any matter, cause, or thing whatsoever, from the beginning of any initial dealings with the Released Parties and through the time of execution of this Release but excluding only that certain promissory note of August 18, 2014 in favor of Former Member made by the Company; (ii) Former Member Parties hereby agree to indemnify and hold harmless the Released Parties from and against any losses, claims, damages, demands and liabilities (or

actions or proceedings in respect thereof), joint or several, related to or directly or indirectly arising in any manner in connection with this Release, the operation or management of the Company, any agreements executed in connection with the operation and business of the Company, but excluding only that certain promissory note of August 18, 2014 in favor of Former Member made by the Company. In connection with the foregoing, Former Member Parties represent and warrant, that except for the Units being repurchased by the Company from Former Member, Former Member Parties have no right, title or interest in or to any assets or property of the Company, and Former Member Parties hereby waive any right, title or interest in or to any assets or property of the Company.

3.      Inconsistency. In the event of any inconsistency between the provisions of this Release Agreement and any other document, instrument, or agreement entered into by and between Former Member Parties and the Released Parties, the provisions of this Release Agreement shall govern and control.

4.      Governing Law. This Agreement shall be governed by, and construed in all respects in accordance with, the internal laws of the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of any New York State or Federal court sitting in the Borough of Manhattan, City of New York over any suit, action or proceeding commenced by or on behalf of any party hereto arising out of, or relating to, this Agreement. To the extent permitted by applicable law, Former Member hereby waives trial by jury in any action or proceeding, and with respect to any claim asserted in any such action or proceeding, brought by either of the parties against the other on any matter whatsoever arising out of or in any way connected with this Release Agreement or the relationship of Former Member and the Company or and any other Member or any Manager of the Company.

5.      Severability. The provisions of this Agreement are severable, and if any provision or part hereof or the application thereof to any person or circumstance shall ever be held by any court of competent jurisdiction to be invalid, illegal, unenforceable or unconstitutional for any reason, the remainder of this Agreement and the application of such provision or part hereof to other persons or circumstances shall not be affected thereby, unless the invalidation of such provision or its application materially interferes with the intent of the parties hereto.

6.      Paragraph Headings. The Paragraph headings in this Agreement are inserted only as a matter of convenience or reference, and are not to be given any effect in construing this Agreement.

7.      Informed Execution. Each party warrants and represents to each other party that he or it has (i) read and understand all of the terms and conditions of this Agreement, (ii) intend to be bound by the terms and conditions of this Agreement, and this Agreement constitutes a valid, binding and enforceable contract against each of them in accordance with the terms hereof, and (iii) are executing this Agreement freely and voluntarily, without duress, after consultation with independent counsel of their own selection.

8.      Counterparts. This Agreement may be executed in any number of counterparts, each of which shall constitute an original but all of which, taken together, shall constitute but one and the same instrument and shall be binding upon each of the parties as fully and completely as if both had signed but one instrument. A signed counterpart of this Agreement transmitted by telecopier, facsimile or as a .pdf, Jpeg, .TIFF or other electronic format as an attachment to an electronic mail transmission also shall be deemed an original and effective for all purposes. All recitals contained in this Agreement are ratified and confirmed.

9.   Entire Agreement. This Release shall be binding upon the Former Member Parties. This Agreement and all documents, instruments, and agreements executed in connection herewith, including the promissory note, incorporate all of the discussions and negotiations between the Former Member and the Company and supersedes all prior understandings and agreements between the parties relating to the subject matters herein. No modification, amendment, or waiver of any provision of this Release Agreement, or any provision of any other document, instrument, or agreement between the Former Member Parties and the Released Parties shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver.

IN WITNESS WHEREOF, this Agreement has been executed as of the date and year first set forth above.

Former Member:
JS3 ALTERNATIVE INVESTMENTS, LLC

By:_____

Company:
ETRE FINANCIAL, LLC

By:_____

STATE OF                          )
                                  )
COUNTY OF                         )

The foregoing instrument was acknowledged before me this ____ day of _____, 2014, by _____, on behalf of _____.

My commission expires: _____.


_____
Notary Public

4

STATE OF      *New York*    )

COUNTY OF    *New York*    )
                                  )

The foregoing instrument was acknowledged before me this *18* day of *August*, 2014, by *Jacob Frydman*, on behalf of *ETRE Financial, LLC*.

         My commission expires:    *May 14, 2016* .

                            Notary Public

ALEXANDER MARTIN LIBIN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LI6261807
Qualified in Dutchess County
Commission Expires May 14, 2016

5

# EXHIBIT AJ

June 13, 2014

Sol Mayer
ETRE Investors Holdings LLC
510 Madison Avenue
Suite 1400
New York, NY 10022

**Re: Investment in ETRE Financial, LLC**

Mr. Mayer,

The following summarizes the principal terms between ETRE Financial, LLC ("ETRE") and LH Financial or its affiliates ("LH") pursuant to which LH will make an investment in ETRE (the "Transaction"). This letter is not intended to constitute a binding contract. ETRE is not obligated to proceed with the Transaction unless the parties agree on mutually acceptable definitive final closing agreements with respect to the Transaction.

| | |
|---|---|
| Investment Amount: | $1,725,000 (One Million and Seven Hundred and Twenty Five Thousand Dollars) of which (a) $500,000 will be funded upon the execution of the Amended and Restated Operating Agreement of ETRE Financial, LLC (the "Initial Investment") and (b) $1,225,000 to be held in escrow and funded at a later date ( the "Deferred Investment"). |
| Deferred Investment: | The Deferred Investment shall be funded as follows: |
| | (a) $725,000 to be funded 90 days after closing. |
| | (b) $500,000 to be funded 180 days after closing |
| | (c) $250,000 for each signed term sheet the Company has to take a building(s) public (a "Building Investment") |
| | (d) $250,000 upon the execution of a licensing agreement from an ETF provider for the Nasdaq ETRE Indexes (the "ETF Investment"). |
| Membership Interest: | LH will receive 20,000 membership units ("Units") in ETRE upon the funding of the Initial Investment and an additional 49,000 Units in ETRE upon the funding of the Deferred Investment. In total, the 69,000 Units will represent 34.5% of all outstanding and authorized Units. |
| Company: | ETRE Financial, LLC including its subsidiaries: |
| | ETRE Asset Management, LLC
ETRE Trading, LLC |

ETRE Capital Markets, LLC
ETRE Tenant Profiles, LLC

| | |
|---|---|
| Board of Directors: | LH will be entitled to one seat on the board of directors of ETRE. The ETRE board will consist of 5 members in total. Board decisions will be based on 4/5 voting approval. |
| Operating Agreement: | LH confirms that it has reviewed the amended and restated Operating Agreement of ETRE Financial dated _____ that is attached to this letter as Exhibit A, and are prepared to execute such Agreement. |
| Contingencies: | LH shall have the right to withhold the Deferred Investment in the event that ETRE or any Member of ETRE is being indicted of, or the subject of, a governmental or regulatory securities or criminal complaint (exclusive of misdemeanor traffic violations); (b) ETRE or any Member of ETRE is convicted of or entering a plea of nolo contendere to a felony or misdemeanor involving a crime of moral turpitude or dishonesty; (c) the finding by a court or arbitrator that ETRE or any Member of ETRE has committed an act of dishonesty, misappropriation, embezzlement or fraud involving personal profit; (d) a Member of ETRE has become adverse to ETRE in a legal action or proceeding initiated by a Member of ETRE or by ETRE; (e) the finding by a court or arbitrator that the ETRE or any Member of ETRE has breached in any material respect the Operating Agreement, which breach is not cured (to the extent reasonably susceptible to cure) after written notice to the Company or Member of such breach and a thirty (30) Day opportunity to cure such breach.

Notwithstanding the paragraph above, LH shall not have the right to withhold any Deferred Investment as part of a Building Investment or an ETF Investment. |
| Public Announcement: | Any public announcement by LH indicating the association of ETRE with LH in connection with the Transaction (including the execution of this Letter), and the timing of such announcements (the form of which shall include electronic communications), must be agreed to in writing by ETRE in advance. |
| Confidentiality: | The parties will keep the proposed transaction and the terms of this Term Sheet, as well as any materials provided by any party to the other party in connection with the proposed transaction or this Term Sheet, confidential except for disclosure on a confidential basis to attorneys, accountants, prospective lenders, |

**ETRE** Financial

financial partners and other professionals working with ETRE or
LH in connection with this transaction or others as required by
law.

Very truly yours,
ETRE Financial, LLC

By: Paul Frischer
President

44 Wall Street, New York, NY 10005 • 212.596.7225 • www.etrefinancial.com

EXHIBIT AK



# ETRE Financial

EXCHANGE TRADED REAL ESTATE

Discussion Materials

WHAT IF
YOU COULD
TRADE
REAL ESTATE
LIKE A STOCK?

LIQUIDITY

TRANSPARENCY

ACCESSIBILITY

Strictly Confidential



EXCHANGE TRADED REAL ESTATE

**ETRE** Financial

## DISCLAMER

This summary is not, and under no circumstances is to be construed to be a prospectus, offering memorandum, advertisement or public offering of any securities of ETRE Financial ("ETRE" or the "Company"). Neither the US Securities and Exchange Commission (the "SEC") nor any other state securities regulator has approved or disapproved of ETRE's securities or has made any determination as to the truthfulness or completeness of the disclosure in this document. Any representation to the contrary is an offense. Recipients of this summary are not to construe the contents of this summary as legal, tax or investment advice and recipients should consult their own advisors in this regard. ETRE has not registered its securities under the US Securities Act of 1933, as amended (the "US Securities Act"), or any state securities or "blue sky" laws and ETRE is not registered under the US Investment Act of 1940, as amended. The securities of ETRE (the "Securities") may not be offered or sold in the US or to US persons unless registered under the US Securities Act and applicable state securities laws or an exemption from such registration is available. No person has been authorized to provide any information to potential investors with respect to the Company or the Securities except the information contained herein. Potential investors should not rely on any information that is not contained in this summary. This summary presents information with respect to the Company as of the date hereof. Neither ETRE nor the Company intend to update or otherwise revise this summary following its distribution, and potential investors should not expect ETRE or the Company to do so. Potential investors are urged to conduct an independent investigation and evaluation of the Company and the Securities. The information presented in this summary, including, without limitation, the market analysis and financial projections presented in this summary represent the subjective views of the management of the Company. The Company's current estimates of future performance are based on a number of assumptions which the Company's management believed reasonable at the time of preparation, but there is no assurance that such estimates will be realized and actual results may vary significantly from those shown.

Confidential



EXECUTIVE SUMMARY

EXCHANGE TRADED REAL ESTATE

ETRE³ Financial

Confidential

# ETRE FINANCIAL

**ETRE Financial, LLC** (ETRE) has launched an Exchange Traded Real Estate platform for the trading of shares of individual commercial real estate assets and portfolio REITS. The ETRE Financial Platform is designed to enable real estate investors around the world to access specific real estate investment opportunities in the public markets by facilitating the listing of *single asset* REITs on national stock exchanges. We have termed these individual property REITs, "Exchange Traded Properties".



**ETRE Capital Markets, LLC** is the advisory portion of the platform that provides access to the public markets with a well patterned due diligence process to facilitate the listing of single asset commercial real estate.

**ETRE Asset Management, LLC** provides uniform standards and practices to the investing community by providing information on each ETP and portfolio REIT.

**ETRE Trading, LLC** provides a web-based proprietary order management system (OMS) with an extensive collection of trade and market information that supports superior analytics and trading for ETPs and portfolio REITS.

**ETRE Tenant Profiles, LLC** is a joint venture between ETRE Financial and Rapid Ratings to support credit analysis on tenant profiles of individual real estate and portfolio REITS.

# ETRE PLATFORM

The ETRE platform is an end to end solution that incorporates capital advisory, asset management, trading, and credit analysis.



INDUSTRY OVERVIEW

EXCHANGE TRADED REAL ESTATE

ETRE Financial

6

Confidential

**Countries with REIT & REIT Equivalent Structures**

| Europe | Americas | Asia/Australia | Africa |
|---|---|---|---|
| Belgium | Brazil | Australia | South Africa |
| Bulgaria | Canada | Dubai | |
| Finland | Chile | Hong Kong | |
| France | Costa Rica | India | |
| Germany | Mexico | Japan | |
| Greece | Puerto Rico | Malaysia | |
| Ireland | United States | New Zealand | |
| Israel | | Pakistan | |
| Italy | | Philippines | |
| Lithuania | | Singapore | |
| Luxembourg | | South Korea | |
| Netherlands | | Taiwan | |
| Spain | | Thailand | |
| Turkey | | | |
| UK | | | |

| Region | # of REITS | Market Cap (US$m) | % Global Mkt |
|---|---|---|---|
| Americas | 219 | $678,583 | 62.99% |
| Europe/Middle East | 139 | $147,862 | 13.72% |
| Asia/Australia | 171 | $233,775 | 21.66% |
| South Africa | 7 | $5,624 | 0.52% |
| Total | 536 | $1,065,844 | 100% |

Source: EPRA



2. ESTIMATED SIZE OF INSTITUTIONAL-GRADE REAL ESTATE BY COUNTRY ($ BILLION)

Estimated $27 Trillion in Global Institutional Grade Real Estate. Less than 4% is publicly listed.

# LIQUIDITY THROUGH EXCHANGES AND ESTABLISHED MARKETS

## Most Liquid Asset Types

Equities

NASDAQ

Fixed Income

Bloomberg

Commodities

CME Group

Currency

THOMSON REUTERS


## REIT Liquidity

| High Market Cap | Market Cap | ADV | Share Price | Daily $ Volume | Daily Turnover | Annual Turnover |
|---|---|---|---|---|---|---|
| SIMON PROPERTY | $50,350,000,000 | 1,300,000 | $160 | $208,000,000 | 0.41% | 99% |
| EQUITY RESIDENT | $19,700,000,000 | 2,250,000 | $55 | $123,750,000 | 0.63% | 151% |
| BOSTON PPTYS | $16,280,000,000 | 1,200,000 | $107 | $128,400,000 | 0.79% | 189% |
| VORNADO RLTY TR | $15,050,000,000 | 975,000 | $80 | $78,000,000 | 0.52% | 124% |
| AVALONBAY CMMTY | $16,900,000,000 | 900,000 | $130 | $117,000,000 | 0.69% | 166% |
| Average | $23,656,000,000 | 1,325,000 | $106 | $131,030,000 | 0.61% | 146% |
| **Mid Market Cap** | **Market Cap** | **ADV** | **Share Price** | **Daily $ Volume** | **Daily Turnover** | **Annual Turnover** |
| REGENCY CTRS CP | $4,610,000,000 | 530,000 | $50 | $26,500,000 | 0.57% | 138% |
| PIEDMONT OFFICE | $3,010,000,000 | 1,080,000 | $18 | $19,440,000 | 0.65% | 155% |
| MACK CALI CORP | $2,180,000,000 | 830,000 | $25 | $20,750,000 | 0.95% | 228% |
| BRANDYWINE RT | $1,910,000,000 | 1,600,000 | $13 | $20,800,000 | 1.09% | 261% |
| COLONIAL PPTYS | $2,020,000,000 | 850,000 | $23 | $19,550,000 | 0.97% | 232% |
| Average | $2,746,000,000 | 978,000 | $26 | $21,408,000 | 0.85% | 203% |
| **Low Market Cap** | **Market Cap** | **ADV** | **Share Price** | **Daily $ Volume** | **Daily Turnover** | **Annual Turnover** |
| SUMMIT HOTEL PR | $620,000,000 | 333,000 | $10 | $3,163,500 | 0.51% | 122% |
| ASHFORD HOSPTLY | $939,000,000 | 330,000 | $14 | $4,620,000 | 0.49% | 118% |
| CEDAR SHOPN CTR | $378,000,000 | 340,000 | $6 | $1,870,000 | 0.49% | 119% |
| GLADSTONE COMML | $220,000,000 | 88,000 | $19 | $1,672,000 | 0.76% | 182% |
| AGREE RLTY CORP | $410,000,000 | 111,000 | $32 | $3,552,000 | 0.87% | 208% |
| Average | $513,400,000 | 240,400 | $16 | $2,975,500 | 0.62% | 156% |
| | | | | | | |
| REIT Sample Average | $8,971,800,000 | 847,800 | $49 | $51,804,500 | 0.69% | 166% |

EXCHANGE TRADED REAL ESTATE

ETRE Financial

## BUSINESS HIGHLIGHTS

ETRE intends to list 300+ Exchange Traded Properties over the next 5 years with a total asset value of more than $50 billion and a total market capitalization of more than $25 billion.

- Total asset value represents less than 1% of institutional grade commercial real estate in the U.S and less than .25% of institutional grade commercial real estate globally.

- Publicly traded REITS have raised almost $450 billion in capital over the last 10 years through initial, secondary, and debt offerings which would represent approximately 2,700 properties (at an average property value of $170 million).

### Historical Offering of REIT Securities

| Year | Total | | Initial Public Offerings | | Secondary Common | | Secondary Preferred | |
|------|----------|-------------------|-----------|-------------------|-----------|-------------------|-----------|-------------------|
| | Offerings | Capital Raised | Offerings | Capital Raised | Offerings | Capital Raised | Offerings | Capital Raised |
| 2004 | 266 | 38,482 | 29 | 7,980 | 79 | 7,338 | 61 | 5,858 |
| 2005 | 259 | 37,492 | 11 | 3,789 | 71 | 8,521 | 36 | 3,095 |
| 2006 | 204 | 49,018 | 5 | 2,271 | 75 | 15,695 | 39 | 4,239 |
| 2007 | 129 | 36,031 | 4 | 1,820 | 56 | 11,854 | 26 | 4,202 |
| 2008 | 82 | 17,991 | 2 | 491 | 60 | 11,132 | 9 | 1,195 |
| 2009 | 130 | 34,656 | 9 | 2,990 | 87 | 21,244 | 0 | 0 |
| 2010 | 173 | 47,450 | 9 | 1,975 | 91 | 23,629 | 17 | 2,617 |
| 2011 | 164 | 51,280 | 8 | 2,307 | 92 | 31,075 | 31 | 4,108 |
| 2012 | 254 | 73,326 | 8 | 1,822 | 106 | 35,143 | 71 | 10,631 |
| 2013 | 174 | 53,971 | 14 | 3,081 | 88 | 28,911 | 24 | 4,393 |
| Total | 1,835 | 439,697 | 99 | 28,526 | 805 | 194,542 | 314 | 40,338 |

Source: REIT.com

EXCHANGE TRADED REAL ESTATE    **ETRE** Financial