UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINTER INVESTORS, LLC and JACOB FRYDMAN derivatively on behalf of ETRE FINANCIAL, LLC and on their own behalf with respect to direct claims<br><br>                          Plaintiffs,<br><br>vs.<br><br>SCOTT PANZER, PAUL FRISCHER, JESSE STEIN, SOL MAYER, ELI VERSCHLIESER, ETRE FINANCIAL, LLC f/k/a ETRE FINANCIAL HOLDINGS, LLC, JS3 ALTERNATIVE INVESTMENTS, LLC, FRISCHER KRANZ INC., SMP REALTY NM, LLC, EVE LLC, ETRE FINANCIAL HOLDINGS, LLC, LH FINANCIAL and ETR INVESTORS HOLDINGS LLC,<br><br>                          Defendants,<br><br>and<br><br>ETRE FINANCIAL, LLC<br><br>                          Nominal Defendant. | Index No.: 14-cv-6852 (KPF) |


## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS AND COMPEL ARBITRATION


Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendants Eli Verschleiser, Eve, LLC, Sol Mayer,*
*and ETR Investors Holdings LLC*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 2

    A.    The Parties Form ETRE Financial, ETRE REIT and Four Affiliates ... 2

    B.    ETRE Financial Merges With ETRE Holdings ...................................... 2

    C.    All Disputes Arising Out Of The Operating Agreement Are Subject To Its Mandatory Arbitration Clause ............................................................ 3

    D.    Plaintiffs' Action Arises Out of the Operating Agreement ..................... 4

    E.    The Verschleiser-Mayer Defendants Are Granted Permission to File a Motion to Dismiss and Compel Arbitration ............................................ 6

    F.    Frydman Amends The Complaint To Assert Irrelevant Claims Against Verschleiser ............................................................................................ 6

ARGUMENT .................................................................................................... 8

    I.    THE COURT SHOULD COMPEL ARBITRATION BECAUSE FRYDMAN'S CLAIMS ARE SUBJECT TO THE WRITTEN ARBITRATION AGREEMENT ................................................................ 8

        A.    Plaintiffs Agreed To Arbitrate ..................................................... 9

        B.    The Amended Complaint Is Within The Scope of the Arbitration Agreement ................................................................................... 10

        C.    Plaintiffs Are Estopped From Avoiding Arbitration With ETR and Mayer ................................................................................... 13

        D.    The Verschleiser-Mayer Defendants Did Not Waive Their Right to Arbitrate ................................................................................. 15

        E.    The Complaint Should Be Dismissed, or, in the Alternative, Stayed ......................................................................................... 17

CONCLUSION ............................................................................................... 18

## TABLE OF AUTHORITIES

Cases

*Acquaire v. Canada Dry Bottling,*
   906 F.Supp. 819 (E.D.N.Y. 1995)............................................................... 18

*Alghanim v. Alghanim,*
   828 F.Supp.2d 636 (S.D.N.Y. 2011) .......................................................... 18

*Arciniaga v. Gen Motors Corp.,*
   460 F.3d 231 (2d Cir. 2006).......................................................................... 8

*Arrigo v. Blue Fish Commodities, Inc.,*
   704 F. Supp. 2d 299(S.D.N.Y. 2010), *aff'd,* 408 F. App'x 480 (2d Cir. 2011)......... 17

*Bell v. Cendant Corp.,*
   293 F.3d 563 (2d Cir. 2002)........................................................................ 16

*BG Group, PLC v. Republic of Argentina,*
   134 S. Ct. 1198 (U.S. 2014) ........................................................................ 16

*Borden v. Wavecrest Mgmt. Team Ltd.,*
   572 F. App'x 10 (2d Cir. 2014) ............................................................... 9, 17

*Burns v. Imagine Films Entm't, Inc.,*
   No. 96–7785, 1997 WL 100896, 108 F.3d 329 (2d Cir. Mar. 6, 1997) ............. 16, 17

*Camferdam v. Ernst & Young Int'l, Inc.,*
   No. 02 Civ. 10100, 2004 WL 307292 (S.D.N.Y. Feb. 13, 2004)........................ 14, 15

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.,*
   271 F.3d 403 (2d Cir. 2001)........................................................ 13, 14, 15

*Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Local
   812 Int'l Bhd. of Teamsters,*
   242 F.3d 52 (2d Cir. 2001) .................................................................... 16

*Cont'l Ins. Co. v. Allianz Ins. Co.,*
   52 F. App'x 557 (2d Cir. 2002) ............................................................... 10

*Curtis v. DiMaio,*
   46 F. Supp. 2d 206(E.D.N.Y. 1999), *aff'd,* 205 F.3d 1322 (2d Cir. 2000)............... 13

*Diamond v. Frydman,*
   No. 14-cv-8742, (S.D.N.Y. Nov. 12, 2014)......................................... 7, 13

*Frydman  v. Equifax,*
   No. 14-cv-9015 (S.D.N.Y. Nov. 12, 2014).................................................. 8

*Frydman  v. Experian,*
   No. 14-cv-9013 (S.D.N.Y.  Nov. 12, 2014)................................................ 8

*Frydman  v. Transunion Risk,*
  No. 14-cv-9016 (S.D.N.Y.  Nov. 12, 2014) ................................................................ 8

*Frydman v. Diamond,*
  No. 14-cv-8741, ECF No. 1 (S.D.N.Y. Nov. 3, 2013) ................................................ 7

*Frydman v. Rosen et al.,*
  No. 159833/2014 (Sup. Ct. N.Y. County Oct. 7, 2014) ............................................ 8

*Frydman v. Verschleiser,*
  No. 14-cv-8084 (S.D.N.Y. Oct. 7, 2014) ................................................................... 8

*Googla Home Decor LLC v. Uzkiy,*
  No. 09-cv-1049, 2009 WL 2922845 (E.D.N.Y. Sept. 8, 2009) ................................. 12

*JFURTI v. Verschleiser,*
  No. 650803/2014 (Sup. Ct. N.Y. County Mar. 12, 2014) .......................................... 8

*JLM Indus., Inc. v. Stolt-Nielsen SA,*
  387 F.3d 163 (2d Cir. 2004) ............................................................................... 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
  460 U.S. 1, 24 (1983) ............................................................................................... 10

*Oldroyd v. Elmira Sav. Bank, FSB,*
  134 F.3d 72 (2d Cir. 1998) ................................................................................. 10, 12

*Orange Chicken, LLC v. Nambe Mills, Inc.,*
  2000 WL 1858556 (S.D.N.Y. 2000) ........................................................................ 18

*Parker Note Acquisition v. 70 Parker Avenue Properties,*
  No. 652405/2014 (Sup. Ct. N.Y. County, Aug. 5) ...................................................... 8

*Ragone v. Atl. Video at Manhattan Ctr.,*
  595 F.3d 115 (2d Cir. 2010) .......................................................................... 13, 14, 15

*S & R Co. of Kingston v. Latona Trucking, Inc.,*
  159 F.3d 80 (2d Cir. 1998) ...................................................................................... 16

*Shearson/American Express, Inc. v. McMahon,*
  *482 U.S. 220 (1987)* ................................................................................................ 12

*United Realty Advisors v. Verschleiser,*
  No. 14-cv-5903 (S.D.N.Y. Jul. 30, 2014) .................................................................. 8

*Vaughn v. Leeds, Morelli & Brown, P.C.,*
  No. 04-cv-8391, 2005 WL 1949468 (S.D.N.Y. Aug. 12, 2005) ................................ 15

**Statutes**

9 U.S.C. § 2 .................................................................................................................. 9

9 U.S.C. § 4 .................................................................................................................. 9

Defendants Eli Verschleiser ("Verschleiser"), EVE, LLC ("EVE"), Sol Mayer ("Mayer"), and ETR Investors Holdings LLC ("ETR") (collectively, the "Verschleiser-Mayer Defendants") by their attorneys Reed Smith LLP, respectfully submit this Memorandum of Law in support of their motion to compel arbitration and dismiss Plaintiffs Winter Investments, LLC ("Winter Investments") and Jacob Frydman's ("Frydman," and together with Winter Investments, collectively "Plaintiffs") Amended Complaint ("Amended Complaint" or "Am. Compl."),[1] dated November 3, 2014.[2]

## PRELIMINARY STATEMENT

This action concerns an internal management dispute among the founders of ETRE Financial, LLC ("ETRE Financial")—Plaintiffs, Verschleiser, and co-defendants Jesse Stein ("Stein"), Scott Panzer ("Panzer"), Paul Frischer, JS3 Alternative Investments, LLC ("JS3"), SMP Realty NM LLC ("SMP"), and Frischer Kranz Inc. ("Frischer Kranz"). After ETRE Financial merged with ETRE Holdings,[3] Plaintiffs filed this suit alleging that the merger was the product of a "conspiracy" to circumvent the unanimous consent provision in § 6.12 of ETRE Financial's Operating Agreement.

---

[1] All references to "¶" or "¶¶" refer to paragraphs in the Amended Complaint.

[2] The Verschleiser-Mayer Defendants hereby adopt the arguments contained in the motion to dismiss and compel arbitration of co-defendant's Scott Panzer, Paul Frischer, Jesse Stein, ETRE Financial, LLC f/k/a ETRE Financial Holdings, JS3 Alternative Investments, LLC, Frischer Kranz Inc., SMP Realty NM, LLC and ETRE Financial. For the sake of expediency, they will not be repeated.

[3] ETRE Holdings was later renamed ETRE Financial, LLC. ¶ 232. For ease of reference, the merged company will continue to be referred to as ETRE Holdings.

ETRE Financial's Operating Agreement mandates that "any controversy or claim arising out of or relating to this Agreement" must be settled by arbitration. For the reasons discussed below, Plaintiffs must be compelled to arbitrate this dispute, and this action should be dismissed.

## FACTUAL BACKGROUND

For purposes of this motion, the below facts, which are drawn from the Amended Complaint and the exhibits annexed thereto, are presumed to be true.

### A. The Parties Form ETRE Financial, ETRE REIT and Four Affiliates

In August 2012, Plaintiff Frydman and Defendants Panzer, Frischer, Stein and Verschleiser formed ETRE Financial to create a marketplace where, similar to a stock-exchange, investors could purchase individual shares in parcels of real estate. Am. Compl. ¶¶ 44–46, 158. The parties provided startup capital via their companies: Plaintiff Winter Investors (Frydman) and Defendants EVE (Verschleiser), SMP (Panzer), Frischer Kranz (Frischer), and JS3 (Stein). ¶ 52. ETRE Financial also formed an affiliate, ETRE REIT, LLC ("ETRE REIT"), and four subsidiaries, Capital Markets, LLC, ETRE Asset Management, LLC and ETRE Trading, LLC. ¶¶ 116, 119.

### B. ETRE Financial Merges With ETRE Holdings

After ETRE Financial was unable to purchase a building to pilot the new platform, it had insufficient operating capital to maintain operations. ¶¶ 172–74, 191.  In June 2014, Mayer—an acquaintance of Verschleiser—offered to infuse $1.6 million into ETRE Financial. ¶ 175. However, the Operating Agreement required

unanimous consent of its board—Frydman, Frischer, Panzer and Stein—for the intended acts. Among other things, unanimous consent of the board was required to issue new Units in the company, admit new members, and incur any debt. *See* ¶ 64, Ex. C. § 6.12.  Although Frischer, Panzer and Stein consented, Frydman voted against the proposed recapitalization. ¶ 190.

Based on these circumstances, and rather than go out of business, on June 24, 2014, ETRE Financial merged with ETRE Financial Holdings, LLC ("ETRE Holdings").  ¶¶ 19, 196–210, 213. This merger was effectuated pursuant to ETRE Financial's Operating Agreement, which permitted mergers without the unanimous consent of ETRE Financial's board, unless, unlike here, "the Principals [i.e., Frydman, Verschleiser, Stein Panzer and Frischer] . . . hold in the aggregate less than a majority of the outstanding voting equity securities of the surviving entity immediately after such transaction." ¶¶ 64, 197.

### C. All Disputes Arising Out Of The Operating Agreement Are Subject To Its Mandatory Arbitration Clause

When the parties executed the Operating Agreement, they agreed to arbitrate all disputes arising out of the Operating Agreement:

> In the event of any controversy or claim arising out of or relating to this Agreement, or the breach thereof, the parties to such controversy or claim shall first use their reasonable best efforts in good faith to resolve such disputes among themselves. If they are unable to resolve the dispute within thirty (30) days after any party has first notified the other of the dispute, then the controversy or claim shall be settled by arbitration administered by JAMS . . . .

¶ 112, Ex. C § 14.13(a).

### D. Plaintiffs' Action Arises Out of the Operating Agreement

On August 22, 2014, Plaintiffs commenced this action in the United States District Court of the Southern District of New York by filing a lengthy complaint alleging violations of Section 10(b) of the Securities Act and a panoply of New York common law business torts. ECF No. 1. Regardless of the label, each of these claims arise out of or relates to purported breaches of duties and obligations created by and/or contained in the Operating Agreement.

Plaintiffs dedicate nearly sixteen pages of the Complaint to the "Relevant Provisions of the 2012 Operating Agreement" (¶¶ 61–115). The Complaint alleges that, beginning in January 2014, Defendants violated or conspired to violate:

- *Section 6.12 of the Operating Agreement* by failing to obtain Frydman's consent before merging ETRE Financial with ETRE Holdings (¶¶ 11, 138–57);

- *Section 6.12 of the Operating Agreement* by forming four subsidiary companies (¶¶ 119);

- *Section 6.12 of the Operating Agreement* by forming ETRE REIT (¶¶ 116–18, 122, 124);

- *Section 6.12 of the Operating Agreement* by appointing Panzer, Frischer and Stein ETRE REIT's directors (¶¶ 122–23, 168, 367, 370);

- *Section 6.12 of the Operating Agreement* by increasing the size of ETRE REIT's authorized number of board members (¶¶ 123, 366);

- *Section 6.12 of the Operating Agreement* by causing ETRE REIT to adopt a Non-Management Director Compensation Plan (¶ 129);

- *Section 6.12 of the Operating Agreement* by causing ETRE Financial to ratify all prior actions taken by ETRE in action with the formation of ETRE REIT (¶¶ 147–48);

- **_Section 6.12 of the Operating Agreement_** by seeking to raise $53 million to finance a building (¶ 171);

- **_Section 6.12 of the Operating Agreement_** by causing ETRE Property A-1, LLC to enter into an agreement with M-C Capitol Associates LLC (¶ 130);

- **_Sections 13.1 and 6.12 of the Operating Agreement_** by licensing the ETRE name and entering into a Trademark License Agreement with ETRE REIT and an Advisory Services Agreement with Source Capital Group ( ¶¶ 128, 366–68, 384, 412)

- **_Sections 3.8 and 6.12 of the Operating Agreement_** by executing loan agreements with Panzer and Frischer (¶¶ 153–155, 382–83);

- **_Section 6.11 of the Operating Agreement_** by failing to make adequate corporate disclosures to Frydman (¶¶ 167–71); and

- **_Section 6.5(e) of the Operating Agreement_** by failing to seek Frydman's consent before taking action by written consent in lieu of a meeting (¶¶ 138–57).

The Complaint also alleges that, by virtue breaching the Operating Agreement, Defendants breached their fiduciary duties arising out of the Operating Agreement. _See e.g._, ¶¶ 6, 9, 12, 13, 32–36, 204–07, 371–86, 389–92, 431–435.

According to Plaintiffs:

> By reason of their positions as officers and/or Managers and Members of the Company . . . Defendants owed the Plaintiffs the obligations of good faith, trust, loyalty, and due care . . . . Instead, the Manager and Member Defendants breached their duties by, inter alia, conspiring with the other Defendants, including the Members Defendants, Mayer, LH Financial, and ETR Investors Holdings to strip Plaintiffs of their governance rights . . . dilute their interest and otherwise cause them economic loss and damage, by, _inter alia_ [sic], flagrant violations of the Operating Agreement, all in an effort to benefit themselves . . . .

¶ 13.

Plaintiffs seek relief for the alleged breaches of the Operating Agreement. Plaintiffs request, *inter alia*, that the Defendants' conduct be declared *ultra vires* and in violation of the Operating Agreement. ¶¶ 402(b)–(k).  Plaintiffs also seek an Order unwinding the merger and recognizing the Defendants' "voluntary withdrawal" and "voluntary termination" from ETRE Financial.  ¶ 226.

### E. The Verschleiser-Mayer Defendants Are Granted Permission to File a Motion to Dismiss and Compel Arbitration

On September 29, 2014, both the Verschleiser-Mayer Defendants and the other Defendants submitted pre-motion letters to this Court proposing to file a motion to dismiss and compel arbitration. ECF Nos. 15–16. Plaintiffs submitted two letters in opposition on October 1, 2014. ECF Nos. 18–19. This Court ordered a pre-motion conference, which was held on October 15, 2015. ECF No. 20. At the pre-motion conference, this Court granted Defendants permission to file this motion, and established a briefing schedule for the motion to dismiss the complaint. ECF No. 28.

### F. Frydman Amends The Complaint To Assert Irrelevant Claims Against Verschleiser

Although there was no mention at the pre-motion conference that the complaint would be amended, or any schedule reflecting such an amendment, Plaintiffs amended their complaint on November 3, 2014, adding an additional 131 paragraphs and four new counts against Verschleiser. *See* Am. Compl. ¶¶ 3, 7, 8, 14, 236–345, 460–71. These additions are wholly unrelated to the present dispute,

focusing on Frydman's business partnership with non-parties Warren and Scott Diamond (the "Diamonds") and concerning their separate venture, 500 Lincoln, LLC ("500 Lincoln"). ¶¶ 236–345, 460–71.

These new allegations are not only irrelevant, but also improper, and reflect Frydman's ulterior motives. The allegations concerning the Diamonds are duplicative of another lawsuit that Frydman initiated in the Southern District concerning 500 Lincoln. *See* Complaint, *Frydman v. Diamond*, No. 14-cv-8741, ECF No. 1 (S.D.N.Y. Nov. 3, 2013). Frydman filed a four-hundred paragraph, sixteen-count RICO complaint against the Diamonds alleging that they unlawfully withheld their consent to a multi-million dollar loan (the "Frydman Federal Action"). *Id*. There too, Frydman disregarded a mandatory arbitration clause in the relevant Operating Agreement.[4]

This Court has already recognized that the allegations concerning 500 Lincoln are unrelated to the case at bar. On November 3, 2014, Frydman asked that Court to take one of the cases involving the Diamonds as "related" to the instant case.[5] ECF No. 34. The Court declined to take the case as related. *Diamond v. Frydman*, No. 14-cv-8742, (S.D.N.Y. Nov. 12, 2014). The Frydman Removed Action

---

[4] The Diamonds filed a pre-motion letter on December 12, 2014 seeking leave to file a motion to compel arbitration of Frydman's claims. *Frydman v. Diamond*, No. 14-cv-8741, ECF No. 4 (S.D.N.Y. Nov. 3, 2013).

[5] Faced with Frydman's threats to file the Frydman RICO Action, the Diamonds sued Frydman in New York State Supreme Court, New York County on October 30, 2014, seeking a declaration that their dispute was arbitrable. *Diamond v. Frydman*, No. 653332/2014 (N.Y. Sup. Ct. N.Y. County). Frydman subsequently attempted to remove that action to federal court (the "Frydman Removed Action").

was subsequently assigned to Judge Crotty, who summarily remanded it. *Id.* at ECF No. 7.

Plaintiffs attempt to link unrelated matters, and to seek federal jurisdiction where none exists, is part of an ongoing effort by Frydman to harass Verschleiser, and abuse the court systems Frydman has filed four similarly lengthy lawsuits against Verschleiser in state and federal Court. *United Realty Advisors v. Verschleiser*, No. 14-cv-5903 (S.D.N.Y. Jul. 30, 2014) (alleging that Verschleiser hacked into his e-mail and sent disparaging messages to potential business partners); *Frydman v. Verschleiser*, No. 14-cv-8084 (S.D.N.Y. Oct. 7, 2014) (alleging RICO claims based on the same purported hacking and disparagement); *JFURTI v. Verschleiser*, No. 650803/2014 (Sup. Ct. N.Y. County Mar. 12, 2014) (Bransten, J.); *Frydman v. Rosen et al.*, No. 159833/2014 (Sup. Ct. N.Y. County Oct. 7, 2014) (alleging that the American Jewish Congress committed fraud and breached various duties by allowing Mr. Verschleiser to serve as treasurer of that organization).[6]

## ARGUMENT

## I.   THE COURT SHOULD COMPEL ARBITRATION BECAUSE FRYDMAN'S CLAIMS ARE SUBJECT TO THE WRITTEN ARBITRATION AGREEMENT

The Federal Arbitration Act ("FAA") provides that an arbitration agreement is "valid, irrevocable and enforceable." 9 U.S.C. § 2; *see generally Arciniaga v. Gen*

---

[6] Frydman represents himself *pro se* in these matters. Frydman was a practicing attorney and holds an inactive license in the state of Ohio. Frydman has a long history of *pro se* litigation including several current other matters unrelated to Verschleiser in the state and federal courts. *See e.g.*, *Parker Note Acquisition v. 70 Parker Avenue Properties*, No. 652405/2014 (Sup. Ct. N.Y. County, Aug. 5) (Reed, J.); *Frydman v. Experian*, No. 14-cv-9013 (S.D.N.Y. Nov. 12, 2014) (Crotty, J.); *Frydman v. Transunion Risk*, No. 14-cv-9016 (S.D.N.Y. Nov. 12, 2014) (Abrams, J.); *Frydman v. Equifax*, No. 14-cv-9015 (S.D.N.Y. Nov. 12, 2014) (Oetken, J.). Frydman's corporate entities are generally represented by other counsel as those can not appear *pro se*. Frydman appears to handle the bulk of the legal work.

*Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006). The Court may compel Plaintiffs to arbitrate if: (1) the parties agreed to arbitrate; (2) the dispute falls within the scope of the arbitration agreement; and (3) Congress did not intend the federal statutory claims to be nonarbitrable. *See Borden v. Wavecrest Mgmt. Team Ltd.*, 572 F. App'x 10 (2d Cir. 2014); 9 U.S.C. § 4. The Amended Complaint is arbitrable.[7]

### A. Plaintiffs Agreed To Arbitrate

Plaintiffs do not and cannot dispute that they agreed to arbitrate. ¶ 112. In August 2012, Plaintiffs and Defendants formed ETRE Financial. ¶¶ 49, 158. On August 15, 2014, Plaintiffs, along with Verschleiser, Stein, Panzer, Frischer, JS3, SMP, Frischer Kranz and EVE entered into an Operating Agreement governing ETRE Financial's internal management and structure. *Id.* Section 14.13(a) of the Operating Agreement contains a mandatory arbitration clause:

> In the event of any controversy or claim arising out of or relating to this Agreement, or the breach thereof, the parties to such controversy or claim shall first use their reasonable best efforts in good faith to resolve such disputes among themselves. If they are unable to resolve the dispute within thirty (30) days after any party has first notified the others of the dispute, then *the controversy or claim shall be settled by arbitration administered by JAMS* and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Am. Compl. Ex. C § 14.13(a) (emphasis added). Accordingly, Plaintiffs agreed to arbitrate.

---

[7] The Amended Complaint is riddled with numerous other defects. Given the fundamental jurisdictional issue at hand, and as a matter of judicial economy, the Verschleiser-Mayer Defendants respectfully reserve the right to address the substantive defects at a later time.

### B. The Amended Complaint Is Within The Scope of the Arbitration Agreement

The purported dispute described in the Amended Complaint arises out of the arbitration clause in the Operating Agreement. The scope of arbitration clauses are construed "as broadly as possible." *Oldroyd v. Elmira Sav. Bank*, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (internal quotations omitted).  Where the arbitration clause provides that "any controversy or claim arising out of or relating to this [Operating] Agreement," the dispute is presumptively arbitrable. *Id.*; *Cont'l Ins. Co. v. Allianz Ins. Co.*, 52 F. App'x 557 (2d Cir. 2002 (same). Plaintiffs must be compelled to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Cont'l Ins.*, 52 F. App'x at 559 (internal citations and quotations omitted). All doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

Here, Plaintiffs' claims arise from purported breaches of the Operating Agreement. After dedicating nearly *sixteen pages* outlining the "Relevant Provisions of the 2012 Operating Agreement" (Am. Compl. ¶¶ 61–115), Plaintiffs take the remainder of the Amended Complaint to purportedly demonstrate how Defendants breached many, if not all of them.  Specifically, Plaintiffs allege that Defendants violated, or conspired to violate, § 6.12 of the Operating Agreement by failing to obtain Frydman's consent prior to merging ETRE Financial with ETRE Holdings. ¶¶ 11, 138–57, 195–210. The Amended Complaint summarizes its allegations:

> The purported merger, the filing of a certificate of merger, the amendment of the Operating Agreement, the transfer of all the Company's assets ostensibly through the purported merger . . . . and all related agreements and undertakings are each an express violation of Sections 6.12, 3.8 and/or 7.4 of the 2012 Operating Agreement, required, in each instance, the prior unanimous approval of Frydman and because Frydman did not approve any of the foregoing, they are each unauthorized, and ultra vires, and without legal effect.

¶ 203.

Plaintiffs' allegations concerning ETRE REIT similarly arise out of the Operating Agreement. The Amended Complaint pleads that Defendants failed to obtain Frydman's consent—and thereby violated § 6.12 of the Operating Agreement—by forming and taking actions on behalf of affiliate company, ETRE REIT, and six subsidiary companies. *See e.g.,* ¶¶ 11, 116–19, 122–24, 128–29, 147–57, 168, 366–67. Plaintiffs plead that Defendants violated § 6.11 of the Operating Agreement by failing to make adequate corporate disclosures to Frydman (¶¶ 167–71) and § 6.5(e) of the Operating Agreement by taking action on ETRE Financial's behalf by written consent in lieu of a meeting without first consulting with Frydman (¶¶ 138–57).

Plaintiffs' remaining allegations concerning purported breaches of fiduciary duty also arise out of the Operating Agreement. *First*, Plaintiffs allege that Defendants breached their fiduciary duties by virtue of breaching the Operating Agreement. *See e.g.*, ¶¶ 13 ("the Manager and Member Defendants breached their duties to Plaintiffs by, *inter alia*, conspiring . . . to strip Plaintiff of their governance rights . . . dilute their interests and otherwise cause them economic loss and

damage, by *inter alia*, flagrant violations of the Operating Agreement"), 204.

*Second*, Plaintiffs allege that Defendants owe fiduciary duties by virtue of the Operating Agreement and their positions within ETRE Financial. As Plaintiffs acknowledge, Defendants' fiduciary duties are created "[b]y reason of their positions as officers and/or Managers and Members of the Company." *See e.g.,* ¶¶ 13, 32-36. Yet, Defendants sole basis for holding this position (and their concomittent fiduciary duties) is their appointment to these positions in the Operating Agreement. *Id.*

Given the nature of Plaintiffs' claims, they are all subject to arbitration. *See Oldroyd,* 134 F.3d at 77 ("Inasmuch as more than half of Oldroyd's employment relates to the subject of termination from employment, there can be no doubt that a retaliatory discharge claim touches matters covered by the employment contract"); *Googla Home Decor LLC v. Uzkiy*, No. 09-cv-1049, 2009 WL 2922845,at *5 (E.D.N.Y. Sept. 8, 2009) (compelling arbitration where "[e]ach of plaintiffs' claims derives from the argument that defendants are not authorized under the Operating Agreement to perform any of the actions to which plaintiffs object because defendants never controlled a majority of Googla's shares"). Plaintiffs' claim brought pursuant to Section 10(b) of the Securities Act—the only federal statutory claim—is similarly arbitrable. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 228 (1987).

Finally, nothing in Frydman's allegations concerning his business partnership with the Diamonds and 500 Lincoln is relevant. ¶¶ 3, 7–8, 236–345.

460–71. Frydman's dispute with the Diamonds involves different parties, different entities, and a different operating agreement (which also contains an arbitration clause). As this Court held, the dispute with the Diamonds is unrelated. *See Diamond v. Frydman*, No. 14-cv-8742, (S.D.N.Y. Nov. 12, 2014) ("Case referred as related to 14-cv-6852 and declined by Judge Katherine Polk Failla and returned to wheel for assignment").[8] These allegations do not affect the arbitrability of the allegations concerning ETRE Financial.

Plaintiffs' claims concerning ETRE Financial are predicated on rights created by the Operating Agreement, and therefore must be arbitrated.

## C. Plaintiffs Are Estopped From Avoiding Arbitration With ETR and Mayer

Although ETR and Mayer did not sign the Operating Agreement, Plaintiffs are estopped from avoiding arbitration with them. A signatory to an agreement containing an arbitration clause is estopped from avoiding arbitration with a non-signatory where: (1) the dispute is intertwined with the contract providing for arbitration; and (2) the non-signatory has a close relationship with a signatory such that the party seeking to avoid arbitration consented to arbitrate or it would be inequitable to allow the non-movant to avoid arbitration. *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406–08 (2d Cir. 2001); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 128 (2d Cir. 2010). Courts require a signatory to arbitrate with non-signatories because forcing a non-signatory to

---

[8] In any event, these allegations are impermissible as they are duplicative of a suit Frydman previously filed in federal court against the Diamonds, and are subject to an arbitration clause. *See e.g., Curtis v. DiMaio*, 46 F. Supp. 2d 206, 215 (E.D.N.Y. 1999), *aff'd*, 205 F.3d 1322 (2d Cir. 2000).

litigate the same issues that will be arbitrated renders the arbitration "meaningless" and frustrates the federal policy favoring arbitration. *Camferdam v. Ernst & Young Int'l, Inc.,* No. 02 Civ. 10100, 2004 WL 307292, at *7 (S.D.N.Y. Feb. 13, 2004).

A claim against a non-signatory is intertwined with the agreement containing an arbitration clause where the claim against the non-signatory is predicated on a violation of the agreement. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177–78 (2d Cir. 2004) (holding that the claims were intertwined with an agreement where the alleged injury arose from the agreement); *Ragone*, 595 F.3d at 128 (finding that claims against signatory and non-signatory were intertwined where they concerned the same dispute); *Choctaw Generation*, 271 F.3d at 406–08 (claims against non-signatory was intertwined where they were "linked textually" to the contract containing the arbitration clause and "its merits are bound up" with an arbitrable dispute).

Here, Plaintiffs' sole substantive allegation against Mayer is that he conspired with Verschleiser and the other Defendants "to cause an unauthorized and ultra vires merger . . ." in violation of § 6.12 of the Operating Agreement. ¶¶ 195–210. The only substantive allegations against ETR is that, prior to the merger, Frischer wrote Frydman proposing that ETR would be made a Member of ETRE Financial. ¶ 187, 201. Plaintiffs allege, in conclusory fashion, that ETR conspired with the other Defendants to violate the Operating Agreement. ¶¶ 11, 13, 195. As Plaintiffs' allegations against Mayer and ETR are dependent and predicated on

violations of the Operating Agreement, the allegations are intertwined therewith. *JLM Indus.*, 387 F.3d at 177–78; *Ragone,* 595 F.3d at 128; *Choctaw Generation,* at 406–08.

By Plaintiffs' own admission, ETR and Mayer are also closely related to the signatories to the Operating Agreement. A non-signatory has a sufficiently close relationship with a signatory where the non-signatory purportedly conspired with the non-signatory. *See e.g., Camferdam*, 2004 WL 307292, at *6 (finding a close relationship where "the Law Firm Defendants and the E & Y Defendants conspired to devise and promote the COBRA transaction to the Plaintiffs and others"); *Vaughn v. Leeds, Morelli & Brown, P.C.*, No. 04-cv-8391, 2005 WL 1949468, at *5 (S.D.N.Y. Aug. 12, 2005) *aff'd*, 315 F. App'x 327 (2d Cir. 2009) (finding a close relationship where the plaintiffs allege a "civil RICO conspiracy involve[ing] close cooperation and collusion between Vaughn's employer and his lawyers"). Here, Plaintiffs' sole allegations against Mayer and ETR concern their alleged conspiracy with the other Defendants to violate the Operating Agreement. ¶¶ 11,13, 195–210. As such, Mayer and ETR are closely related to the signatories, and can compel Plaintiffs to arbitrate their claims as well. *Camferdam*, 2004 WL 307292, at *6; *Vaughn*, at *5.

### D. The Verschleiser-Mayer Defendants Did Not Waive Their Right to Arbitrate

Although the Amended Complaint acknowledges that the Operating Agreement contains a mandatory arbitration clause, Plaintiffs allege that the Verschleiser-Mayer Defendants "waived" their right to arbitrate because "the

Defendants have asserted through counsel that the 2012 Operating Agreement 'no longer exists.'" Am. Compl. ¶¶ 112–15. Plaintiffs are incorrect.

*First*, the arbitrator, not the district court, generally determines this issue of waiver. *See BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (U.S. 2014); *Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir. 2002). Courts may only consider whether a party waived its right to arbitration through protracted litigation. *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82 (2d Cir. 1998). Here, however, the Plaintiffs cannot allege that the Verschleiser-Mayer waived their rights through protracted litigation as Defendants asserted their arbitration rights promptly after Plaintiffs commenced this action.

*Second*, the letter purportedly stating that the Operating Agreement "no longer exists" was sent on behalf of ETRE Financial, and, as such, cannot be ascribed to the Verschleiser-Mayer Defendants.

*Finally,* even assuming, *arguendo*, the letter was sent on the Verschleiser-Mayer Defendants' behalf, the letter is insufficient to constitute a waiver. The Second Circuit defines waiver as "the intentional relinquishment of a known right." *Burns v. Imagine Films Entm't, Inc.*, No. 96–7785, 1997 WL 100896, at *3, 108 F.3d 329 (2d Cir. Mar. 6, 1997). Waiver may not be "lightly inferred," and will not be found "unless the conduct has resulted in prejudice to the other party." *Id.* (internal citations omitted); *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamster*s, 242 F.3d 52, 57 (2d Cir. 2001). Here, Plaintiffs have not alleged that any defendant intentionally relinquished their

right to arbitrate under the Operating Agreement, let alone that Plaintiffs were injured thereby. *Burns,* 1997 WL 100896, at *3 (holding the district court erred when it found the defendants waived the right to arbitrate because "the plaintiffs have not shown prejudice sufficient to support a finding of waiver").

### E.  The Complaint Should Be Dismissed, or, in the Alternative, Stayed

As discussed above, the broad arbitration clause contained in the Operating Agreement mandates arbitration of this dispute. Because the claims against Mayer and ETR are predicated on a breach or conspiracy to breach the duties and contractual obligations under the Operating Agreement, the Court should compel arbitration and dismiss the Amended Complaint. *See Borden v. Wavecrest Mgmt. Team Ltd.*, 572 F. App'x 10, 11 (2d Cir. 2014) ("no stay was necessary, as [the] . . . entire claim . . . was arbitrable"); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011) ("all courts of which we are aware have followed the rule that, where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (internal citations and quotations omitted)).

Should the Court hold that plaintiffs assert both arbitrable and non-arbitrable claims, the Court should stay the non-arbitrable claims pending resolution of the arbitration. A stay is appropriate where: (1) "there are issues common to arbitration and the court proceeding," and (2) "the moving party [shows that [it] will not hinder the arbitration that will be resolved within a reasonable time, and such delay that may occur will not cause undue hardship to the non-

- 17 -

moving parties." *Alghanim v. Alghanim*, 828 F.Supp.2d 636, 664 (S.D.N.Y. 2011). A stay is appropriate because Plaintiffs' allegations against the Verschleiser-Mayer Defendants are grounded in purported violations of the Operating Agreement and, therefore, the arbitrator's determinations regarding the parties' breach thereof would be outcome determinative of any non-arbitrable claims. *Id.*; *Orange Chicken, LLC v. Nambe Mills, Inc.*, 2000 WL 1858556 (S.D.N.Y. 2000) (staying arbitration where the issues in the litigation will be touched on in the arbitration); *Acquaire v. Canada Dry Bottling*, 906 F.Supp. 819, 838 (E.D.N.Y. 1995) (granting stay pending arbitration because "[i]t is likely that arbitration of plaintiffs' claims against defendants Canada Dry, Coors and their affiliates will partially determine most of the issues raised against the other named defendants").

## CONCLUSION

For the foregoing reasons, the Verschleiser-Mayer Defendants' motion to dismiss and compel arbitration, should be granted and the Amended Complaint should be dismissed in its entirety and with prejudice, or alternatively a stay should be entered respecting any non-arbitrable claims, along with an award of costs to the Verschleiser-Mayer Defendants and such other and further relief the Court deems just, proper and equitable.

Dated:       December 17, 2014
             New York, New York

Respectfully submitted,

**REED SMITH LLP**


By: _/s/ Steven Cooper_____

Steven Cooper
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Defendants Eli Verschleiser, EVE,
LLC, Sol Mayer and ETR Investors Holdings
LLC*